ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
JUL 19 2004
U.S. COURT OF FEDERAL CLAIMS
By leave of the Judge

CAROL AND ROBERT TESTWUIDE, et al.,

*Plaintiffs,*

v.

THE UNITED STATES OF AMERICA,

*Defendant.*

No.: 01-201L
(Honorable Victor J. Wolski)

**PLAINTIFFS' MEMORANDUM OF LAW**
**RE INVERSE CONDEMNATION OF AVIGATION EASEMENTS**

Plaintiffs, Carol and Robert Testwuide, . ("Plaintiffs"), pursuant to the Order of the Court filed June 25, 2004 (Victor J. Wolski, Judge), submit this memorandum setting forth the current law of inverse condemnation pertaining to avigation easements.

**1.**

**Historical Development Up To *Argent***

Inverse condemnation actions for the taking of avigation easements by flights of military aircraft have their genesis in the aftermath of World War II in the landmark Supreme Court decision *United States v. Causby*, 328 U.S. 256 (1946). From that beginning, the law has evolved as aircraft have become more prevalent, more powerful and more sophisticated. The latest significant development, and the definitive statement of the current status of this area of law, is the Court of Appeals' decision in *Argent v. United States*, 124 F.3d 1277 (Fed. Cir. 1997). Although Plaintiffs believe that *Argent* is not only the definitive statement of the law, the Defendant, in recent conferences and in filings with the Court, has treated *Argent* as if it did not

exist.[1] In order to appreciate the impact of *Argent* on the legal principles governing avigation takings cases in general, and the present case specifically, it is important to understand the development of this area of law from *Causby*, to *Aaron v. United States*, 160 Ct. Cl. 295 (1963), to *Branning v. United States*, 228 Ct. Cl. 240 (1981) and finally, to *Argent*.

*Causby* established that an avigation easement could be taken, in the constitutional sense, by frequent low-level flights of military aircraft over private property. In *Causby*, the Plaintiff owned a 2.8 acre parcel of land on which he lived and operated a commercial chicken farm. Beginning in 1942, military aircraft began to fly over Plaintiffs property at low altitudes. Plaintiff sued alleging a taking. The United States argued that its aircraft were flying in navigable airspace, both during flight and while in the approved glide path for take offs and landings, and that "when flights are made within the navigable airspace ***without any physical invasion of the property of the landowners***, there has been no taking of property." 328 U.S. at 260 (emphasis supplied).

The Supreme Court disagreed with the characterization that the flights were in navigable airspace. At that time, Congress had established minimum altitudes for safe flight for commercial air carriers through the Civil Aeronautics Authority: 500 feet during the day and 1,000 feet at night and between 300 and 1,000 feet for other times depending on the type of aircraft and the terrain. 328 U.S. at 263[2]. The Court held that under those facts the glide path for take offs and landings was not in navigable airspace, rather it was in Mr. Causby's airspace and such physical invasion of the Causby airspace constituted a taking.

---

[1] For example, the United States represented to the Court in the Status Conference on June 23, 2004 and Defendant's Opposition to Plaintiffs' Motion for Leave to File Amended Complaint for Inverse Condemnation (Particularly pages 5-6) that the factual scenario present in *Causby* establishes all of the required elements for a taking. *Argent* was not even mentioned by the United States, despite the fact that *Argent* is controlling precedent and its holding directly contradicts the Government's representation.

[2] The altitudes today are 500 feet and 1,000 feet in congested areas.

In the wake of *Causby*, courts often mechanically applied a physical-invasion-of-navigable-airspace analysis as the elements to state a claim for inverse condemnation of an avigation easement. The post-*Causby* cases that mechanically applied this analysis include those cited by the United States on page 6 of its opposition to Plaintiffs' motion to amend the complaint. In 1963, this Court[3] recognized that the law was moving beyond the simplistic and mechanical *Causby* analysis. In *Aaron v. United States*, 160 Ct. Cl. 295, 300-301 (1963), certain property owners complained of the negative impact on their properties from flight activity entirely within navigable airspace. In holding that the property owners could not recover under those facts, the Court observed the inevitable development of the law to allow such recoveries:

> It is true that the inconvenience and annoyance experienced from the passage of a plane at 501 feet above a person's property is hardly distinguishable from that experienced from the passage of a plane at, say, 490 feet, but the extent of a right-of-way, whether on the ground or on water or in the air, has to be definitely fixed. Acts that are permissible within the limits of the right-of-way are forbidden beyond its limits, and vice versa. Congress has fixed 500 feet as the lower limit of navigable air space; hence, what may be permissible above 500 feet is forbidden below it, unless compensation is paid therefor.
>
> ***This is not to say that a case could not arise where the unavoidable damage to a person's property occasioned by travel in the navigable air space would be so severe as to amount to a practical destruction or a substantial impairment of it. When such a case arises we would then have to consider whether the relevant statutes and regulations violated the property owners' constitutional rights***; but plaintiffs have not made out such a case.

