IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **CAROLE and ROBERT TESTWUIDE, et. al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 01-201 L** |
| | ) | **Judge Wolski** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

# UNITED STATES' MOTION TO COMPEL PRODUCTION OF DISCOVERY RESPONSES CONCERNING MILITARY RECORDS

The United States, through its undersigned counsel, hereby moves to compel production by plaintiffs of responses to Interrogatory number 19 propounded on May 12, 2005 concerning military records. Plaintiffs have refused to provide a complete response to Interrogatory number 19 relying on a February 6, 2002 protective order denying the United States access to the Navy's service records of plaintiffs Robert Testwuide, James Lyles, and George Bunn. That interrogatory requests that test plaintiffs indicate whether they have served in the United States Military, and if so, to provide information and documentation related to their service.[1] However, as explained *infra*, the 2002 protective order was issued in the context of the then-pending motion for class certification. Class certification subsequently was denied on June 17, 2003. Testwuide v. United States, 56

[1] The information sought includes: 1) branch of service; dates, locations, of assignments and duty positions; 3) rank and character of discharge; 4) and convictions under the Uniform Code of Military Justice whether through

Fed. Cl. 755 (June 17, 2003) (Bush, J.). Further, the prior order applied only to these three individuals, who were at the time putative class representatives. The current discovery request is unrelated to those individuals. The protective order invited the United States to renew its request for these service records at a later date if it could be demonstrated that the records were reasonably calculated to lead to the discovery of admissible evidence.

Because plaintiffs' motion for class certification was denied and the case is now proceeding on the merits, the rationale underlying the protective order no longer applies and a review of the test plaintiffs' military records is reasonably calculated to lead to the discovery of admissible evidence. Specifically, the records bear on the test plaintiffs' exposure to jet noise during their military service, as well as their credibility.

The United States, therefore, moves the Court to order the test plaintiffs to respond to defendant's Interrogatory number 19. Should the Court agree that defendant is entitled to obtain discovery of these records, the United States intends to retrieve the test plaintiffs' service records maintained by the National Archives at the National Records Center, Military Personnel Records in St. Louis, Missouri and the Department of the Navy. The United States does not intend to review the test plaintiffs' fitness reports and evaluations which are maintained in a separate section of each service record. If this motion is granted, the United States will take appropriate steps to ensure that this portion of each record is segregated from the remainder of the record. In addition, the United States will

---

nonjudicial punishment or court-martial.

not disclose the contents of the service records outside of this litigation.

The parties attempted to resolve this discovery dispute; however, these efforts proved unsuccessful and additional "meet and confer" sessions would be futile.

## INTRODUCTION

Plaintiffs filed the instant case on April 5, 2001 and moved to have it certified as a class action with Testwuide, Bunn, and Lyle as three of the class representatives. The United States opposed class certification, which lead to discovery, briefing, and the determination that plaintiffs' claims should be resolved individually rather than as a class action. See Testwuide v. United States, 56 Fed. Cl. 755 (June 17, 2003) (Bush, J.). During the phase of the litigation that focused on class certification, defendant sought to review the military records of Testwuide, Bunn, and Lyle, all of whom had previously served in the United States Navy. Plaintiffs opposed and moved for a protective order to prevent defendant from accessing the Navy records related to the three named plaintiffs who were military veterans.

At a Rule 16 hearing the Court granted plaintiffs' motion for a protective order preventing defendant from accessing Testwuide, Bunn, and Lyle's military records. The Court summarized plaintiffs' contention that military service records were irrelevant to class certification[2]

[2] Plaintiffs also raised Privacy Act concerns with respect to the Navy records. As more fully discussed in the earlier briefing opposing the protective order, these assertions were without merit because the review of military service records by the Department of Justice for purposes of defending the Department of Defense ("DoD") is an authorized routine use under the DoD regulation implementing the Privacy Act. See, 51 Fed. Reg. 18086 at 18087 (May 16, 1986). The Court did not rely on the Privacy Act in granting the protective order. R. at 15 (Ex. A).

> Plaintiffs adequacy as class representatives would be determined solely on their status as residential property owners and ... there was no connection between personnel records and the question of adequacy and typicality of class representatives.

R. at 15 (Ex. A). Judge Bush agreed with plaintiffs and explicitly predicated its ruling on the lack of a connection between the military records and the issue of class certification:

> [A]t this point, I will grant plaintiffs' motion for protective order, precluding the defendant from accessing plaintiffs' personnel records, because I do not see the relevance of these records to the issue of class certification at this time.

Id. The Court, however, further advised that defendant was free to renew its request if the information became relevant and could lead to admissible evidence. Id.

