**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, *et al.*, *Plaintiffs*, v. THE UNITED STATES OF AMERICA, *Defendant*. | ) | No.: 01-201L (Honorable Victor J. Wolski) |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Plaintiffs, pursuant to RCFC 7 and 37, submits this memorandum in support of the motion to compel discovery filed herewith.

**BACKGROUND**

**1.**

**Document Requests**

In response to requests for production of documents, Defendant produced, *inter alia*, hundreds of e-mails sent or received by Navy personnel, its contractors, civilian employees and agents. Some of these persons are lawyers. A number of the e-mails are redacted to varying degrees. In some instances, whole pages are redacted; in others, only a word or two.

In its privilege logs, Defendant has asserted as the basis for each redaction the attorney-client privilege and the qualified immunity from discovery under the attorney work-product doctrine. On July 28, 2005, counsel for Plaintiffs sent a letter to counsel for Defendant, challenging the assertion of privilege to 27 documents. (See Exhibit 4 to Motion to Dismiss). With respect to the assertion of the attorney-client privilege, Plaintiffs' counsel requested the underlying information supporting the assertion of the privilege, specifically:

> . . . the attorney involved, the confidential nature of the communication, the position within the Department of the Navy for each recipient, the authority of each recipient within the Department of the Navy, and all persons to whom the document (or redacted material, as the case may be) has been disclosed, including the time up until the date of your response to this inquiry.

With respect to the attorney work-product doctrine, Plaintiffs' counsel again requested the underlying information supporting the assertion of qualified immunity, specifically:

> . . . the attorney involved, the litigation that was anticipated at the time the document was prepared and disclosed, the litigation issues to which the document (or redacted material, as the case may be) is directed, and all persons to whom the document (or redacted material, as the case may be) has been disclosed, including the time up until the date of your response to this inquiry.

On August 2, 2005, Defendant's counsel responded by e-mail and stated that they were reviewing the 27 documents that were being challenged. (See Exhibit 4 to the Motion to Compel). Defendant has never provided any of the requested justifications for either the attorney-client privilege or attorney work-product doctrine.

**2.**

**The Deposition Testimony**

On April 7, 2005, Plaintiffs deposed Joseph Czech. Mr. Czech is an employee of Wyle Laboratories, the acoustical engineering firm that produced the noise contours for the 1998 Environmental Impact Statement on behalf of the Navy. During the deposition, counsel asked Mr. Czech a series of questions directed to the work he did for the Navy after the final noise report was submitted to the Navy in February 1998. Counsel for Defendant directed Mr. Czech not to answer questions about this work, which was termed by Plaintiffs' counsel for purposes of that deposition, the "mystery project." The stated basis for the instruction not to answer the questions was the attorney-client privilege and the qualified immunity from discovery under the

attorney work-product doctrine. Defendant's counsel would not even let Mr. Czech testify as to the underlying elements for asserting the attorney-client privilege or attorney work-product doctrine. For example, the following exchange took place:

> Q. Did you ever have conversations with
> Mr. Zusman when there was no legal representative
> present regarding this work?
>
> A. Yes.
>
> Q. How often did you talk to him?
>
> A. Oh, in some periods on a daily basis.
> Q. And generally what was the nature of the
> work? Was it an investigation?
>
> MR. BRYANT: If it's an investigation,
> you can answer that question.
>
> A. It was an investigation.
>
> 00067
> Q. Did it involve the noise contours at NAS
> Oceana?
>
> MR. BRYANT: Do not answer that
> question.
>
> MR. WOLF: What's the privilege?
>
> MR. BRYANT: Attorney-client and
> attorney work product privilege.
>
> MR. WOLF: I didn't ask him a
> communications question. I asked him if his work
> involved noise contours. So there's no
> communication with an attorney.
>
> MR. BRYANT: Attorney work product.
> You're getting into clearly the subject matter of
> what was done. And this clearly falls within the
> privilege. I mean, I don't have a problem with
> forming a background in terms of time and place,
> that kind of thing. But that's getting within the

substance of what was done and is clearly within
the privilege.

Q. Was your work for the purpose of
litigation?

MR. BRYANT: If you know the answer. If

00068

you don't know don't say that you do.

A. It was for the purposes of potential
litigation.

Q. Was the potential the lawsuit that we're
involved in today that we're here to take this
deposition for?

MR. BRYANT: Again, if you know or don't
know –

A. There would be know way of me knowing if
it was for this particular litigation or not.

Q. Do you know it was for potential
litigation because someone told you that?

MR. BRYANT: I direct you not to answer
that. You're getting into communications at this
point.

