**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CAROLE and ROBERT TESTWUIDE, et. al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**No. 01-201 L**
**Judge Wolski**

**DECLARATION OF RONALD J. BORRO**

1. I am Ronald J. Borro. I currently serve as Senior Counsel (Installations and Environment) within the Office of the Assistant General Counsel (Installations and Environment), Department of the Navy. The Assistant General Counsel (Installations and Environment) provides legal advice to the Assistant Secretary of the Navy (Installations and Environment). The Assistant General Counsel (Installations and Environment) reports to the General Counsel of the Navy. The General Counsel of the Navy is the principal legal advisor to the Secretary of the Navy

2. The Assistant Secretary of the Navy (Installations and Environment) ("ASN(I&E)") is responsible for formulating Navy-wide policies and procedures on, providing advocacy and strategic planning for, and overseeing all Department of the Navy functions and programs relating to installations, safety, environment, and strategic sourcing. Navy instructions direct ASN(I&E) to establish and supervise execution of Departmental principles, policies, and procedures to be followed in matters relating to, *inter alia*: environmental protection; environmental planning; environmental compliance; natural and cultural resources conservation; and acquisition, use, and disposal of real property.

3. I have been a member of the team providing legal advice to ASN(I&E) and his staff since October 1994. I have provided legal advice on a wide range of issues including the realignment of F/A-18 C/D aircraft from Naval Air Station ("NAS") Cecil Field, Florida, to NAS Oceana, Virginia. Specifically, I advised ASN(I&E) and his staff on environmental legal requirements associated with the realignment of the F/A-18 C/D aircraft, litigation challenging the Navy's decision under the

EXHIBIT B

National Environmental Policy Act (NEPA) to realign the F/A-18 C/D aircraft to NAS Oceana, environmental legal requirements associated with the East Coast home basing of the F/A-18 E/F aircraft, litigation challenging the F/A-18 E/F East Coast home basing decision, and the captioned lawsuit alleging inverse condemnation from operations of aircraft based at NAS Oceana.

4. In July 1998 Concerned Citizens Against Jet Noise (CCAJN) filed a lawsuit in the United States District Court for the Eastern District of Virginia (Norfolk Division) challenging the Navy's decision to realign F/A-18 C/D aircraft from NAS Cecil Field, Florida, to NAS Oceana, Virginia. In January 1999 the Court held a hearing on CCAJN's request for a preliminary injunction and on cross-motions for summary judgment. At the end of that hearing the Court denied the plaintiffs' request for a preliminary injunction. In May 1999 the Federal District Court granted the Navy's Motion for Summary Judgment and denied CCAJN's request for a permanent injunction, ending the litigation but for an unsuccessful appeal by CCAJN to the U.S. Court of Appeals for the Fourth Circuit. During the course of the CCJAN lawsuit it became clear from statements that appeared in press reports and on public web sites that other lawsuits were imminent. As an illustration, I have attached to my declaration an excerpt from the CCAJN website dated April 15, 1999. This excerpt sets forth what CCAJN characterized as "The PLAN" and states, in pertinent part, "CCAJN is . . . preparing to take additional steps that will hold the US Navy and our elected officials accountable for deliberately undermining our safety and quality of life, to provide compensation to those most severely impacted, and to support future noise mitigation efforts." The first "additional step" outlined by CCAJN is "File a class action 'inverse condemnation' lawsuit against the US Navy." The website then lays out what the theory of such a lawsuit would be, i.e., "An inverse condemnation lawsuit would assert that the US Navy has violated this principle by 'taking' property value from residents living within area most affected by jet-aircraft operations . . ." To prepare for these anticipated lawsuits, an analysis of litigative risk, which included technical analyses, was initiated under the direct supervision of Navy counsel.

