**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CAROL AND ROBERT TESTWUIDE, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>*Defendant.* | No.: 01-201L<br>(Honorable Victor J. Wolski) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Plaintiffs, pursuant to RCFC 37, submit this memorandum (1) in reply to the response filed by Defendant to Plaintiffs' motion to compel discovery, and (2) in response to Defendant's motion for protective order.

**INTRODUCTION**

Plaintiffs have moved to compel production of documents that were either withheld or redacted on the grounds of attorney-client privilege or the attorney work-product doctrine. Plaintiffs also moved to compel two witnesses, Joseph Czech and Alan Zusman, to answer questions at deposition regarding work that Mr. Czech performed for the Defendant under Mr. Zusman's supervision in 1998 (the "Mystery Project"). Both witnesses were instructed not to answer questions regarding the Mystery Project on the same grounds (attorney-client and work product).

Defendants have responded to the motion to compel on both procedural and substantive grounds. Procedurally, Defendant asserts that Plaintiffs failed to "meet and confer" prior to filing the motion in violation of RCFC 37. Substantively, Defendant asserts that the attorney-client privilege, and/or the attorney work-product doctrine shield the disputed documents and

deposition testimony from discovery. In support of its substantive argument, Defendant submits the Affidavit of Ronald J. Borro in an effort to establish the elements necessary to invoke the attorney-client privilege and attorney work-product doctrine.

The record demonstrates that Plaintiffs have complied with the requirements of RCFC 37 for filing a motion to compel discovery. In light of the undisputed record, Defendant's assertion that it was in the process of evaluating the documents and testimony that were withheld is specious. Moreover, Mr. Borro's after-the-fact rationalization that is offered to support the attorney-client privilege and attorney work-product doctrine conflicts with the testimony of the witnesses (Messrs. Czech and Zusman), and does not establish that the disputed documents were ever intended to be or remain confidential. Having fully explained its position and made its best case for hiding the disputed documents and testimony from discovery, Defendant has failed to establish that either the attorney-client privilege or the attorney work-product doctrine was properly invoked. Accordingly, the Court should compel Defendant to produce unredacted copies of the disputed documents and to produce Messrs. Czech and Zusman for deposition on the so-called "mystery project."

## ARGUMENT

### 1.

### The Motion to Compel Complies with RCFC 37

RCFC 37(a)(2)(B) states in pertinent part, "The motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." Plaintiffs' motion contains the requisite certification with the correspondence between the parties attached as an exhibit. Specifically, the letter from Plaintiffs' counsel to

Defendant's counsel dated July 28, 2005, the first sentence of which indicated that the letter was a "good faith attempt to resolve dispute regarding discovery . . . ."

The Defendant argues that the July 28th letter does not satisfy the RCFC 37 requirement to attempt to resolve the dispute without court action because (1) the letter didn't state explicitly that Plaintiffs would file a motion to compel if Defendant ignored the letter for three months, and (2) Plaintiffs did not make a second attempt to resolve the dispute before filing the motion. (Defendant's Response at p. 3). Defendant makes an additional argument regarding the Zusman Deposition because the July 28th letter does not mention Mr. Zusman's testimony. The Zusman deposition wasn't taken until September 19, 2005.

RCFC 37(a)(2)(B) does not require any specific methodology or language in making a good faith effort to resolve the dispute. RCFC 37 also does not require multiple attempts to resolve the dispute with a party who ignores the request. Thus, Defendant's first two points have no merit. The July 28th letter was absolutely clear that Plaintiffs challenged Defendant's discovery responses, specifically invocation of the attorney-client privilege and attorney work-product doctrine, and they were giving Defendant a chance to establish the foundation for the privilege. It is axiomatic that a non-response by Defendant would run the risk of a motion to compel.

Finally, Defendant asserts that Plaintiffs did not "meet and confer" regarding Mr. Zusman's deposition testimony because the July 28th letter predates the deposition. Therefore, the motion to compel as to Mr. Zusman should fail.

