**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CAROLE and ROBERT TESTWUIDE, et. al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 01-201 L** |
| | ) | **Judge Wolski** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

Plaintiffs moved this Court to order defendant to produce unredacted documents that were withheld pursuant to the attorney-client and attorney work-product privileges, and to compel witnesses Joseph Czech and Alan Zusman to appear at a second deposition to answer questions regarding work performed by Mr. Czech for defendant. Plaintiffs' motion also seeks costs for the depositions of Mr. Czech and Mr. Zusman.

Defendant opposes plaintiffs' motion to compel on procedural and substantive grounds, and has moved for a protective order, pursuant to RCFC 26(c), to preclude production of the documents in question and barring any additional deposition of Mr. Czech or Mr. Zusman concerning privileged information.

## ARGUMENT

### I. PLAINTIFFS' MOTION TO COMPEL IS PROCEDURALLY DEFICIENT

Plaintiffs' motion fails on procedural grounds because it does not comply with the reasonable notice and confer requirements specified in RCFC 37. Plaintiffs rely on a July

28, 2005 letter to satisfy the requirement to seek the disclosure in good faith without court action. Pls.' Mot. to Compel (Exhibit 4 pp 4-6). In the letter, plaintiffs requested additional information concerning the privileges asserted as to certain withheld documents and a portion of Mr. Czech's deposition testimony where he was directed not to answer questions that may have revealed privileged communications. Plaintiffs now erroneously claim that defendant "ignored the letter for three months" and describe defendant's assurances that it was reviewing the documents as "specious." Plts.' Reply pp 2-3. Plaintiffs' unfounded allegation that defendant disregarded their request concerning the documents and Mr. Czech's testimony is belied by the evidence. Defendant responded to plaintiffs' letter with an e-mail on August 2, 2005 informing plaintiffs that it was reviewing the requested documents. Pls.' Mot. to Compel (Exhibit 4 p 1). In its initial review defendant identified a bates-number discrepancy in two of the documents, which was clarified in the August 2, 2005 e-mail.

Moreover, plaintiffs noted in their July 28, 2005 letter that they would wait for defendant's response before considering a motion to compel, which would have been consistent with the procedures the parties have followed throughout discovery during this test case. Pls.' Mot. to Compel (Exhibit 4 pp 4-6). Both parties have communicated many times concerning discovery disputes, and have always given adequate notice prior to seeking court assistance if a dispute could not be resolved. This is the only instance where a party has failed to notify opposing counsel that it intended to seek court intervention to resolve a discovery dispute. Def.'s Resp. (Exhibit A). Given the procedures the parties have followed to resolve discovery disputes, plaintiffs' stated position that it would wait for a response before considering a motion to compel, and

defendant's notification that it was reviewing the privileged material, plaintiffs did not satisfy the meet and confer requirements when they failed to inform defendant that they intended to file a motion to compel.

Turning to Mr. Zusman's deposition testimony, there has been no notice or meet and confer regarding the assertions of privilege during Mr. Zusman's deposition. Plaintiffs do not dispute that they did not contact defendant regarding Mr. Zusman's testimony prior to filing their motion to compel. Plts.' Reply p 3. Instead, plaintiffs once again point to their July 28, 2005 letter to satisfy the notification requirements for Mr. Zusman's testimony despite the fact that he was not deposed until September 19, 2005. As discussed above, plaintiffs' July 28, 2005 letter was insufficient to meet the reasonable notification requirements for the matters expressly discussed in the letter–certain privileged documents and Mr. Czech's testimony. As such, it could not provide sufficient notice regarding Mr. Zusman's testimony, which had not yet occurred.

Plaintiffs now attempt to stretch what is an already deficient notification to include Mr. Zusman's deposition testimony by claiming that it is the same "privilege issue." Plts.' Reply p 4. Plaintiffs claim that defendant "aligned Mr. Zusman's testimony with Mr. Czech's testimony regarding the Mystery Project [1]... [and] [g]iven the complete lack of response by Defendant from July 28th through September 19th on this particular privilege issue, it would have been futile to try to resolve the Zusman dispute." Plts.' Reply p 4.