*Id.* (emphasis supplied).

[3] Plaintiffs' use of the phrase "this Court" is intended to identify the United States Court of Federal Claims under both its current name and prior name, the United States Claims Court, and its predecessor, the United States Court of Claims.

What the Court predicted in *Aaron* finally occurred in *Branning v. United States*, 228 Ct. Cl. 240 (1981). *Branning*, decided in 1981, first extended the analysis beyond that of *Causby's* physical invasion approach. This Court described its decision in this way:

> The novelty of this decision is in its holding that defendant's use of airspace at altitudes above 500 feet, and independent of landing and takeoff, may be a taking of land beneath if the use is peculiarly burdensome.

228 Ct. Cl. at 242. In *Branning*, property owners near MCAS Beaufort, South Carolina claimed a taking as a result of the noise from flight training operations, including Field Carrier Landing Practice (FCLP), over their property. According to the Government's own published AICUZ (Air Installation Compatible Use Zones)[4] materials and the Tracor Report (an acoustical engineering contractor similar to Wyle Labs), Plaintiff's property was in a high noise zone regarded as unsuitable for residential use.[5] However, the training flights in question were wholly conducted at or above 600 feet, which, the United States argued, precluded liability for a taking under the *Causby* paradigm.

---

[4] AICUZ is the military analog to the FAA's "Part 150 Noise Compatibility Program." *See City of Bridgeton v. FAA*, 212 F.3d 448, 460 (8th Cir. 2000):

> The FAA's guidelines for determining significant noise impact are found in the Part 150 Noise Compatibility Program, 14 C.F.R. §§ 150 *et seq*. These guidelines were developed to satisfy the mandate that the agency "establish a single system of measuring noise" that can be uniformly applied at airports and surrounding areas. 49 U.S.C. § 47502(1). In brief, the regulations require airport operators to measure in decibels the yearly day-night average noise level (symbolized as Ldn) at various points near the airport. The operator drafts a noise contour map, connecting points of equal noise exposure. The regulations require contour lines marking 65, 70, and 75 Ldn and anticipate that additional contour lines may be appropriate. *See* 14 C.F.R. § 150, app. A, part B, § A150.101. The operator identifies the uses to which land within the 65 Ldn contour is put and uses Part 150's land use compatibility table to determine whether each land use is compatible with the noise level to which it will be exposed.

The Part 150 Program also provides for noise attenuation measures to residences (i.e. insulated doors and windows, air conditioning, etc.) in noise impact zones.

[5] Currently, that would be the 65 dB DNL noise zone.

This Court, after a lengthy analysis of existing caselaw, held:

> This is a case of first impression in which ***the court may consider the altitude of flights over the property, but must give primary consideration to the effect of aircraft noise*** **where the Government itself has adopted and published standards of compatibility of use of the subadjacent property.**

228 Ct. Cl. at 262 (emphasis supplied). Specifically, the Court relied extensively upon the AICUZ maps, noise contours and similar materials, and held that a taking had occurred by the noise resulting from flight operations even though the flights took place wholly in navigable airspace. Thus, in *Branning,* this Court formally adopted the noise-impact analysis in avigation easement takings cases that involve particularly burdensome patterns of activity.

**2.**

**The Court of Appeals' Decision in *Argent***

The shift in focus that began in *Branning* in 1981 was completed in 1997 with the Court of Appeals' decision in *Argent*. In *Argent*, the Court was faced with claims from property owners that the noise and other impacts from the overall pattern of Naval aircraft training at OLF Coupeville in Washington State, including but not limited to FCLP, constituted the taking of an avigation easement. There, the plaintiffs were not complaining of certain discrete flights that may or may not have passed over their properties at any particular altitude. Rather, the allegations were that noise from the training regimen as a whole, which included flights of unknown altitude over ***adjacent*** land, was so intrusive as to substantially affect the use and enjoyment of the plaintiffs' property. Thus, the facts in *Argent* did not include either element from the *Causby* paradigm that resulted in a physical invasion: (1) direct overflight, or (2) less than 500 feet in altitude.