The protective order is limited to the three named plaintiffs with military service who were offered as class representatives – Testwuide, Bunn, and Lyle. By its terms the protective order does not apply to other plaintiffs in the case, in particular the current test plaintiffs. Plaintiffs, however, have relied on the protective order in refusing to answer defendant's Interrogatory Number. 19 regarding the test plaintiffs' military service and in declining to turn over military records in the test plaintiffs' possession. See, Pls.' Resp. to Def.'s Interrog. No. 19 (Ex. B).

**ARGUMENT**

Now that the case is proceeding on the merits and class certification is no longer an issue, the test plaintiffs' military records have become relevant and could lead to admissible evidence. This is especially true in light of the liberal discovery standards and

broad interpretation of relevancy in the context of discovery. Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993). See also Estee Lauder, Inc. v. The Fragrance Counter, Inc., 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ("discovery rules are to be given a broad and liberal construction to effectuate their purpose of ensuring that civil trials are not conducted in the dark"). Relevancy for discovery is flexible; it should be broadly construed to encompass "'any matter that bears on, or that reasonably could lead to other matters that could bear on, or any issue that is or may be in the case'." White v. Kenneth Warren & Son, 203 F.R.D. 364, 365 (N.D. Ill. 2001) (quoting Oppenheimer Fund, Inc v. Sanders, 437 U.S. 340 (1978)).

Defendant has learned through depositions that at least four of the test plaintiffs –Theodore Dingle, Kenneth Hill, Michael Leary, and Sean Ryan– have served in the United States Navy. Dingle, Leary, and Hill indicated that they retired from the Navy after 20 to 30 years of service. See, Dingle Depo. at 20 (Ex. C); Leary Depo. at 5 (Ex. D); Hill Depo. at 5 (Ex. E). Ryan testified that he served for three years on active duty and two years in the Reserves. Ryan Depo. at 10-11 (Ex. F). Their assignments and duty positions, which are documented in their military records, are relevant to assessing their exposure to and knowledge of Naval aircraft operations. The plaintiffs' previous exposure to jet operations will assist in evaluating plaintiffs' claims that F/A-18 CD operations have substantially interfered with the use and enjoyment of their property. It is noteworthy that plaintiffs' counsel did not object when Dingle, Hill, Leary, and Ryan

were questioned during their depositions about their various Navy assignments and duty positions. Moreover, memories fade over time, particularly considering the transient nature of military service. The military service records will be useful for verifying the information provided in the depositions, as well as filling in gaps in their memories which were made evident during the depositions.

Additionally, the test plaintiffs' military service records may contain information pertaining to their credibility as witnesses. The records include documentation regarding disciplinary matters and whether they were prosecuted in courts-martial. Reviewing the test plaintiffs' military records will allow the United States to evaluate the nature of any offenses and whether they are relevant to the witnesses' credibility at trial. The records may reveal that there is evidence admissible under Federal Rules of Evidence 404, 607, 609. The records will also reveal if there were any offenses that were not disclosed in the depositions, or any other potentially admissible evidence not yet disclosed by plaintiffs.

As a practical matter the United States can not state with particularity all the possible relevant information that may be found in the test plaintiffs' military records without having the opportunity to review the documents. Blout v. Wake Electric Membership Corporation, 162 F.R.D. 102, 105 (E.D. N.C. 1993) ("personnel files possess an inherent reliability which cannot now be duplicated through any other source, especially through depositions.").

## CONCLUSION

The protective order was predicated on lack of relevance between the plaintiffs' military service records and the issue of class certification. As class certification was denied and the case is now proceeding on the merits, the test plaintiffs' military records are relevant to both their allegations and to their credibility as witnesses. Accordingly, the Court should conclude that the protective order does not serve to bar discovery of the military service records of the test plaintiffs. Defendant, therefore, respectfully request that this Court order plaintiffs to fully respond to Interrogatory number 19 and to produce the requested military records in their possession.

Dated this 16th day of August 2005.

Respectfully Submitted,

/s/ Steven D. Bryant
STEVEN D. BRYANT
KELLE S. ACOCK
United States Department of Justice
Environment and Natural Resources
Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Email: steven.bryant@usdoj.gov
Voice: (202) 305-0424
Fax: (202) 305-0506

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **United States' Motion to Compel Production of Discovery Responses Concerning Military Records** was served electronically to the parties listed below on 16 August 2005.