Q. How do you know it was for potential
litigation?

MR. BRYANT: Again, same privilege.
Don't answer.

(Exhibit 2 to Motion to Compel Discovery, Czech Transcript, p. 66, l.ine 12 – p. 67, line 19).

On September 19, 2005, Plaintiffs' Counsel deposed Alan Zusman. Mr. Zusman is a civilian employee of the Navy who was the point of contact for the Navy with Wyle Labs during the preparation of the report issued in February 1998. During the deposition, Plaintiffs' Counsel asked about the work performed by Wyle after the February 1998 report, the so-called "mystery

project" alluded to in Mr. Czech's deposition. Once again, Defendant's Counsel instructed the witness not to answer, asserting the attorney-client privilege and qualified immunity under the attorney work-product doctrine. The following exchange is an illustrative example of the exchanges:

> 00017
>
> Q. What do you recall, if anything, about what Wyle did in respect of Oceana Naval Air Station or Fentress with regard to what Wyle did after February of 1998 with regard to those two airfields?
>
> MR. BRYANT: I'm going to object if we're going to get into privileged communications. We may even want to take a break on this.
>
> MR. QUINN: I asked him his recollection. I didn't ask him any communications.
>
> MR. BRYANT: Okay. That's fine.
>
> Q. What do you recall about what Wyle was doing?
>
> A. I don't recall specifics because there
>
> 00018
>
> was, post-EIS there was discussions on –
>
> MR. BRYANT: That's getting into discussions. I think we may want to take a break on this and make sure we're not getting into an area that's going to be privileged.
>
> MR. QUINN: I'm concerned about talking to the witness during a deposition –
>
> MR. BRYANT: I'm concerned about –
>
> MR. QUINN: -- if it is purely a question of privilege.
>
> MR. BRYANT: I'm concerned about him

revealing privileged communications.

MR. QUINN: This is communications between a lawyer and Mr. Zusman; is that what we're talking about?

MR. BRYANT: You know what privileged communications are. We don't need to get into a discussion about that.

MR. QUINN: I've got an idea.

MR. BRYANT: We've already gone into this in Joe Czech's deposition. I want to make sure

00019

we're not getting into areas that are privileged communications. I want to make sure he understands that so let's take a quick break.

MR. QUINN: Okay.

After Defendant's Counsel had a private conversation with Mr. Zusman, they continued:

00020

Q. After Wyle issued its final noise report prior to the C/D EIS did Wyle perform any work under your supervision in respect of Fentress or Oceana that you can recall?

A. There was continued work by Wyle Labs after the EIS was published, yes.

Q. What was that?

A. To the best of my recollection, the commanding officer at NAS Oceana, I'm not sure who it was specifically at the time, but because the noise issues were so paramount and the EIS had concern not only to the Navy but the community at large and in keeping with the AICUZ program looking for ways to mitigate noise the commanding officer wanted to look at various operational alternatives to perhaps see if there was other ways we can reduce noise, however small they may be. And so we had Wyle Labs continued under contract and at some

point after the EIS was published there were various alternatives looked at at the request of

00021

the Navy that we had Wyle Labs run some analysis on.

Q. Now, put some kind of a timeframe on this. Wyle Labs was also the –

MR. BRYANT: Objection. We're getting into privileged material now.

MR. QUINN: What?

MR. BRYANT: We're getting into privileged discussions.

MR. QUINN: I haven't asked the question yet.

MR. BRYANT: I'll let you ask the next question. I just want to caution you.

MR. QUINN: Can I learn what privilege we're talking about?

MR. BRYANT: Attorney-client privilege, attorney work product.

MR. QUINN: Which? Or is it both?

MR. BRYANT: It's both.

Q. After they published the final noise study for the C/D they also became the noise

00022

contractor for the EIS that was drafted for the movement or the deployment of the E/F to Oceana; is that correct?

A. That's correct.

Q. So the period I'm talking about now is between the time that they finished their work on

the C/D and the time that they began the EIS. Is that -- is that what you're talking about now?

A. As I –

MR. BRYANT: I'm going to have to object and direct you not to answer these questions because we are getting into discussions that are privileged communications.

(Exhibit 3 to Motion to Compel Discovery, Zusman Transcript, p. 17, line 8 – p. 19, line 4; p. 20, line 2 – p. 22, line 13).

In the July 28th letter from Plaintiffs' Counsel to Defendant's Counsel trying to resolve this dispute (Exhibit 4 to Motion to Compel Discovery), Plaintiff also requested the information supporting the assertion of the attorney-client privilege and qualified immunity under the attorney work-product doctrine in Mr. Czech's deposition.[1] Defendant's counsel has never responded to the request.