5. As a part of the overall evaluation of litigative risk and to assist Navy and Department of Justice counsel in providing advice to senior management regarding that risk, Wyle Laboratories, Inc. ("Wyle"), which has been under contract to the Navy since the early 1990's as the Navy's primary contractor for analyses of aircraft noise, prepared technical analyses. Mr. Joseph Czech was the engineer who performed such analyses conducted by Wyle. Mr. Alan Zusman, an employee of the Navy who is the Navy's principal adviser on aircraft noise and land use planning and who was operating under the direction of Navy counsel, served as the Navy's liaison with Wyle. These analyses were undertaken as part of the Department of the Navy's overall litigative risk analysis, which took place between February 1999 and February 2000. I understand that in his deposition

Mr. Czech indicated that the efforts he was involved with which I describe here took place in 1998. On information and belief, Mr. Czech simply was mistaken about the period during which his analyses were conducted.

6. These analyses necessarily involved several offices and commands within the Department of the Navy. While the process was conducted under the supervision of counsel, the results of these analyses were reviewed by the Assistant Secretary of the Navy (Installations and Environment) and his staff, the Chief of Naval Operations and his staff, the Commander, Fleet Forces Command and his staff, Commander, Naval Air Forces Atlantic and his staff, Commander, Naval Facilities Engineering Command and his staff, and Commanding Officer, NAS Oceana and his staff. Each of these offices and commands was responsible to some degree for land use planning, aircraft operations, aircraft noise compatibility, and the environmental impact analysis underlying the decision to realign the F/A-18C/D aircraft to NAS Oceana. Based on these responsibilities, it was critical that each of these offices and commands actively participate in the analyses used to evaluate the litigative risk and to inform the advice of Navy counsel and Department of Justice counsel provided to senior Navy and Department of Justice management associated with a potential taking claim based on aircraft operations. On information and belief, these analyses were not provided to anyone who did not have a legitimate need for the information.

7. I reviewed the plaintiff's Motion to Compel Discovery, the updated privilege log provided to plaintiffs on October 28, 2005, and the underlying documents and the materials withheld under the attorney work product doctrine and attorney-client privilege as described in the updated privilege log. For the material in those documents (which were generated during the October-December 2001 time period) that was withheld, I confirm that counsel involved in preparation of those documents were representing the Department of the Navy, either within the Department of the Navy or at the Department of Justice, in matters associated with the basing and operation of aircraft at NAS Oceana and that those documents represent exchanges between counsel, or between counsel and Department of the Navy clients, that qualify as privileged attorney work product and attorney-client communications. These communications were intended to be kept confidential. These communications were, at the same time, critical in conjunction with the then-pending Testwuide litigation and in anticipation of litigation arising from the F/A-18 E/F East Coast basing process. The issue that is at the heart of the communications, i.e., efforts to obtain more accurate information about how the F/A-18 C/D aircraft and F-14 aircraft were being flown at NAS Oceana, was relevant both to establishing the baseline noise environment used in the F/A-18 E/F East Coast basing EIS and to understanding to what extent use of any inaccurate information had affected the projections of noise contained in the EIS for the realignment of the F/A-18 C/D aircraft from NAS Cecil Field to NAS Oceana. This noise projection is a centerpiece of the plaintiffs' complaint. Navy

attorneys and Department of Justice attorneys were therefore necessarily involved in these communications for purposes of the ongoing NEPA analysis, including potential litigation arising from that process, and for the purposes of the pending Testwuide litigation. To the extent that Wyle Laboratories employees were included in such communication, it was because as the Navy's long-time primary aircraft noise contractor they were an integral part of the team preparing the NEPA analysis where these issues were being addressed.

8. Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge.