The timing of Mr. Zusman's deposition in relation to the July 28th letter does raise problems, but not for Plaintiffs. As shown in the excerpts attached to Plaintiffs' motion, Mr. Zusman was asked questions about the Mystery Project and Mr. Czech's work on that project. In

directing Mr. Zusman not to answer a question, Defendant's counsel stated: "We've already gone into this in Joe Czech's deposition. I want to make sure we're not getting into areas that are privileged communications." (Zusman Deposition, p. 18, line 20 – p. 19, line 2).

Two things are abundantly clear from this quotation.

- First, Defendant aligned Mr. Zusman's testimony with Mr. Czech's testimony regarding the Mystery Project. The assertions of privilege and work product were the same in both cases. Defendant argues that Plaintiffs were required to "meet and confer" again to try to resolve the identical dispute which Plaintiffs attempted to resolve in the July 28th letter. Given the complete lack of response by Defendant from July 28th through September 19th on this particular privilege issue, it would have been futile to try to resolve the Zusman dispute. "The law does not require people to engage in futile acts." *Scheufler v. General Host Corp.*, 126 F.3d 1261, 1268 (10th Cir. 1997).
- Second, and perhaps more important, Defendant knew as of September 19th that it was not going to resolve the dispute regarding Mr. Czech's deposition. That is apparent from the statement in Mr. Zusman's deposition. Yet, Defendant had not responded to the July 28th letter as of that date. In fact, Defendant would ignore the July 28th letter for two more months, and responded only then (November 10th) because Plaintiffs filed the motion to compel. Contrary to its self-righteous and self-serving declarations, it is Defendant who "upset the previously existing good working relationship between the parties" when it chose to ignore Plaintiffs' efforts to resolve these discovery disputes. Professional courtesy required Defendant to respond to the July 29th letter, not just ignore it. It is obvious now that Defendant had no intention of doing so.

Accordingly, Plaintiffs complied with the commands of RCFC 37(a)(B)(2) in trying to resolve the dispute without resorting to motion practice.

**2.**

**Defendant has Failed to Establish the Foundation for the Attorney-Client Privilege And the Attorney Work-Product Doctrine**

Defendant's sole basis for invoking the privilege and work product doctrine is set forth in the Affidavit of Ronald J. Borro. Mr. Borro's testimony, however, fails to set forth the necessary elements to invoke the privilege and doctrine.

**A.**

**The Mystery Project**

Paragraphs 5 and 6 of the Borro Affidavit set forth the sum of the Defendant's claim to assert the privilege and work product doctrine. In essence, Mr. Borro states that Alan Zusman had Mr. Czech at Wyle Laboratories perform "analyses" from February 1999 through February 2000. He states further that Mr. Zusman was "operating under the direction of Navy counsel ...."; that these analyses were part of the Navy's "litigation risk analysis" (Borro Affidavit, ¶ 5); and that the results were reviewed by, the Assistant Secretary of the Navy; Chief of Naval Operations; Commander, Fleet Forces Command; Commander, Naval Air Force Atlantic; Commander, Naval Facilities Engineering Command; Commanding Officer, NAS Oceana; and the staffs of each of these persons. (Borro Affidavit, ¶ 6).

Mr. Borro's carefully worded affidavit, the work product of a lawyer after-the-fact, doesn't square with Mr. Zusman's limited testimony about the Mystery Project. Mr. Zusman has been employed by the Navy for 25 years and currently holds two titles: Assistant Director of the

Base Development Group at Headquarters Naval Facilities Engineering Command, and AICUZ[1] Program Manager on the Staff of the Navy Commander Installations. (Zusman Deposition, p. 4, line 18 – p. 5, line 1). Essentially, in these positions he is the Navy's "principal advisor on aircraft noise and land use planning." (Borro Affidavit, ¶ 5).