First, as discussed above, defendant did respond to plaintiffs regarding the July 28, 2005 letter and informed them that the matter was under review. Second, resolving

[1] The sinister-sounding term "Mystery Project" is entirely an invention of plaintiffs' counsel, as they freely admitted in the memorandum filed with their Motion to Compel.

plaintiffs' challenges to Mr. Zusman's deposition testimony was not futile by any means. Plaintiffs ignore the fact that when the issue was presented to defendant for the first time through plaintiffs' motion to compel, defendant reviewed Mr. Zusman's work on behalf of the Navy, and determined that certain limited information pertaining to efforts in the year 2000 that were directed by the Commanding Officer, NAS Oceana, and not by counsel, may be discoverable without revealing privileged information. Defendant agreed to limited further discovery on such matters at a time and manner mutually agreeable to the parties. Def.'s Resp. p 1-2.

Finally, the mere fact that Mr. Zusman and Mr. Czech were both involved in privileged technical analyses conducted by Wyle labs between February 1999 and February 2000 does not mean that a meet and confer regarding the deposition testimony of one of them applies to the other. Plaintiffs cite no authority for their assertion to the contrary. At a minimum, Mr. Zusman, acting as the intermediary between Mr. Czech and Navy counsel, would be involved in privileged communications with counsel that would not have included Mr. Czech. Therefore, Mr. Zusman would be privy to certain communications and information that Mr. Czech would not.

## II. THE DOCUMENTS HAVE PROPERLY BEEN WITHHELD AS PRIVILEGED COMMUNICATIONS

The documents plaintiffs have requested involve privileged communications that occurred in October through December 2001, after the original Testwuide case had been filed and during the F/A-18 E/F East Coast basing NEPA process. In their Reply brief, plaintiffs erroneously claim that these documents are not privileged because they were part of the preparation of the F/A-18 E/F Environmental Impact Statement, and therefore, "[were] not in anticipation of litigation." Plts.' Reply p 10. Plaintiffs quote the portion

of Ronald Borro's declaration that summarizes the general topic of these communications:

> **The issue that is at the heart of the communications**, i.e., efforts to obtain more accurate information about how the F/A-18 C/D aircraft and F-14 aircraft were being flown at NAS Ocean, **was relevant both to establishing the baseline noise environment used in the F/A-18 E/F East Coast basing EIS and** to understanding to what extent use of any inaccurate information had affected **the projections of noise contained in the EIS for the realignment of the F/A-18 C/D aircraft from NAS Cecil Field to NAS Oceana.**

Plts.' Reply p 10 (emphasis in Plts.' Reply). Plaintiffs failed to include Mr. Borro's explanation that immediately followed that excerpt, which demonstrates that this effort was also directly related to the Testwuide litigation, as well as anticipated litigation:

> This noise projection is a centerpiece of the plaintiffs' complaint. Navy attorneys and Department of Justice attorneys were therefore necessarily involved in these communications for purposes of the ongoing NEPA analysis, including potential litigation arising from the process, and for the purposes of the pending Testwuide litigation.

Borro Declaration ¶ 7. As plainly demonstrated, there is a direct nexus between the communications and the current litigation, as well as the potential for further litigation associated with the proposed realignment of the F/A-18 E/F (Super Hornet).

Plaintiffs raise no other challenges to the privileged documents in their Reply other than the assertion that Mr. Borro has made a "self-serving confirmation that the communications qualify for the privilege."[2] Plts.' Reply p 10. Mr. Borro confirmed that

---

[2] Plaintiffs argued in their motion to compel that the assertion of privilege to at least 19 of the documents was waived because the communications were received by Micah Downing and Geral Long, who are employed at Wyle. Plts.' Mem. p 12. As discussed in defendant's Response, these attorney-client privileged communications did not lose their protection simply because Wyle Lab employees were participants in the e-mail discussions. Def.'s Response pp 6, 10. As the Navy's primary contractor for analyses of aircraft noise, Wyle Labs was, in effect, an extension of the Navy in this area of technical expertise; therefore, the attorney-client privilege extends to communications with Wyle Labs' employees. See In re Bieter Co., 16 F.3d 929, 934, 9367-40 (8th Cir. 1994); see also, McCaugherty v. Sifferman, 132 F.R.D. 234 (N.D. Cal. 1990)(attorney-client privilege can extend to consultants when they are the functional equivalents of employees). Plaintiffs have apparently abandoned their argument that the

the communications were privileged, but he did not simply make "conclusory allegations" to that effect as plaintiffs assert. Plts.' Reply pp 10-11. Mr. Borro reviewed the privilege log and the communications, and verified that they were exchanges between counsel, or between counsel and Navy clients, and were intended to be confidential. Borro Declaration ¶ 7. He further confirmed that the communications were "critical in conjunction with the then-pending Testwuide litigation and in anticipation of litigation arising from the F/A-18 E/F East Coast basing process." Borro Declaration ¶ 7. Only after Mr. Borro's thorough review of the communications and the context in which they were made did he confirm that they were protected by the attorney work product and attorney-client privileges. Borro Declaration ¶ 7. Based on the foregoing, plaintiffs' assertion that Mr. Borro summarily concluded that the documents were privileged is without merit.