After first describing the *Causby* case and the factual underpinnings of the *Causby* court's decision, the Court of Appeals continued (124 F.3d at 1282-1286)(emphasis supplied):

> Although federal courts have, by and large, required the facts of a case to match the Causby paradigm before allowing recovery, ***nothing in Causby or the intervening precedent limits a takings claim to only those facts. Indeed, overflight takings disputes defy per se rules or classification.*** [citations omitted] Rather, precedent requires, consistent with the purpose of the Takings clause, a remedy for government action that singles out a private landowner to bear a disproportionate burden for a public benefit. [citation omitted] ***Thus, while the facts, reasoning, and rules of Causby have always guided this corner of takings law, they do not imprison it.***
>
> * * *
>
> ***While physical invasion of private property remains an especially notorious category of takings,*** [citation omitted] ***the law is flexible enough to recognize non-invasive Governmental action that nonetheless threatens to destroy the owner's enjoyment of his estate.***
>
> * * *
>
> [W]here, as here, plaintiffs complain of a peculiarly burdensome pattern of activity, including both intrusive and non-intrusive flights, that ***significantly impairs their use and enjoyment of their land***, those plaintiffs may state a cause of action. [citations omitted] ***The Argents are not before this court to complain of individual flights, which may or may not pass over their property. Rather, they complain of the entire course of operation at OLF Coupeville that entails hundreds of flights per week – an allegedly constant source of noise and disruption. If true, this activity is a peculiar burden imposed on the Argents and their neighbors by the United States' selection of a remote site for aircraft training operations. [citations omitted] The Government cannot defeat such a claim merely by pointing out that most of its flights do not pass over the Argents' land.***

*Argent* leaves no doubt that physical invasion of airspace is not necessary to state a claim for a taking of an avigation easement.[6]

*Argent* resolved several other issues that may become relevant in the present case. Specifically, *Argent* reversed summary judgment against a group of claimants whose claims had been dismissed on statute of limitation grounds. In this case, the United States has stated in the Joint Status Report that application of the statute of limitations is an issue to be decided. Specifically, the United States has intimated that the limitations defense will likely be based on an assertion that an avigation easement was "taken" by flight activity from a period more than six years prior to the filing of this case. In other words, the flight activity and resulting noise impacts during a prior period were equal to or greater than the present flights and/or noise.

In *Argent*, this Court entered summary judgment against a group of claimants who lived in the Admiral's Cove neighborhood because the Navy conducted a large number of training flights over that area in 1967 because of combat activity in Vietnam. 124 F.3d at 1285. The Court of Appeals reversed, noting that there were allegations of a second taking based on increases in noise post-1986. The Court of Appeals held that the mere fact of a pre-existing easement did not end the inquiry. The scope of the pre-1986 easement remained an issue and could not be decided simply by looking at the number of flight operations in a given year. Instead, the Court of Appeals held that spikes in activity from a prior year or group of years (1967-1968 as alleged by the Navy) do not necessarily establish the scope of an easement. 124 F.3d at 1286. The Court also held that the evidence of noisier aircraft post-1986 could also help

[6] *Argent* was also filed as a class action. The class was not certified, although that issue was not raised as part of the appeal. The Court of Appeals, however, treated the appellants in *Argent* as if they constituted three sub-classes of plaintiffs. For example, the Argents themselves were one of six plaintiffs from a particular neighborhood that shared similar complaints about the flight activity at OLF Coupeville. The Court of Appeals summarized the potential significance of the complained of activity to the group as a whole: "If true, this activity is a peculiar burden ***imposed on the Argents and their neighbors*** by the United States' selection of a remote site for aircraft training operations." 124 F.3d at 1284 (emphasis added).

establish a "second taking" and explain why activity levels from the pre-1986 era might not define the scope of an easement. 124 F.3d at 1286-1287.

Finally, *Argent* held that the date of taking in these types of cases is a complex matter that should not be analyzed in an "overly technical" way. 124 F.3d at 1287. The Court of Appeals noted that the date of taking depended on several facts such as when the increase in both flights and noise occurred. The Court rejected as "overly technical" the Navy's attempt to pinpoint an exact date based on an allegation in the complaint. Instead, the Court reasoned that the complaint and other record evidence, such as post-1986 statements and actions by the Navy, should be read together to flesh out the substance of the allegation. There, the Court noted that a fair reading indicated that the plaintiffs alleged a taking "*on or after* April 30, 1986." 124 F.3d at 1287 (emphasis supplied).

**3.**

**Issues to Establish a Taking**

In the wake of *Argent* and its predecessors, the issues that must be addressed to determine if there has been a taking of an avigation easement are:

(1) What is the "entire course of operation" at NAS Oceana and NALF Fentress?

(2) When taken as a whole, is this "course of operation" a "constant source of noise and disruption" to owners of property?

(3) Are the affected property owners peculiarly burdened beyond the public at large?