Jack Ferrebee
Hoffheimer/Ferrebee, PC,
1060 Laskin Road, Suite 12-B
Virginia Beach, VA 23451

Lynn Miller

# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROL & ROBERT TESTWUIDE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 01-201L |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Courtroom 5
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Wednesday,
February 6, 2002

The parties met, pursuant to the Notice of the Court, at 11:05 a.m.

BEFORE: HONORABLE LYNN J. BUSH
Judge

APPEARANCES:

For the Plaintiff:

KIERON F. QUINN, Esquire
MARTIN F. WOLF, Esquire
Quinn, Gordon & Wolf, LLP
40 West Chesapeake Avenue
Suite 408
Baltimore, Maryland 21204-4803
(410) 825-2300

For the Defendant:

JULIA KINGSLEY EVANS, Esquire
U.S. Department of Justice
601 D Street, N.W.
Washington, D.C. 20004
(202) 514-4485

Well, we don't have documents that support standing there watching aircraft fly over your house. We did identify that the Navy has flight tract information. And we believe they probably have air traffic control information that would show exactly where the planes fly. But we don't have air traffic control facilities. We're just homeowners.

So we don't have documents that support a lot of the things they've asked for. As it turns out, between the Navy's own documents and between the documents that we gave them, we've responded. They are the documents that respond to their requests.

THE COURT: Thank you. On December the 20th, plaintiffs filed a motion for a protective order. In that request, they asked the Court to issue a protective order, barring the government from obtaining plaintiffs' civilian and/or military service records, which they contend were irrelevant to the issue of class certification in this case. Defendant filed an opposition to plaintiffs' motion for a protective order on January 2nd.

Defendant states that it wants the Navy records of Robert Testwuide, James Lyle, and George Bunn. The declarations of those three individuals state that they had Navy service. And defendant states that there may be information that plaintiffs had knowledge related to

aircraft operations at Oceana or, perhaps -- or that plaintiffs may have a history of filing meritless complaints. Plaintiffs then filed a reply in support of their request for a protective order on January 11th.

Therein, they stated that plaintiffs' adequacy as class representatives would be determined solely on their status as residential property owners and depositions that there was no connection between personnel records and the question of adequacy and typicality of class representatives. And then they also cited privacy act concerns.

I have considered the briefings on both of those -- on that particular set of motions. And, at this point, I will grant plaintiffs' motion for protective order, precluding the defendant from accessing plaintiffs' personnel records, because I do not see the relevance of these records to the issue of class certification at this time.

However, I do not preclude defendant from renewing its request sometime in the future if further evidence becomes available to solidly demonstrate that this information is relevant and could lead to admissible evidence.

Now, I'm going to move forward to the fifth set, which is plaintiffs' motion to compel the production of

# EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, et. al., Plaintiffs, | ) | |
| v. | ) | No.: 01-201L<br>Judge Victor J. Wolski |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

PLAINTIFFS' RESPONSES TO
DEFENDANT'S SECOND INTERROGATORIES

COME NOW the Plaintiffs, and in their responses to Defendant's First Set of Interrogatories, states as follows:

INTRODUCTORY STATEMENT AND GENERAL OBJECTIONS

These answers represent the efforts of Plaintiffs in the presently pending test case to respond to Defendant's written discovery based on the investigation which Plaintiffs' counsel have thus far been able to carry out in connection with the facts relative to this litigation. Unless otherwise stated or suggested "Plaintiffs" refers to those twelve identified properties.

There may exist further information responsive to discovery that is not within Plaintiffs' present knowledge or reasonably available to Plaintiffs. There exist documents relating to the subject matter of Defendants' discovery, which Plaintiffs have not yet been given access to, identified, or reviewed, despite their best efforts to do so. There are certainly persons with knowledge relating to the subject matter of Defendant's discovery of whom Plaintiffs are not presently aware. Accordingly, these responses are based upon those facts and information now known to Plaintiffs as well as Plaintiffs' counsels'

c. the basis for your claim that jet noise and/or overflights have caused the condition

d. when, where, and who diagnosed and/or treated the condition

e. Furnish any and all medical records associated with diagnosing and/or treating the condition.

f. Furnish all medical records associated with annual check-up physical examinations for the last 20 years.

**RESPONSE:**

Plaintiffs have provided their responses to this interrogatory in each of their depositions. See also Herbert Van Nostrand's audiological evaluation dated October 21, 2003 numbered as document PL103049. Betty Capps does not have in her possession the medical record related to the bleeding in her ears as a result of wearing ear plugs. She is attempting to retrieve the record from a health care provider, but will provide a medical release, if necessary. The other test case plaintiffs are not claiming that the noise involved in this proceeding caused hearing loss or medical or psychological problems for which treatment was sought or required.