**ARGUMENT**

**1.**

**Attorney-Client Privilege and**
**Attorney Work-Product Doctrine**

At its core, the attorney-client privilege protects confidential communications from a client to an attorney made for the purpose of obtaining legal advice. *Sparton Corp. v. United States*, 44 Fed. Cl. 557 566 (1999). The privilege applies to individual clients as well as "within a government agency or between the agency and the Department of Justice." *Paalan v. United States*, 51 Fed. Cl. 738, 753 (2002). "Courts generally have accepted that attorney-client privilege applies in the governmental context, while expressing apprehension at its pernicious potential in a government top-heavy with lawyers." *Jupiter Painting Contracting Co., Inc. v.*

[1] Defendant's Counsel stated during Mr. Zusman's deposition that the assertions of attorney-client privilege and qualified immunity from discovery were the same as the assertions in the Czech deposition. Plaintiffs' Counsel assumes an effort to resolve the disputes from the Zusman deposition will meet the same non-response.

*United States*, 87 F.R.D. 593, 598 (E.D. Pa. 1980). Thus, while government agencies may invoke the attorney-client privilege under appropriate circumstances, the agency must bear the burden of establishing the elements of the privilege, namely:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made
>     (a) is a member of the bar of a court, or his subordinate and
>     (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed
>     (a) by his client
>     (b) without the presence of strangers,
>     (c) for the purpose of securing primarily either
>         i. an opinion of law or
>         ii. legal services or
>         iii. assistance in some legal proceeding, and not
>     (d) for the purpose of committing a crime or tort; and
> (4) the privilege has been
>     (a) claimed and
>     (b) not waived by the client.

*Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 643 (S.D.N.Y. 1991); *see also, Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 154, 161 (D.D.C. 1999)(setting forth identical elements).

Although the Defendant has failed to establish any of the elements necessary to assert the privilege, several points are of particular importance in this case. First, a bare assertion of confidentiality is insufficient to satisfy that element of the privilege. It is not enough for the government to show that the document was written by or to an attorney. *Mead Data Central, Inc. v. United States Dept of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). This is particularly true where the document is circulated to staff persons other than those who initially requested the advice. *Coastal States Gas Corp. v. Dept. of Energy*, 1979 WL 6202, U.S. Dist. Court for the District of Columbia, Civil No. 76-1173 (August 22, 1979). Moreover, documents

do not become privileged merely because they are routed through an attorney or an attorney's office. *Resolution Trust Corp*., 137 F.R.D. at 643.

The second, and closely related issue, is the wide circulation of the disputed documents. The asserted privilege for a document or communication may be waived if it has been disclosed. The test of whether a government agency has waived the privilege "is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members who are authorized to speak or act for the organization in relation to the subject matter of the communication." *Coastal States Gas Corp. v. Dept of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980), *citing Mead Data*, 566 F.2d at 253 n. 24.

The attorney work-product doctrine is embodied in RCFC 26(b)(3), which is virtually identical to its counterpart in the Federal Rules of Civil Procedure. The doctrine protects from disclosure material prepared in anticipation of litigation or for trial and is twofold, depending on the nature of the material being protected. First, as to factual materials, the doctrine provides a qualified immunity from discovery. Such materials may be the subject of proper discovery upon a showing by the party seeking discovery that (1) he has a substantial need for the materials to prepare his case, and (2) he is unable to obtain the substantial equivalent without undue hardship. Second, the mental impressions, conclusions, opinions, or legal theories of an attorney concerning the litigation are privileged from disclosure. *Banks v. Office of the Senate Sergeant-At-Arms*, 222 F.R.D. 1, 3-4 (D.D.C. 2004); *Resolution Trust*, 137 F.R.D. at 644. Once again, the party asserting the doctrine bears the burden of showing the elements necessary to invoke and maintain the doctrine. RCFC 26(b)(5)("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the

documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."); *Resolution Trust*, 137 F.R.D. at 644.

The first and most fundamental element is that the material must have been prepared in anticipation of specific litigation. *Id*.; *Coastal States*, 1979 WL 6202 at p. 4. Not everything that an attorney commits to paper or communicates is work product. *Coastal States* at p. 5, *quoting Kent Corp. v. NLRB*, 530 F.2d 612, 623 (5th Cir. 1976)("The executive branch of our government employs an uncountable and ever-growing number of attorneys, and the Act can hardly be understood as protecting everything they put on paper."). In order to meet the standard, the situation must have progressed to the point where the prospect of litigation is specifically identifiable, even if litigation had not already commenced. *Coastal States* at p. 5. Thus, whether a document was prepared in anticipation of litigation will depend on a number of factors, including the date the document was prepared, the purpose for its preparation, whether it is prepared as a regular business practice. *Resolution Trust*, 137 F.R.D. at 644 n. 3.