Date NOVEMBER 10, 2005 Ronald J. Borro

RONALD J. BORRO

# Survey 3/99

On this page:

- CCAJN' Survey
- Are You Aware That:
- The Plan

## CCAJN's SURVEY & PLAN TO:

### 'HOLD RESPONSIBLE OFFICIALS ACCOUNTABLE'

**____I support filing an Inverse Condemnation lawsuit against the US Navy that seeks monetary compensation for the depression in value of my property, for my cost to reduce intrusive noise in my home or business, and for the negative impact on my Quality of Life as a consequence of increased aircraft operations associated with NAS Oceana.**

**____I a support a ballot initiative (referendum) that seeks annual rebates to individual taxpayers on 'paid' personal property taxes associated with residential and business real estate located within the high noise and crash zones.**

**____ I am willing to volunteer some time and effort to help pursue these objectives.**

NAME:______________________ PHONE:______________

E-MAIL:________________

***CCAJN SEEKS TO PRESERVE and ENHANCE COMMUNITY QUALITY OF LIFE BY WORKING CONSTRUCTIVELY TO REDUCE THE ADVERSE ENVIRONMENTAL, SAFETY, and ECONOMIC IMPACTS ASSOCIATED WITH MILITARY AIRCRAFT OPERATIONS.***

Name:________________

Address:________________

City:________________

**CITIZENS CONCERNED ABOUT JET NOISE**

**2004 BRICKELL COURT**

**VIRGINIA BEACH, VA 23454**

# ATTENTION HOMEOWNERS AND BUSINESSES!!!!

## *Are you aware that:*

- **You and your family are living in a high noise or crash zone???**
- **Jet noise will increase up to fourfold in your subdivision by the end of 1999?**
- **Residents will ultimately have to foot the more than $1.6 *BILLION* bill (US Navy estimate) to sound proof homes, businesses, schools, churches, and other public facilities?**
- The Navy has not revealed the safety implications of conducting increased aircraft operations, including air show practices, over your neighborhoods and schools?
- Your property value will be adversely affected? Homes will be harder to sell?
- **Children are attending schools, public and private, that do not meet interior noise level standards even today? Hundreds of classes are, in fact, held in noise-sensitive trailers?**
- Your Quality of Life will diminish? Working and playing outside will be unbearable?
- In addition to the 156 F/A-18's arriving from Florida, the US Navy is *ALSO* planning to replace 147 existing F-14 aircraft with aircraft that are 2-4 times louder?
- You may eventually become a prisoner in your own home?

**CITIZENS CONCERNED ABOUT JET NOISE (CCAJN)**

# *The PLAN*

The US Navy, with the unquestioning cooperation of your elected officials, has deliberately circumvented the National Environmental Policy Act by concealing the full impact of relocating 156 F/A-18 aircraft to NAS Oceana. CCAJN is seeking, through the federal court, to require the US Navy to delay the movement of the aircraft until it has made a full, credible, and official public declaration of these impacts. A federal district court decision is expected shortly. CCAJN is also preparing to take additional steps that will hold the US Navy and our elected officials accountable for deliberately undermining our safety and quality of life, to provide compensation to those most severely impacted, and to support future noise mitigation efforts:

- **File a class action 'Inverse Condemnation' lawsuit against the US Navy.** Existing law and the US Constitution prohibits the US Government from **'taking'** something of value from its citizenry without providing reasonable compensation. An inverse condemnation lawsuit would assert that the US Navy has violated this principle by **'taking'** property value from residents living within areas most affected by jet-aircraft operations, and that these operations impose safety and health risks to which residents would not otherwise be exposed. The fact that the US Navy is on record as acknowledging a "significant impact" to areas of Virginia Beach and Chesapeake exposed to additional aircraft operations, and estimated substantial costs to mitigate these impacts provide a foundation for such a lawsuit. Ample precedent exists. The courts, in a number of cases, have required the Department of Defense to pay substantial monetary awards to individual taxpayers because of military aircraft operations that constitute a **'taking'**. (NOTE: Legal expenses are

typically a percentage of the judgment award and not 'out of pocket'.)

- **Seek property-tax relief through a ballot referendum.** Such a referendum would seek an *'annual' rebate to individual taxpayers on 'paid' property taxes.* The percentage rebate would depend on the noise zone in which a residence or business is located, or if the home or business is within an Accident Potential Zone.

[ Up ]

**Send mail to ccajn@juno.com with questions or comments about this web site.**
**Last modified: April 13, 1999 This is a 'FrontPage98' design.**