Mr. Zusman's limited testimony regarding the Mystery Project did not even hint that any lawyers were involved, or that the Project was part of what Mr. Borro described as "the overall evaluation of litigative risk" performed "under the direction of Navy counsel." Instead, Mr. Zusman testified that the work performed by Wyle, the so-called "Mystery Project," was part of the AICUZ program of cooperating with local authorities in compatible land use planning, performed at the instigation of the commanding officer of Oceana:

> 00020
> Q. After Wyle issued its final noise report
> prior to the C/D EIS did Wyle perform any work
> under your supervision in respect of Fentress or
> Oceana that you can recall?
>
> A. There was continued work by Wyle Labs
> after the EIS was published, yes.
>
> Q. What was that?
>
> A. To the best of my recollection, ***the***
> ***commanding officer at NAS Oceana, I'm not sure who***
> ***it was specifically at the time, but because the***
> ***noise issues were so paramount and the EIS had***
> ***concern not only to the Navy but the community at***
> ***large and in keeping with the AICUZ program looking***
> ***for ways to mitigate noise the commanding officer***
> ***wanted to look at various operational alternatives***
> ***to perhaps see if there was other ways we can***
> ***reduce noise***, however small they may be. And so we
> had Wyle Labs continued under contract and at some
> point after the EIS was published there were

[1] AICUZ is an acronym for Air Installation Compatible Use Zones. This is a program within the Navy that, as the name suggests, attempts to work with local authorities to plan for land use that is compatible with Naval air installations.

various alternatives looked at at the request of

00021
the Navy that we had Wyle Labs run some analysis
on.

(Zusman Deposition, p. 20, line 2 – p. 21, line 2)(emphasis supplied). Nowhere does Mr. Zusman mention the supervision of, communication with, or input from any lawyer. Moreover, Mr. Zusman didn't discuss the results of the Mystery Project with any lawyers:

00024
***Q. Are you the person that designed the***
***project that Wyle ultimately submitted an invoice***
***for?***

***A. I was the person that drafted the scope***
***of work for the project in the contract.***

***Q. Were you the person to whom Wyle reported***
***on whatever they did?***

***A. One of, yes.***

***Q. Okay. And to whom else did they report?***

***A. They would have contacted staff at NAS***
***Oceana who was also engaged in doing this.*** Beyond
that, I don't know who else they would have talked

00025
to.

***Q. When you say staff at NAS Oceana who was***
***that?***

***A. Specific names I can't recall.***
***Functionally it would have been the commanding***
***officer, the air ops officer, air traffic control***
***officer, and community plans and liaison officer.***

***Q. Did you talk to Captain Zobel about this***
***project?***

***A. I did.***

Q. Did you talk to any of the individuals who held the titles that you just named?

A. At one point or another, yes.

Q. What names do you remember were those people?

***A. There was a gentleman Robert Rountree, there was a Mr. Ray Ferenzi. Those are the only two I can recall at the moment.***

Q. Okay. Did you talk to anybody else about the scope of work or about its output when it ultimately finished?

00026

A. Staff at the Naval Facilities Engineering Command Atlantic Division.

Q. Who?

***A. Mr. Dan Cecchini.***

(Zusman Deposition, p. 24, line 10 – p. 26, line 4). None of the people identified by Mr. Zusman, either by title or by name, is a lawyer.

Two things are clear from the limited testimony that Mr. Zusman was allowed to give: (1) the Mystery Project was undertaken as part of the Navy's normal operations involving aircraft noise, and (2) no lawyers were involved directly in the genesis of the Project or in reviewing the results. The most that Mr. Borro can add to the analysis is that the Mystery Project may have been reviewed by many different people after it had been completed for some additional purpose involving potential litigation. In that respect, it has a status no greater than any other internal material that lawyers review. That does not make those materials subject to the attorney-client privilege or within the scope of the attorney work-product doctrine.

The attorney-client privilege can only be asserted where the communication is based on confidential information, proof of which is the burden of the Defendant, the party asserting the privilege. *Mead Data Central, Inc. v. Dept. of the Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). The mere allegation of confidentiality is insufficient to carry that burden. *Coastal States Gas Corp. v. Dept. of Energy*, U.S. Dist. Court for D.C., Civil No. 76-1173, August 22, 1979 at 5, citing *Mead Data*. Accordingly, the claim of privilege must be rejected.