## III. THE ASSERTION OF PRIVILEGE WAS APPROPRIATE REGARDING ALAN ZUSMAN AND JOSEPH CZECH'S DEPOSITION TESTIMONY

The assertion of privilege with regard to the deposition testimony of Joseph Czech and Alan Zusman concerned consulting work that occurred in 1999. As Mr. Borro described, these technical analyses were performed at the direction of Navy counsel in anticipation of litigation and for the purpose of providing information to counsel so that they could provide advice regarding such litigation. Borro Declaration ¶ 5. Mr. Czech was a Wyle Laboratories engineer, conducted the consulting work at the immediate direction of Alan Zusman, the Navy's principal adviser on aircraft noise and land use planning, who in turn acted under the direction of Navy counsel. Borro Declaration ¶ 5.

---

privilege was waived because of "dissemination" to Wyle employees considering that they failed to address it in their Reply.

Plaintiffs argue that the technical analyses Mr. Czech conducted in coordination with Mr. Zusman were not privileged. Plaintiffs contend that the work was conducted at the behest of the NAS Oceana commander rather than under the direction of Navy counsel. Plts.' Reply pp 5-8. Plaintiffs focus on Mr. Zusman's deposition testimony where he identifies the positions of various NAS Oceana personnel that Wyle would have reported to in addition to Mr. Zusman. Plts.' Reply pp 6-8. Plaintiffs correctly note that Mr. Zusman did not identify Navy counsel among the individuals Wyle would have discussed the work with. As defendant noted in its Response, but the plaintiffs ignored in their Reply, the defendant has determined after further careful review that some work Wyle conducted in the year 2000 was directed by NAS Oceana's commander, not Navy counsel. This work is not privileged and defendant has therefore agreed to further discovery on this matter at a time and in a manner agreeable to the parties.

Conversely, the earlier analyses Mr. Czech conducted were privileged.[3] At that time, the NEPA litigation challenging the Navy's decision to realign F/A-18 C/D aircraft from NAS Cecil Field to NAS Oceana was ongoing. Borro Declaration ¶¶ 4-6. The plaintiff in that case, Citizens Concerned About Jet Noise (CCAJN), had advertised on its website that it intended to file a class action inverse condemnation lawsuit against the Navy. Borro Declaration ¶ 4. To evaluate the risks associated with this anticipated litigation, Navy counsel directed Wyle Labs to prepare certain technical analyses through Mr. Zusman, the Navy's principal adviser on aircraft noise. Mr. Czech was the engineer that conducted these analyses. Borro Declaration ¶ 5.

[3] Mr. Czech made clear in his deposition that he understood this at the time. When asked if his "work [was] for the purpose of litigation", Mr. Czech responded, "It was for the purposes of potential litigation." Exhibit (Czech Transcript) pp 67-68. These analyses were therefore decidedly not "part of the Navy's normal operations involving aircraft noise," as plaintiffs assert.

As Mr. Borro noted,[4] these privileged analyses involved several offices and commands within the Navy, all of which were responsible for land use planning, aircraft operations, aircraft noise compatibility, and the environmental impact analysis underlying the decision to relocate F/A-18 C/D aircraft to NAS Oceana. Borro Declaration ¶ 6. Based on their respective responsibilities, these offices and commands were critical participants in the analysis underlying Navy counsels' evaluation of litigation risk. Borro Declaration ¶ 6. Counsel from the Navy and Department of Justice relied on this analysis in advising senior management regarding what was at the time potential inverse condemnation litigation. Moreover, these privileged communications remained confidential and were not disseminated beyond Navy personnel who had a legitimate need for the information as part of the analyses. As such, they are protected by the attorney-client privilege. See generally Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484-85 (2000).

[4] Plaintiffs' argument that Mr. Borro's declaration is suspect because it was written "after-the-fact" is unpersuasive. It is certainly true that the declaration was written recently, as part of defendant's response to the Motion to Compel, but the underlying facts are not new. In fact, Mr. Borro made clear in his declaration that the efforts he described in that declaration were efforts he was personally involved with at the time they were occurring. Borro Declaration ¶ 3.