123 F.3d at 1282-1286.

**a.**

**What is the entire course of operation at NAS Oceana and NALF Fentress?**

It is apparent from the *Argent* opinion that evidence of the course of flight operations at NAS Oceana and NALF Fentress will be admissible. These facts will include the number and description of flight operations, types of aircraft, hours of operations, areas of operation, and all other aspects of operation at NAS Oceana and NALF Fentress. Much of this information is contained in reports and documents in the possession of the United States. For example, as part of the Environmental Impact Statement ("EIS") that was prepared in anticipation of the transfer of the F/A-18 jets that are the subject of this case, ATAC Corporation prepared an Airfield and Airspace Analysis that collects much of this information. Moreover, other documents that Plaintiffs believe are kept in the normal course of business (such as flight logs, internal and external reports, air traffic control data, and other similar records) should also be in the Government's possession and readily available. Indeed, these documents almost certainly were given to ATAC in order to conduct its analysis.

**b.**

**Is the course of operations a constant source of noise and disruption?**

Whether the operations at NAS Oceana and NALF Fentress are a "constant source of noise and disruption" to owners of property will necessitate a broad range of evidence. For example, testimony from property owners and their neighbors, complaint logs at Oceana's AICUZ office, AICUZ maps and other noise contour maps, expert testimony on noise pollution, appraisal, economics, acoustical engineering, and similar disciplines. Evidence of reduced property values may also indicate the level of disruption. (*See Avery v. United States*, 330 F.2d

640, 643 (1964)("[A] subsequent loss in property value may be an essential factor in determination of a subsequent taking.")).

Plaintiffs contend that the AICUZ and other noise contour maps, among this evidence, are valuable and important. The United States disagrees and mentioned several cases during the June 23 Status Conference that it asserted stand for the proposition that AICUZ classification cannot be used to prove a taking. Those cases are: *Davis v. United States*, 35 Fed.Cl. 392 (1996); *Blue v. United States*, 21 Cl.Ct. 359 (1990); *Stephens v. United States*, 11 Cl.Ct. 352 (1986). The holdings in those cases have nothing to do with the allegations in the present case. Each of those cases involved a claim that the Government's mere publication of an AICUZ map and related information constituted a taking of property within the AICUZ noise zones. In other words, the takings claims were similar to down-zoning cases, except that the United States did not zone or rezone the properties involved. The cases cited merely hold that AICUZ is not zoning, it is advisory only. Moreover, the United States, as a landowner, has every right to participate as such in local land use regulation. *See, e.g., Davis*, 35 Fed.Cl. at 396-397; *Blue*, 21 Ct.Cl. at 362; *Stephens*, 11 Ct.Cl. at 363. In short, these cases involved alleged regulatory takings and do not stand for the broad proposition advanced by the United States.

In *Branning*, this Court expressly relied on the AICUZ maps and related documents in holding that noise impact, not altitude, is the primary factor in determining if a taking has occurred:

> This is a case of first impression in which the court may consider the altitude of flights over the property, but ***must give primary consideration to the effect of aircraft noise where the Government itself has adopted and published standards of compatibility of use of the subadjacent property.***

228 Ct. Cl. at 262 (emphasis supplied).

Moreover, at least one federal court has certified a class in an avigation easement inverse condemnation case in which the class was defined as the owners of residential property within the airports 65dB noise contour. *Alvarado v. Memphis-Shelby County Airport Auth.*, United States District Court for the Western District of Tennessee, Case No. 89-CV-3001, April 13, 1993 (Order certifying class); and September 8, 1998 (Order Conditionally Redefining Class and Setting Hearing on Proposed Settlement and Directing Notice; copy attached).[7] The significance of this decision is that the Western District of Tennessee identified the class, those persons who were entitled to recover for inverse condemnation from aircraft noise, by the noise contour in which the residential property was shown on the noise contour map.

**c.**

**Are the property owners peculiarly burdened?**

Implied within this element is the sub-issue of the normal burden that property owners are expected to endure. In *Branning*, for example, the Court expressly found that the FCLP flights were the peculiarly burdensome activity that warranted finding that a taking could occur based on flights in navigable airspace. 228 Ct. Cl. at 242. In *Argent*, the Court of Appeals did not limit its holding to FCLPs only. It left open the possibility that other flight activity could be found to be peculiarly burdensome, and therefore also constitute a taking.