**INTERROGATORY 19 –**

For each of the test plaintiffs, state whether you have ever served in the United States military (Active Duty or Reserves). If so provide the following:

a. the branch of service and dates and location of your previous and current assignments

b. duty positions

c. rank when discharged or retired and character of your service as reflected on your Certificate of Release or Discharge From Active Duty

d. whether you ever convicted of any crime under the Uniform Code of Military Justice, whether through nonjudicial punishment or court-martial.
If so, state the crime( s) and the resulting action.

e. Furnish copies of all documents in your possession relating to your military service.

**RESPONSE:** Plaintiffs object to this interrogatory on the grounds that the court has previously granted a protective order in the Testwuide case regarding the same

information. Plaintiffs therefore request that you withdraw this interrogatory without the necessity of formal motion practice.

**INTERROGATORY 20 –**

For each of the test plaintiffs, explain all of the reasons why you have not moved from your residence (the residential property that is the subject of this litigation) in the time since the F/A-18 C/D aircraft were relocated from NAS Cecil Field, Florida to NAS Oceana. If the costs associated with moving and/or purchasing a new home was a factor in your decision to remain in your residence provide the following:

a. A list of all your assets and their value, including, but not limited to financial assets (investment accounts, including, but not limited to stocks, bonds mutual funds, retirement accounts (401 K, IRA, bank accounts), college savings accounts (529, Coverdell), real property assets other than your principal residence.

b. A list of all of your debts (secured or unsecured) and to what entities and/or persons the debts are owed, including, but not limited to all credit cards lines of credit, loans (home equity, personal, automobile, or otherwise), mortgages (other than those you have previously identified in response to previous discovery requests).

c. Your annual income from 1999 to the present, including, but not limited to all personal income, investment income, capital gains, and business income alimony and/or child support, gifts (exceeding $1 000), and inheritance.

d. A copy of your federal and state income tax returns from 1999 to 2004.

RESPONSE:

Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this interrogatory on the grounds that financial information, including a litigants net worth, is only discoverable when punitive damages is an issue.

ON BEHALF OF TEST CASE PLAINTIFFS

BY: /s/ Jack E. Ferrebee

Jack E. Ferrebee
1060 Laskin Road, Suite 12B
Virginia Beach, Virginia 23451
(757) 425-5200
jferrebee@hoflaw.com

# EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ORIGINAL

| | |
|---|---|
| CAROL AND ROBERT TESTWUIDE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) NO. 01-201L |
| | ) Judge Victor J. Wolski |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

DEPOSITION UPON ORAL EXAMINATION
OF THEODORE RANKIN DINGLE
TAKEN ON BEHALF OF THE DEFENDANT

Virginia Beach, Virginia

June 8, 2005

Appearances:

SHUTTLEWORTH, RULOFF GIORDANO & SWAIN, P.C.
By: STEPHEN C. SWAIN, ESQUIRE
Counsel for the Plaintiffs

through?

A. E-3, E-4, E-5, E-6, E-7, W2, W3, W4.

Q. And when did your military career end?

A. April 1st of 2004.

Q. So it was roughly 29 years?

A. 30 years and some odd months. I believe that was the -- I became a diver in '75. I entered the Navy, started boot camp in January of '73. Or '74. January of '74.

Q. What assignments did you have? What locations throughout your career?

A. I was --

Q. And the time periods too, please.

A. I was in Norfolk on a tender from '74 until '76.

Q. And if I could interject, what is a tender?

A. A surface tender. It's a ship that repairs other ships. I was part of a dive team there that was located at NOB.

Q. NOB?

A. Naval Operations Base, which is now NAVSEA Norfolk now, I guess.

Q. Okay. And then after 1976?

A. '76 I went to -- I was in training at Indian Head, Maryland. I returned to Fort Story for a brief -- about two years.

I deployed to Sigonella, Sicily for three years.

# EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CAROL AND ROBERT TESTWUIDE, et al., )
)
)
Plaintiffs, )
)
v. ) NO. 01-201L
) Judge Victor J. Wolski
THE UNITED STATES OF AMERICA, )
)
Defendant. )

DEPOSITION UPON ORAL EXAMINATION
OF MICHAEL J. LEARY,
TAKEN ON BEHALF OF THE DEFENDANT

Virginia Beach, Virginia

April 28, 2005

Appearances:

SHUTTLEWORTH, RULOFF GIORDANO & SWAIN, P.C.
By: STEPHEN C. SWAIN, ESQUIRE
Counsel for the Plaintiffs

U. S. DEPARTMENT OF JUSTICE
By: STEVEN D. BRYANT, ESQUIRE
DOMINICK G. YACONO, ESQUIRE
Counsel for the Defendant

ORIGINAL

those. Work with curriculum, training guides, that type of thing.