**2.**

**Application to the Disputed Documents**

The Defendant has not established any of the elements necessary to invoke either the attorney-client privilege or attorney work-product doctrine as to the 27 documents in question. Without a description of the communication, it is impossible for the Court (or anyone else) to determine that the communication was made by a client to a lawyer for the purpose of obtaining legal advice, etc., or that it was prepared in anticipation of litigation. Thus, the defendant has failed to establish that the attorney-client privilege or work product doctrine should apply to any disputed document. The un-redacted versions with attachments should be produced.

Even if the Defendant were to supply such information, it appears that any privilege that may have attached to a document was waived. Almost all of the redacted documents were distributed widely in un-redacted form. By way of example, OCE213659-OCE213662 (hereafter "Test Doc") illustrates this point, although it is by no means the only such document. Test Doc is a string of connected e-mails from various authors to various recipients beginning on December 9, 2001 through and including December 11, 2001. The redactions are all manually made, which indicates that the recipients of each e-mail received all preceding e-mails in the string. The final e-mail in the string at the top of page OCE213659 was delivered to 10 e-mail addresses. Most of the names are known to Plaintiffs' Counsel, and many are attorneys in the Department of Justice or the Navy. Two recipients, however, are not even Navy personnel. Micah Downing and Geral Long are both employees of Wyle Laboratories, a contractor that performed work for the Navy. It is almost certain that neither Mr. Downing nor Mr. Long are authorized to speak on behalf of the Navy regarding the communications.

Of the 27 documents at issue, at least 19 fall into the category of documents for which the privilege has been waived by dissemination:

| | |
|---|---|
| OCE213574 | OCE213578 |
| OCE213635 | OCE213635 |
| OCE213642 | OCE213645 |
| OCE213646 | OCE213646 |
| OCE213647 | OCE213649 |
| OCE213650 | OCE213651 |
| OCE213652 | OCE213654 |
| OCE213655 | OCE213656 |
| OCE213659 | OCE213662 |
| OCE213663 | OCE213663 |
| OCE213664 | OCE213664 |
| OCE213665 | OCE213665 |
| OCE213683 | OCE213683 |
| OCE213716 | OCE213716 |
| OCE213717 | OCE213720 |
| OCE213721 | OCE213721 |

| | |
|---|---|
| OCE213722 | OCE213727 |
| OCE213730 | OCE213730 |
| OCE213731 | OCE213731 |

In each case, there are recipients who are unknown to Plaintiffs' counsel, unidentified by the Defendant, and/or not attorneys who have appeared in this litigation for the Defendant.

**3.**

**<u>Application to the "Mystery Project"</u>**

The Defendant also has failed to establish the elements necessary to invoke the attorney-client privilege and attorney work-product doctrine to the disputed questioning in the Czech and Zusman Depositions. Moreover, the Defendant refused to allow the witnesses to answer questions that might have disclosed some of the information necessary to evaluate the claimed privileges. Finally, the testimony that Mr. Zusman gave demonstrates that the so-called "Mystery Project" is not the subject or the attorney-client privilege or the attorney work-product doctrine.

If the Court will recall, Mr. Czech is an employee of Wyle Laboratories, a contractor for the Navy. During his deposition, when questioned about the "Mystery Project" after Defendant's Counsel instructed Mr. Czech in private as to the privileges, Mr. Czech testified that the "Mystery Project" "was for the purposes of potential litigation." (Exhibit 2, p. 68, lines 2-3). When asked how he knew that it was for potential litigation, the Defendant invoked the attorney-client privilege:

> 00067
> Q. Was your work for the purpose of
> litigation?
>
> MR. BRYANT: If you know the answer. If
> 00068
> you don't know don't say that you do.

A. It was for the purposes of potential litigation.

Q. Was the potential the lawsuit that we're involved in today that we're here to take this deposition for?

MR. BRYANT: Again, if you know or don't know –

A. There would be know way of me knowing if it was for this particular litigation or not.

Q. Do you know it was for potential litigation because someone told you that?

MR. BRYANT: I direct you not to answer that. You're getting into communications at this point.

Q. How do you know it was for potential litigation?

MR. BRYANT: Again, same privilege. Don't answer.

(Exhibit 3, Czech Deposition, p. 67, line 20 – p.68, line 19).