The attorney work-product doctrine is designed to provide an attorney the ability to analyze and prepare his client's case without fear of disclosing his mental impressions. *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 644 (S.D.N.Y. 1991). It does not extend, however, to every document prepared by an attorney or at an attorney's direction. *Id*. The Defendant must show that the disputed material will disclose the attorney's thought processes. The information before the Court, particularly Mr. Zusman's testimony, shows that no attorney's mental impressions or thought processes are involved in the Mystery Project. Not only has Defendant failed to demonstrate with any specificity that a lawyer's mental impressions would be disclosed, the Defendant has failed to demonstrate that a lawyer's mental impressions or thought processes are even involved in the Mystery Project. Thus, the attorney work-product doctrine does not apply.

For the first time, in response to the motion to compel, the Defendant has identified three documents created by Mr. Czech, which appear to be the output of the Mystery Project. Defendant has claimed the same attorney-client privilege and attorney work-product doctrine treatment for these documents. Although the documents are responsive to prior discovery requests and existed well before this case commenced, Defendant did not identify them or place them on any prior privilege log exchanged in this case. Of course, the analysis that applies to the

Czech and Zusman testimony regarding the Mystery Project applies equally to these documents. Thus, the Court should order that the documents be produced as well as ordering that Messrs. Czech and Zusman appear for deposition to answer questions regarding the Mystery Project.

**B.**

**The Disputed Documents**

The issues surrounding the disputed documents are even easier for the Court to address. Mr. Borro, in his affidavit, describes the asserted "privileged" communications as part of the process of preparing the Environmental Impact Statement for the citing of F/A-18 E/F East Coast:

> ***The issue that is at the heart of the communications***, i.e., efforts to obtain more accurate information about how the F/A-18 C/D aircraft and F-14 aircraft were being flown at NAS Oceana, ***was relevant both to establishing the baseline noise environment used in the F/A-18 E/F East Coast basing EIS and*** to understanding to what extent use of any inaccurate information had affected ***the projections of noise contained in the EIS for the realignment of the F/A-18 C/D aircraft from NAS Cecil Field to NAS Oceana.***

(Borro Affidavit, ¶ 7)(emphasis supplied).

The Defendant bears the same burdens to establish that the attorney-client privilege and attorney work-product doctrine apply to the disputed document as it did with respect to the Mystery Project. Regarding the disputed documents, Mr. Borro makes it clear that the documents were prepared as part of process of preparing the F/A-18 E/F Environmental Impact Statement. In other words, the Defendant purportedly was trying to get the EIS right. That is not in anticipation of litigation. That is the Navy doing what it is supposed to do when it prepares an EIS. Moreover, the Defendant makes no showing, other than Mr. Borro's self-serving confirmation that the communications "qualify" for the privilege, that the communications in the disputed documents were confidential or intended to remain confidential. Such conclusory

allegations are insufficient to carry the Defendant's burden of establishing the privilege. *Mead Data*, 566 F.2d at 254; *Coastal States Gas Corp.* at 5. Accordingly, the disputed documents must be produced without redaction.

Dated this 23rd day of November 2005.

Respectfully submitted,

/s/ Jack E. Ferrebee

Jack E. Ferrebee
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
jferrebee@hoflaw.com

Counsel of Record for Plaintiffs

Of Counsel:

Kieron F. Quinn
Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
102 W. Pennsylvania Avenue
Suite 402
Towson, Maryland 21204
(410) 825-2300
kfquinn@quinnlaw.com
mwolf@quinnlaw.com

Charles R. Hofheimer
Kristen D. Hofheimer
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
chofheimer@hoflaw.com
khofheimer@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Lawrence Woodward
Shuttleworth, Ruloff, Giordano & Swain
4525 South Blvd., Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
tshuttleworth@srgslaw.com
sswain@srgslaw.com
lwoodward@srgslaw.com