## CONCLUSION

For the foregoing reasons, as well as those detailed in Defendant's Response to Plaintiffs' Motion to Compel Discovery and Defendant's Motion for Protective Order, the Navy has properly asserted privilege for the documents and information sought by plaintiffs. Accordingly, plaintiffs' motion to compel should be denied and defendant respectfully requests that this Court grant defendant's motion for a protective order.

Dated this 5th day of December, 2005.

Respectfully Submitted,

/s/ Steven D. Bryant
STEVEN D. BRYANT
KELLE S. ACOCK
United States Department of Justice
Environment and Natural Resources
Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Email: steven.bryant@usdoj.gov
Voice: (202) 305-0424
Fax: (202) 305-0267

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **DEFENDANT'S REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER** was served this 5th day of December 2005, electronically to Jack E. Ferrebee, Hoffheimer/Ferrebee, P.C., 1060 Laskin Road, Suite 12-B, Virginia Beach, Virginia 23451.

Steven D. Bryant
STEVEN D. BRYANT

# Exhibit

A. There was some investigation into sound insulation that I participated in.
Q. Okay. Anything else?
MR. BRYANT: I'm directing him not to answer anything that's privileged.
Q. Well, the question is is there anything else. So is there something beyond your question that you did work on? And that's just yes or no.
A. Yes.
Q. The work that you did that you can't answer, was that while you were a Wyle employee?
A. Did you say that I can answer or can't?
Q. Cannot.
A. Yes. It was during while I was a Wyle employee.
Q. So that was before you left in 2000?
A. Correct.
Q. When did you do this work that you can't answer about?
A. During 1998.
Q. How many projects -- were they discrete projects?

MR. BRYANT: Could you clarify that question?

MR. QUINN: Can we go off the record?

MR. BRYANT: Sure.

THE VIDEOGRAPHER: The time is 11:53:15. Off the record.

(Recess).

THE VIDEOGRAPHER: On the record. The time is 11:55:49.

BY MR. WOLF:

Q. When in 1998 were you working on the project you're asserting a privilege for?

A. It would have been anytime between February '98, maybe, and the end of the year possibly. I don't recall the exact dates.

Q. And were you working with Mr. Zusman on this project?

A. Yes.

Q. Who else were you working with?

A. He was our point of contact for our client. He was our client. He was our client point of contact.

Q. Did you have any meetings or conversations with anyone other than Mr. Zusman from the Navy on this project?
A. Yes, but I can't recall their names. I believe it was someone with Navy legal. They wouldn't have been separate conversations either. They would have been with Mr. Zusman most likely present.
Q. Were they face-to-face meetings?
A. Some were in the office here and some were just over the telephone.
Q. Did you ever have conversations with Mr. Zusman when there was no legal representative present regarding this work?
A. Yes.
Q. How often did you talk to him?
A. Oh, in some periods on a daily basis.
Q. And generally what was the nature of the work? Was it an investigation?
MR. BRYANT: If it's an investigation, you can answer that question.
A. It was an investigation.

Q. Did it involve the noise contours at NAS Oceana?

MR. BRYANT: Do not answer that question.

MR. WOLF: What's the privilege?

MR. BRYANT: Attorney-client and attorney work product privilege.

MR. WOLF: I didn't ask him a communications question. I asked him if his work involved noise contours. So there's no communication with an attorney.

MR. BRYANT: Attorney work product. You're getting into clearly the subject matter of what was done. And this clearly falls within the privilege. I mean, I don't have a problem with forming a background in terms of time and place, that kind of thing. But that's getting within the substance of what was done and is clearly within the privilege.

Q. Was your work for the purpose of litigation?

MR. BRYANT: If you know the answer. If

you don't know don't say that you do.

A. It was for the purposes of potential litigation.

Q. Was the potential the lawsuit that we're involved in today that we're here to take this deposition for?

MR. BRYANT: Again, if you know or don't know --

A. There would be know way of me knowing if it was for this particular litigation or not.

Q. Do you know it was for potential litigation because someone told you that?

MR. BRYANT: I direct you not to answer that. You're getting into communications at this point.

Q. How do you know it was for potential litigation?

MR. BRYANT: Again, same privilege. Don't answer.

Q. Was it just this one project you worked on other than the investigation into sound insulation?