In *Argent*, the Court of Appeals analyzed at some length the case of *Richards v. Washington Terminal Co.*, 233 U.S. 546 (1914), to illustrate the distinction between normal activity (which may not constitute a taking) and peculiarly burdensome activity (which may constitute a taking). In *Richards*, the plaintiff sought compensation for the operation of railroad

[7] The case ultimately settled after certification and the settlement was affirmed by the Sixth Circuit in an unreported opinion, the text of which can be found on Westlaw at 2000 WL 1182446. The appellate opinion does not refer to the noise contour in describing the class, but the September 8, 1998 Order (copy attached) defines the class using the noise contour map, which is attached to the Order as Exhibit A.

tracks and a tunnel near his home. Smoke and exhaust invaded his property as trains passed by. Also, an exhaust fan from the tunnel blew smoke, dirt and other exhaust on his property. The Supreme Court held that the smoke and exhaust from trains passing by was not compensable. All property owners living near train tracks bore the same burden. The exhaust from the fan was a different matter. In that instance, the plaintiff was singled out and peculiarly burdened by virtue of the placement of the tunnel near his property. The Court granted compensation to the plaintiff for the fan exhaust. 233 U.S. at 553-554; 556.

Based on this analysis, the *Argent* Court held that the property owners were peculiarly burdened by the flight activity at OLF Coupeville. There is no doubt that FCLPs were a significant piece of the *Argent* analysis. Indeed, in light of *Branning* and *Argent*, FCLPs almost certainly constitute a "peculiarly burdensome pattern of activity," which takes such cases outside the *Causby* paradigm. But the Court of Appeals did not limit its holding to cases involving FCLP only. The Court left open what might constitute a "peculiarly burdensome pattern of activity:"

> Where a plaintiff complains only of noise resulting from normal aircraft operations, not passing directly overhead, this court follows the general rules springing from *Causby* to deny recovery. [citations omitted] However, where, as here, plaintiffs complain of a peculiarly burdensome pattern of activity, including both intrusive and non-intrusive flights, that significantly impairs their use and enjoyment of their land, those plaintiffs may state a cause of action. [citations omitted] The Argents are not before this court to complain of individual flights, which may or may not pass over their property. Rather, ***they complain of the entire course of operation at OLF Coupeville that entails hundreds of flights per week – an allegedly constant source of noise and disruption. If true, this activity is a peculiar burden imposed on the Argents*** and their neighbors by the United States' selection of a remote site for aircraft training operations. [citations omitted]

124 F.3d at 1284. Plaintiffs believe that it will be necessary to determine what constitutes "normal aircraft operations" and what "course of operation" (i.e., "aircraft training operations") is a "peculiar burden" that constitutes a taking.

**4.**

**Issues in Proving Damages**

The measure of damages in an avigation easement taking case is the "difference in the value of plaintiffs' properties before the taking by the United States . . . and their value after the full extent of the impairment of plaintiffs' use and enjoyment of them became apparent." *Aaron v. United States*, 311 F.2d 798, 802, 160 Ct.Cl. 295 (1963). In other words, it is the "owner's loss, not the taker's gain" that is to be awarded as a result of the taking. *Avery v. United States*, 330 F.2d 640, 642 (Ct.Cl. 1964) *citing, United States v. Miller*, 317 U.S. 369 (1942). This formulation raises several issues: (1) the date of taking, (2) the fair market value before the taking, and (3) the fair market value after the taking, that is, "the full extent of the impairment of plaintiffs' use and enjoyment of them became apparent."

As the Court of Appeals noted in *Argent*, determining the date of taking requires development of facts as to the arrival of the aircraft, their flights, and the increase in noise. 124 F.3d at 1287. The date of taking does not occur until the flights and the attendant noise seriously interfered with the owners' use and enjoyment of their property. *Avery v. United States*, 330 F.2d 640, 642 (Ct.Cl. 1964); *Aaron v. United States*, 311 F.2d 798, 800 (Ct.Cl. 1963). This date, of course, must be after the aircraft arrived and began flights.

Fair market value is defined as what a willing buyer under no obligation to buy would pay to a willing seller and what the willing seller would accept, both being fully informed of all the pertinent facts. *United States v. Silver Queen Mining Co.*, 285 F.2d 506, 508 (10th Cir. 1960)