Q. What type of supply?

A. Naval Supply.

Q. I understand that. But I mean is it foodstuffs? Is it weaponry?

A. Parts.

Q. Parts. Okay.

And how long have you been doing that?

A. About three and a half years.

Q. Three and a half years with Serco or with Resource Consultants?

A. Most of it was with Resource Consultants. Just the past couple of months Serco was acquired.

Q. And what did you do before that -- before you were in this position?

A. I was a storekeeper in the Navy for 20 years.

Q. Storekeeper. So you retired from the Navy?

A. Yes, sir.

Q. What was your rank when you retired?

A. Senior chief.

Q. Senior chief.

Okay. If you would, go through your assignments in terms of where you were located with the Navy throughout the whole course of the 20 years?

# EXHIBIT E

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 01-201L |
| | ) | Judge Victor J. Wolski |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEPOSITION UPON ORAL EXAMINATION
OF KENNETH A. HILL
TAKEN ON BEHALF OF THE DEFENDANT

Virginia Beach, Virginia

June 9, 2005

Appearances:

HOFHEIMER / FERREBEE, P.C.
By: KRISTEN HOFHEIMER, ESQUIRE
Counsel for the Plaintiffs

ORIGINAL

16:56 Also, she can't type down what we are both saying at the same time so please don't talk over me and I'll try not to do that with you. So just make sure of that.

Also, if you do -- if you don't understand a question that I ask, please say so and I'll clarify it at any time. 17:10

And then, lastly, if you need a break any time during this, just say the word and we'll take a few minute break then. Just let me know. Okay?

17:23 A. Okay.

Q. Understand all that?

A. Yes.

Q. All right. What is your name and address?

A. Kenneth A. Hill, 925 Lamplight Lane, Virginia Beach, Virginia 23452. 17:34

Q. And what is your occupation?

A. I'm a machinist at Norfolk Naval Shipyard.

Q. And how long have you done that?

A. Two and a half years.

17:48 Q. And what did you do before that?

A. I was in the Navy for 20 years.

Q. So you retired?

A. That's correct.

Q. Did you go right into that position as a machinist after you retired? 17:58

# EXHIBIT F

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | NO. 01-201L<br>Judge Victor J. Wolski |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

ORIGINAL

DEPOSITION UPON ORAL EXAMINATION
OF SEAN M. RYAN
TAKEN ON BEHALF OF THE DEFENDANT

Virginia Beach, Virginia

April 27, 2005

Appearances:

SHUTTLEWORTH, RULOFF GIORDANO & SWAIN, P.C.
By: STEPHEN C. SWAIN, ESQUIRE
Counsel for the Plaintiffs

U. S. DEPARTMENT OF JUSTICE
By: STEVEN D. BRYANT, ESQUIRE
DOMINICK G. YACONO, ESQUIRE
Counsel for the Defendant

A. Correct.
Q. And that's when your mother moved to 23rd Street?
A. Bought the house, yes.
Q. And how old were you when that happened? 23rd Street?
A. 17 or 18. Something like that.
Q. For how many years?
A. What, that she lived at 23rd Street?
Q. Yes.
A. 20.
Q. 20 years, for a long, long time?
A. Yes.
Q. And how long did you live with her there?
A. Well, on and off.
Q. You would come back and visit from whatever you were doing?
A. Sure.
Q. Did you go to college at 18?
A. No.
Q. Did you join the service like your dad?
A. I was in the service.
Q. Okay. What service?
A. The Navy.
Q. Tell me about your -- if you can go through your assignments and your occupations?

A. Went to boot camp in Great Lakes.

Q. What year was that?

A. May of '80.

Q. Okay.

A. Excuse me. May of '77. I got out May of '80. Went to boot camp. Then I was in Japan for a couple of months. Then I was stationed on the *Constellation*, came home for leave, and the captain of the *Kennedy* knew that I was home, and we lived together in Hawaii. Me and his son played baseball. So he talked to me, got me transferred to the *Kennedy*, and I spent like two and a half years on the *Kennedy*. I was in the reserve program. I did three years active regular Navy, two active reserve, weekend warrior, and then one year.

Q. All right, sir. So three years active?

A. Six years.

Q. Two years week end warrior?

A. Weekend warrior.

Q. And what was the final year?

A. That was just like if they needed you, they would call you.

MR. YACONO: Sleeper.

Q. Sleeper reserve. And I guess you weren't called up in that period?

A. No.