During Mr. Zusman's deposition, he explained a little more about the "Mystery Project" and the persons involved. What is abundantly clear is that the "Mystery Project" did not involve a lawyer, so there can be no attorney-client privilege, nor any mental processes or legal theories of an attorney. When asked to describe the "Mystery Project," Mr. Zusman said:

Q. After Wyle issued its final noise report prior to the C/D EIS did Wyle perform any work under your supervision in respect of Fentress or Oceana that you can recall?

A. There was continued work by Wyle Labs after the EIS was published, yes.

Q. What was that?

A. To the best of my recollection, the commanding officer at NAS Oceana, I'm not sure who it was specifically at the time, but because the noise issues were so paramount and the EIS had concern not only to the Navy but the community at large and in keeping with the AICUZ program looking for ways to mitigate noise the commanding officer wanted to look at various operational alternatives to perhaps see if there was other ways we can reduce noise, however small they may be. And so we had Wyle Labs continued under contract and at some point after the EIS was published there were various alternatives looked at at the request of
00021
the Navy that we had Wyle Labs run some analysis on.

(Exhibit 3, Zusman Deposition, p. 20, line 2 – p. 21, line 2). It is clear that the "Mystery Project" was undertaken at the request of the commanding officer of NAS Oceana, not an attorney. Moreover, the communications between the Defendant and Wyle Laboratories, both in giving the work to be performed and reporting the results, did not involve lawyers:

00024

Q. Are you the person that designed the project that Wyle ultimately submitted an invoice for?

A. I was the person that drafted the scope of work for the project in the contract.

Q. Were you the person to whom Wyle reported on whatever they did?

A. One of, yes.

Q. Okay. And to whom else did they report?

A. They would have contacted staff at NAS Oceana who was also engaged in doing this. Beyond that, I don't know who else they would have talked
00025
to.

Q. When you say staff at NAS Oceana who was that?

A. Specific names I can't recall. Functionally it would have been the commanding officer, the air ops officer, air traffic control officer, and community plans and liaison officer.

Q. Did you talk to Captain Zobel about this project?

A. I did.

Q. Did you talk to any of the individuals who held the titles that you just named?

A. At one point or another, yes.

Q. What names do you remember were those people?

A. There was a gentleman Robert Rountree, there was a Mr. Ray Ferenzi. Those are the only two I can recall at the moment.

Q. Okay. Did you talk to anybody else about the scope of work or about its output when it ultimately finished?

00026

A. Staff at the Naval Facilities Engineering Command Atlantic Division.

Q. Who?

A. Mr. Dan Cecchini.

(Exhibit 3, Zusman Deposition, p. 24, line 10 – p.26, line 4). Not one communication of either the assignment or the work product involves a lawyer. Neither Mr. Zusman, nor Captain Zobel, nor Mr. Firenze, nor Mr. Rountree, nor Mr. Cecchini, is a lawyer. There is simply no basis for the Defendant to assert either the attorney-client privilege or the attorney work-product doctrine.

**CONCLUSION**

As the party asserting the privileges, the Defendant bears the burden of demonstrating that the asserted privileges apply. The Defendant has failed to satisfy the requirements to assert either the attorney-client privilege or attorney work-product doctrine regarding the disputed documents or the "Mystery Project" that was the subject of questioning at the Czech and Zusman depositions. Moreover, the limited testimony that was taken indicates that inquiry into the "Mystery Project" does not infringe either the attorney-client privilege or the attorney work-product doctrine. Accordingly, the motion to compel discovery should be granted.

Dated this 24th day of October 2005.

Respectfully submitted,

/s/ Jack E. Ferrebee
Jack E. Ferrebee
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
jferrebee@hoflaw.com

Counsel of Record for Plaintiffs

Of Counsel:

Kieron F. Quinn
Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
102 W. Pennsylvania Avenue
Suite 402
Towson, Maryland 21204
(410) 825-2300
kfquinn@quinnlaw.com
mwolf@quinnlaw.com

Charles R. Hofheimer
Kristen D. Hofheimer
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
chofheimer@hoflaw.com
khofheimer@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Lawrence Woodward
Shuttleworth, Ruloff, Giordano & Swain
4525 South Blvd., Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
tshuttleworth@srgslaw.com
sswain@srgslaw.com
lwoodward@srgslaw.com

**CERTIFICATION OF GOOD FAITH**

I HEREBY CERTIFY that I contacted counsel for the Defendant, Steven Bryant, on July 28, 2005, as a good-faith attempt to resolve this discovery dispute without court action. After acknowledging that the letter was received and that the matter was being reviewed, the Defendant made no further response to the good-faith attempt to resolve this dispute. Copies of the communications between counsel are attached as Exhibit 4.

/s/ Martin E. Wolf
Martin E. Wolf