*citing United States v. Miller*, 317 U.S. 369, 374 (1943). There is no single method or approach to establishing the fair market value of property for takings purposes. *Miller*, 317 U.S. at 373-374. Market value can be demonstrated either by (1) direct evidence of comparable sales, or (2) expert testimony as to the property's value. *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1039 (11th Cir. 1988); *United States v. 429.59 Acres of Land*, 612 F.2d 459, 462 (9th Cir. 1980); *United States v. 320.0 Acres of Land*, 605 F.2d 762, 798 n. 64 (5th Cir. 1979). There is no single discipline (i.e. real estate appraiser) into which all valuation experts must fall. An expert's opinion as to the value of property is admissible provided that he states the assumptions (which need not be comparable sales) on which his opinion is based. *0.161 Acres*, 837 F.2d at 1040; *United States v. 329.73 Acres of Land*, 666 F.2d 281, 283 (5th Cir. 1982). A landowner, for example, is presumed to have special knowledge as to the value of his land and the owner's testimony is admissible in federal courts without further qualification. *United States v. 79.20 Acres of Land*, 710 F.2d 1352, 1357 (8th Cir. 1983). Also, federal courts have accepted the testimony of economists (*See 0.161 Acres*, 837 F.2d at 1041; *Florida Rock Industries, Inc. v. United States*, 791 F.2d 893, 902 (Fed. Cir. 1986); *Wilder Enter., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1143-1144 (4th Cir. 1980); *Miller v. City of Dallas*, U.S. Dist. Court for the Northern District of Texas, No. Civ.A. 3:98-CV-2955-D, (February 14, 2002) 2002 WL 230834), mining engineers, geologists and metallurgists (*United States v. Silver Queen Mining Co.*, 285 F.2d 506, 509 (10th Cir. 1960)), even a real estate developer (*0.161 Acres*, 837 F.2d at 1043), on the issue of fair market value.

Plaintiffs believe that a broad range of evidence may be presented on damages, such as appraisals, regression analyses, and other economic models. Much of this evidence will be through expert witnesses and may apply to multiple properties.

Respectfully submitted,

Date: July 13, 2004

s/Kieron F. Quinn
Kieron F. Quinn
Quinn, Gordon & Wolf, Chtd.
40 West Chesapeake Avenue
Towson, MD 21204
(410) 825-2300
(410) 825-0066 fax
kfquinn@quinnlaw.com

Attorney of Record for
Plaintiffs pursuant to
Rule 83.1(c)(1)

Of counsel:

Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
40 W. Chesapeake Avenue
Towson, Maryland 21204
(410) 825-2300
mwolf@quinnlaw.com

Charles R. Hofheimer
Jack E. Ferrebee
Kristen D. Hofheimer
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
chofheimer@hoflaw.com
jferrebee@hoflaw.com
khofheimer@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Lawrence Woodward
Shuttleworth, Ruloff, Giordano & Swain
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
shuttleworth@srgslaw.com
sswain@srgslaw.com
lwoodward@srgslaw.com

LMC D.C.
98 SEP -9 AM 10: 17

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

MARTHA ALVARADO, et al.,

Plaintiffs,

VS. NO. 89-3001-HBRO

MEMPHIS-SHELBY COUNTY AIRPORT
AUTHORITY,

Defendant.

---

**ORDER CONDITIONALLY REDEFINING CLASS
AND SETTING HEARING ON PROPOSED SETTLEMENT
AND DIRECTING NOTICE**

---

This action is before the Court upon the parties' joint motion seeking approval of the Stipulation of Settlement made between the counsel for the Defendant and the Plaintiff Class Representatives. The Court also has before it the parties' joint motion to redefine the class that was filed pursuant to the parties' Stipulation of Settlement.

The Court finds that the Stipulation of Settlement merits consideration as to its fairness and reasonableness and that a hearing should be conducted to determine whether the settlement should be approved by the Court. The Court finds that the class as originally certified may be appropriately redefined as requested by the parties. The Court finds that good cause exists to delete those persons and entities whom the parties seek to remove from the existing class. The Court also finds that the enlargement of the class is appropriate so as to add those persons who reside within the area currently subject to significant aircraft noise and whom the parties seek to add to the existing class.

This document entered on docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 9-8-98

327

The Court has concluded that the Rule 23(a) requirements are met as to those prospective class members who live in the added areas and that these added class members' claims are appropriate for a Rule 23(b)(3) class. The Court, therefore, grants the parties' motion to redefine the class.

The Court further finds that notice of the fairness hearing should be given to both members of the original class and to those persons who are members of the redefined class.

IT IS, THEREFORE, ORDERED:

1. **Redefined Class.** The Court's order entered on May 5, 1993, certifying and defining the class in this action, is conditionally amended to (a) remove the following persons (unless such persons or entities own other property within the geographic boundaries of the redefined class by virtue of which they are members of the redefined class): (i) all persons or entities who have or had a proprietary interest in real property other than owners of improved residential real estate upon which there is either a single family residence, a duplex or a condominium within the geographic boundaries of the existing certified class, identified as original class areas on Exhibit A to this order, (ii) all persons or entities who voluntarily or involuntarily transferred their ownership interest in such improved residential real property before February 10, 1997, and (iii) all persons who acquired an ownership interest in such residential real property after February 10, 1997, but transferred such ownership interest before the Approval Date (as defined in the Stipulation of Settlement); and (b) add those persons and entities who are owners as of the date of this order, or as of the Approval Date of improved residential real estate upon

which there is either a single family residence, a duplex or a condominium, located within the areas identified as added areas on Exhibit A hereto. In accordance herewith, the class as redefined consists of (1) members of the class initially certified by the Court under order certifying and defining class action entered May 5, 1993, who are Owners (as defined in the Stipulation of Settlement) of improved residential real estate upon which there is either a single family residence, a duplex or a condominium as of either February 10, 1997, or, as of the Approval Date within the original class areas as identified on Exhibit A to this order, and (2) Owners of improved residential real estate, upon which there is either a single family residence, a duplex or a condominium, as of the date of this order, or as of the Approval Date, within the added areas identified on Exhibit A to this order.

2. **Conditional Nature of Redefinition of Class.** The redefinition of the class is conditioned upon the Court's approval of the Stipulation of Settlement and entry of final judgment dismissing this action with prejudice. If the Stipulation of Settlement is approved and becomes final, the judgment shall be applicable to the class as redefined by this order. In the event that the settlement fails to be approved or final judgment does not become final, the redefinition of the class shall be void and the class action will continue to be maintained on behalf of the persons and entities specified in the order certifying and defining class action entered May 5, 1993.

3. **Exclusion.** Those persons or entities who have been conditionally added to the class by virtue of this order may exclude themselves from the redefined class by filing with the Clerk of the Court by October 30, 1998, a written statement that they request exclusion from the redefined class.

4. **Proposed Settlement**. The proposed settlement between the Plaintiff Class and the Defendant appears, upon preliminary review, to be within the range of reasonableness and accordingly shall be submitted to the original class members and the members of the redefined class for their consideration and for a hearing under Fed. R. Civ. P. 23(e).

5. **Hearing**. A hearing shall be held in Courtroom #2, United States District Courthouse, 242 Clifford Davis Federal Building, 167 North Main Street, Memphis, Tennessee 38103, at 10:30 a.m. on Thursday, November 12, 1998, to consider whether the settlement should be given final approval.

(a) Objections by members of the redefined class (except for added class members who timely elect to exclude themselves from the Settlement Class) to the proposed settlement will be considered if filed in writing with the Clerk on or before October 30, 1998.

(b) Objections by original class members, who will be removed from the class as a result of the Court granting the parties' motion to redefine the class, will be considered if filed in writing with the Clerk on or before October 30, 1998.

(c) At the hearing, members of the original and/or redefined class (except for added class members who timely elect to exclude themselves from the class) may be heard orally in support of or in opposition to the settlement, provided such persons file with the Clerk by October 30, 1998, a written notification of the desire to appear personally, or through personal counsel, indicating (if in opposition to the settlement) briefly the nature

of the objection. No person shall be heard orally in support of or in opposition to the settlement unless they follow the procedure set forth in this order.

(d) Class counsel and Defendant's counsel should be prepared at the hearing to respond to objections filed by such persons and to provide other information, as appropriate, bearing on whether or not the settlement should be approved.

6. **Notice.** (a) Defendant's counsel shall by September 18, 1998, mail a notice in the name of the Clerk by First Class Mail, postage prepaid, to all Settlement Class Members who can be identified through reasonable efforts in substantially the same form as Exhibit 2 to the Stipulation of Settlement and shall post such notice and detailed maps of the Geographic Area in the locations specified in said notice. (b) Defendant's counsel shall publish a notice in substantially the same form as Exhibit 3 to the Stipulation of Settlement on two consecutive weeks in *The Commercial Appeal* and once in *The DeSoto Times* and once in *The Southaven Press*.

7. **Additional Notice**. Those persons or entities who have been conditionally removed from the class action by virtue of this order shall be given published notice in substantially the same form as Exhibit B to this order within ten (10) days of the date final judgment dismissing this action with prejudice becomes final; such notice is in addition to the notice directed in paragraph 6 of this order and shall be published on two (2) consecutive weeks in *The Commercial Appeal* and once in *The DeSoto Times* and once in *The Southaven Press*.

Date: 9/8/98

ODELL HORTON, Judge

Agreed and Approved for Entry:

GOODMAN GLAZER GREENER & KREMER
165 Madison Avenue, Suite 1500
Memphis TN 38103

By: ______________________
Eugene Greener, Jr. (7961)

By: ______________________
Harriette R. Coleman (9448)

Attorneys for Plaintiff Class Representatives

GLANKLER BROWN, PLLC
1700 One Commerce Square
Memphis TN 38103

By: ______________________
R. Grattan Brown, Jr. (8441)

By: ______________________
William R. Bradley, Jr. (10911)

Attorneys for Defendant

# EXHIBIT A

## TO ORDER CONDITIONALLY REDEFINING CLASS AND SETTING HEARING ON PROPOSED SETTLEMENT AND DIRECTING NOTICE



# EXHIBIT B

## TO ORDER CONDITIONALLY REDEFINING CLASS AND SETTING HEARING ON PROPOSED SETTLEMENT AND DIRECTING NOTICE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARTHA ALVARADO, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>MEMPHIS-SHELBY COUNTY AIRPORT AUTHORITY,<br><br>Defendant. | Civil Action No. 89-3001-HBRO<br><br>CLASS ACTION |

## NOTICE OF EFFECTIVE DATE OF REMOVAL OF CERTAIN PERSONS AND ENTITIES FROM THE CLASS ACTION

TO: **All Persons or Entities Having a Vested Interest in Real Property in the Vicinity of Memphis International Airport Located Within The Geographic Boundaries Set Forth in This Court's Order of May 5, 1993, Certifying and Defining The Class Action Other Than Owners as of February 10, 1997 or [Approval Date] of Improved Residential Real Estate Upon Which There Is Either a Single Family Residence, a Duplex or a Condominium**

Please take notice that the United States District Court for the Western District of Tennessee on _____________ entered an order approving a settlement of and dismissing this class action with prejudice, which order became final on _____________. If you are a person or entity identified above you were conditionally removed from the class on September 4, 1998. Please take notice that you are and have been removed from the class without condition effective _____________. You will not be bound by the settlement in this case nor able to participate in it. You have the right to commence or continue an action against the defendant based on any claims asserted in the class action subject to any applicable defenses of the defendant at your own expense. **Any statutes of limitation which were suspended due to the filing of this case will begin to run again ninety (90) days after _____________.**

If you have any questions concerning this notice or your rights, please contact an attorney of your choosing at your expense.

**PLEASE DO NOT CONTACT THE COURT FOR INFORMATION.**

Dated: _____________, 1998

By Order of the Honorable Odell Horton,
Judge of the United State District Court
for the Western District of Tennessee

Docket No. 01-201L

**UNITED STATES COURT OF FEDERAL CLAIMS**

**MEMORANDUM**

TO: JUDGE Wiese
FROM: CLERK'S OFFICE

The attached was received on 7-14-04
and the following defect(s) is/are noted:

1. ✓ Untimely, due to be filed by 7-13-04 [Rule 7.2]

2. ✓ Proof of service: [Rule 5.1]
 ✓ is missing; ____ is not signed and/or dated;
 ____ shows service on wrong attorney or of wrong item;
 ____ is not attached to each document or copy

3. ✓ Not signed by the attorney of record [Rules 11 and 83.1(c)(2)]

4. ____ Does not comply with the provisions of Rule:

| | | |
|---|---|---|
| ____ | 5.2(a)(1)(A) | Re: table of contents or index to appendix is missing (or in wrong location) |
| ____ | 5.2(a)(1)(G) | Re: index to appendix is to be located in both the front of the brief <u>and</u> in front of the appendix |
| ____ | 5.2(b) | Re: length of briefs or memorandum |
| ____ | 5.3(c) | Re: binding |
| ____ | 5.3(d) | Re: original/copies missing |
| ____ | 5.3(g) | Re: Judge's name on all filings |
| ____ | 7(b) | Re: brief, supporting memorandum, affidavits shall be attached to motion |
| ____ | 24(c) | Re: motion to be accompanied by a pleading |
| ____ | 56(h) | Re: proposed findings and/or response to proposed findings is missing or not a separate document |
| ____ | 56.1(b) | Re: statement of facts and/or counter-statement of facts is missing or not a separate document |
| ____ | 77.1(a) | Re: improper use of the night box |
| ____ | 83.1(c)(1) | Re: one attorney for a party; attorney to be an individual not a firm |
| ____ | ________ | Re: ________________ |

5. ____ Original affidavit(s)/declaration(s) is/are missing
6. ____ No provision in the Rules (or court order) for the filing of this item
7. ____ This case has been designated as an ***ECF*** case.
8. ____ ______________________________

Debbie
Deputy Clerk

To: **CLERK'S OFFICE**

**THE ATTACHED ITEM IS TO BE:**

✓ Filed by my leave, **OR**,

***PURSUANT TO THE ACCOMPANYING ORDER:***
***(Note - This is a separately written order)***

____ Filed by leave of the judge and party is being notified for correction of defect(s) as to future filings.

____ Returned to party for correction of defects, with the document to be filed by leave of the judge, if it is out of time, with opposing counsel's time to respond to run from the date of re-service.

____ Returned to party for correction of defect(s).

[signature]
Signature

7/16/04 JUL 19 2004
Date