IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CAROL AND ROBERT TESTWUIDE, *et al*., *Plaintiffs*, v. THE UNITED STATES OF AMERICA, *Defendant*. | No.: 01-201L (Honorable Victor J. Wolski) |

**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

**INTRODUCTION**

Plaintiffs, pursuant to RCFC 7 and 37 and pursuant to the court's inherent power to monitor the discovery process, submit this memorandum in support of their Motion for Sanctions. Defendant's Answer in this case asserts that Plaintiffs' action is barred by the Tucker Act's six-year statute of limitations. Plaintiffs, therefore, requested in Interrogatories that Defendant specifically state when it alleges that a taking occurred so as to trigger the running of the six-year statute of limitations. For almost five years, despite repeated follow up by Plaintiffs, Defendant has declined to answer this question. Defendant's dilatory and intransigent tactics in not answering this question in the face of numerous attempts by Plaintiffs to secure a response is sufficiently grave to require sanctions pursuant to RCFC 37, which governs failure to cooperate in the discovery process, or pursuant to the Court's inherent power to combat abuse of the discovery process. The most appropriate and proportionate sanction for Defendant's obstructionist tactics is to strike it statute of limitations affirmative defense.

## BACKGROUND

**Interrogatory Requests**

Defendant first claimed that Plaintiffs were barred or limited by the statute of limitations in its June 1, 2001 answer to the initial takings complaint. In paragraph two of its affirmative defenses, Defendant asserted the following:

> The allegations of the complaint that takings under the Fifth Amendment of the Constitution have occurred are barred and/or limited by the provisions of 28 U.S.C. §2501, the six year statute of limitations applicable to actions brought under 28 U.S.C. §1491.

On June 14, 2001, Plaintiffs served discovery, including Interrogatories, on Defendant. A copy of pertinent sections of these interrogatories is attached to this memorandum as Exhibit A. Interrogatory Number 3 stated as follows:

> State the date on which you allege that a six year statute of limitations began to run as asserted in Paragraph 2 of your Affirmative Defenses.

On October 4, 2001, Defendant served its Answers to Plaintiffs' Interrogatories. A copy of pertinent sections of these answers is attached hereto as Exhibit B. Defendant responded as follows to Interrogatory Number 3:

> Defendant objects on the grounds that this Interrogatory is improper because it calls for a legal conclusion. Without waving this objection, defendant states that the date the statute of limitations began to run will vary from tract to tract depending upon when, if at all, the tract was first exposed to prior operations that arguably constituted a taking. For example: the base itself was established in 1940; it became a master jet facility in 1957; and, the 1978 noise study contains noise contours that are much closer in size to the projected 1999 noise contours than are the 1997 noise contours.

On October 23, 2001, Counsel for Plaintiffs sent Counsel for Defendant a letter inquiring about Defendant's failure to answer Plaintiffs' Interrogatories. A copy of the pertinent sections of this letter is attached hereto as Exhibit C. In this letter, Plaintiffs stated:

> Finally, before we get into motion practice, I would like you to explain why you continue to object to putting a date on the statute of limitations that you raised as an affirmative defense. Because defendant raised that defense, it is a perfectly proper subject for discovery by Plaintiffs. If you allege that different dates apply to different segments of the class, I believe you have to say so, identify the segment, and take a position on the date.

On October 23, 2001 Defendant served Supplemental Answers to Plaintiffs' Interrogatories. A copy of the pertinent sections of these answers is attached hereto as Exhibit D. Once again, Defendant declined to provide an answer, stating:

> Defendant objects on the grounds that this Interrogatory is improper because it calls for a legal conclusion. Without waiving this objection, defendant incorporates its initial response and states that further research and discovery will be needed in order to determine the date or dates from which the statute of limitations would begin to run on each of the named plaintiffs' residences.

In February 2002 Judge Bush stayed all discovery in this case, which Order was lifted by Judge Wolski on May 26, 2004.

In July 2004, Defendant served additional Supplemental Responses to Interrogatories. A copy of the relevant portions of these is attached hereto as Exhibit E. Defendant persisted in its refusal to answer Interrogatory Number 3, stating:

> Defendant objects on the grounds that this Interrogatory is improper because it calls for a legal conclusion. Without waiving this objection, defendant states that the date the statute of limitations began to run will vary from tract to tract depending upon when, if at all, the tract was first exposed to prior operations that arguably constituted a taking. Defendant is unable to respond to this interrogatory until discovery is complete.

On January 19, 2005 Counsel for Plaintiffs sent Counsel for Defendant a letter "to request responses and supplemental responses, as the case may be, to discovery propounded in the *Testwuide* case." A copy of the relevant language of this letter is attached hereto as Exhibit F.

With respect specifically to Interrogatory Number 3, this letter also requested that Defendant "please supplement your initial response now that we have identified each tract of land."

On February 25, 2005, Defendant responded. A copy of this letter is attached hereto as Exhibit G. The letter was again evasive and incomplete, stating:

> Interrogatory Number 3- We are still investigating the statute of limitations defense as it pertains to the 14 properties comprising the test case. We will supplement our response once we have gathered and analyzed the requisite information through discovery.

On January 21, 2005, the test case Plaintiffs propounded and served their First Interrogatories. A copy of the relevant portions is attached hereto as Exhibit H. Interrogatory Number One expressly asked Defendant:

> With respect to the fourteen properties now designated for the first trial in these proceedings identify the following for each property: (a) whether you contend that prior to the relocation of the F/A-18 aircraft to Oceana the properties were exposed to a noise level above or equivalent to the noise level after the relocation and, if so, state the date or dates of such exposure and the precise basis for your contention; (b) for each such date or dates identified above, state the decibel level or levels in terms of the highest single noise events, the frequency of the highest single noise events, the db ldn level, and the SEL level of aircraft noise to which each of the properties was exposed for each year beginning with the first year jet aircraft operated at Oceana to the present; (c) if you contend that any noise level for any period above constituted a taking of an avigation easement with respect to any of the properties, provide the date of taking; and (d) for each date provided above, state the number of touch and go operations and the number of field carrier landing practices performed at Oceana, and the type of aircraft involved, for each year.

On February 22, 2005, Defendant served its Answers. A copy of the relevant portions of those answers is attached hereto as Exhibit I. Defendant stated that:

> Defendant objects on the ground that this Interrogatory is vague and ambiguous with respect to which model F/A-18 aircraft the Interrogatory refers to and what is meant by "noise level," and further objects that the Interrogatory seeks information not reasonably calculated to lead to the discovery of admissible

> evidence. Without waiving these objections, Defendant responds as follows: Defendant is currently investigating the 14 properties that are the subject of the test case and is unable to state at this time whether it will contend that these properties were exposed to noise levels as measured by the DNL metric prior to the time that all of the F/A-18 C/D aircraft that were to be relocated to NAS Oceana from NAS Cecil Field were relocated. Even if Defendant is able to respond at a later time, Defendant may not be able to provide all of the information sought in the Interrogatory.

On March 15, 2005, Defendant sent Plaintiffs a letter in which Defendant persisted in its refusal to provide a date of taking for the test case plaintiffs. A copy of this letter is attached hereto as Exhibit J. The letter stated:

> With regard to our discussion of Defendant's Response to Interrogatory Number 1, I indicated that we are investigating the test case properties regarding historical aircraft noise and overflight impacts and are contracting with an expert in this field to evaluate the issue.

On September 7, 2005, Plaintiffs again sent Defendant a letter "in an effort to resolve several issues with regard to Defendant's Answers to Plaintiffs' Interrogatories propounded during the test case phase of this proceeding, thus avoiding motion practice." A copy of the relevant portions of this letter is attached hereto as Exhibit K. The letter first recounted the recent history regarding this Interrogatory and then stated:

> Please respond to the Interrogatory with regarding (*sic*) to the noise impact on the current test properties.

On October 18, 2005, Defendant sidestepped Interrogatory One yet again in its Supplemental Answers to Plaintiffs' First Interrogatories. A copy of the relevant portions of these Answers is attached hereto as Exhibit L.

> To the extent that noise level as measured by DNL at the test plaintiffs' properties at the time of the alleged taking is evidence of a taking, the test plaintiffs'

> properties have historically been exposed to comparable or higher DNL noise levels as reflected in Dr. Fidell's report. [1]

This purported answer conspicuously omitted the specific information originally requested, namely, when Defendant asserted a taking occurred sufficient to trigger the applicable statute of limitations. Later in this same document, almost five years after the initial question posed by the plaintiffs, Defendant still would not provide an answer to the takings interrogatories. Defendant stated:

> Defendant is still investigating the issue of when any prior avigation easements were taken as a result of prior aircraft operations. Defendant has not conducted an appraisal of the test case plaintiffs' properties before 1999.

Almost five years have elapsed since Plaintiffs first asked Defendant to specify when it asserted a taking first occurred sufficient to trigger the applicable statute of limitations. Defendant has yet to answer this straightforward question and has provided no rational basis for refusing to answer. Discovery is now over and Plaintiffs have been unable to utilize discovery to rebut whatever date Defendant finally chooses as part of its limitations affirmative defense .

---

[1] Sanford Fidell is a psychologist who has written on the effects of noise on people such as annoyance and sleep disturbance.

# ARGUMENT

## Sanctions for Failure to Cooperate with Discovery

This court has held that RCFC 37 "provides a wide spectrum of discovery sanctions designed to discourage delay, waste of resources, and dilatory practices in favor of full disclosure of relevant information prior to trial." Morris v. United States., 37 Fed. Cl. 207, 212-213 (1997), quoting Applegate v. United States, 35 Fed. Cl. 47, 56 (1996); *see also* Advanced America Services, Inc. v. United States, 32 Fed. Cl. 191, 193 (1996). Thus, under RCFC 37(b)(2), if a party fails to comply with a discovery order, "the court may make such orders in regard to the failure as are just" including "refusing to allow the disobedient party to support or oppose designated claims or defenses." While RCFC 37(b)(2) requires, as a precondition, the violation of a prior court order, RCFC 37 (d) permits the imposition of sanctions without a preexisting court order:

> If a party … fails … (2) to serve answers or objections to interrogatories submitted pursuant to RCFC 33 after proper service of the interrogatories …, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others, it may take any action authorized in subparagraphs (A), (B) and (C) of subdivision (b)(2) of this rule.

Thus, RCFC 37(d) expressly authorizes this court to impose sanctions, including refusing to allow a disobedient party to support a proposed defense, if the party fails to "serve answers or objections to interrogatories."

In addition to the broad powers available under RCFC 37, the court in Morris emphasized that "[t]his court's ability to control the course of litigation with restraint and discretion is broad and powerful and as a consequence argues strongly for forthwith responsive compliance." Morris, 37 Fed. Cl. at 214, (citations omitted). The court in Morris, while denying sanctions,

warned that "delaying tactics and inadequate answers will not be tolerated." Id. By the same token, it is well established that "trial courts are given wide discretion to manage the course of a trial and to direct the conduct of counsel." Hendler v. United States, 952 F. 2d 1364, 1380 (Fed. Cir. 1991). The court in Applegate emphasized that "if the judicial process is to function effectively, the court must retain the ability to control its docket and dismiss cases where counsel fail to perform their duties." Applegate, 35 Fed. Cl. at 7, citing Link v. Wabash R.R. Co., 370 U.S. 626, 629,630 (1962).

In Shepherd v. American Broadcasting Companies, Inc., 62 F.3d 1469, 1474-75 (D.C. Cir. 1995), the D.C. Circuit described the inherent powers available to trial courts to promote judicial efficiency and to deter misconduct in the discovery process. The court first declined to impose sanctions pursuant to RCFC 37(b)(2) because the culpable party had not breached any discovery order. Id. However, the court then turned to its "inherent power" and noted that "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." Id. This inherent power "encompasses the power to sanction attorney or party misconduct" and, in appropriate cases, justifies "precluding the admission of evidence." Id. Finally, as this Court in Applegate noted, "[t]he decision whether to impose discovery sanctions, including dismissal or costs, rests within the sound discretion of this court" and is reviewable only for abuse of discretion. Applegate, 35 Fed. Cl. at 56, citing Adkins v. United States, 816 F.2d 1580, 1581-82 (Fed. Cir. 1987).

Defendant in the present case is properly subject to sanctions because of its repeated failure to provide an answer to a question at the heart of the underlying litigation. Defendant's tactics are analogous to those found objectionable by this court in Anchor Estates, Inc. v. United States, 11 Cl. Ct. 578, 586 , aff.'d 835 F.2d 871 (1987), cert. denied, 485 U.S. 989 (1988):

> The purpose of the discovery process is to secure the "just, speedy, and inexpensive determination of every action," RUSCC 1 (a)(2), by narrowing and defining the issues to be litigated. That highly desirable goal has been wholly frustrated here. Instead, over the years this case has required vast amounts of scarce judicial resources, and the obvious expenditure by the Government of considerable time, money and effort. At least a substantial portion of the Court's and the Government's efforts herein can be fairly be attributed to an unjustifiable failure to furnish direct and understandable responses to simple and straightforward questions concerning facts relevant to the claims asserted by plaintiffs in this case. (emphasis added)

This court has discussed the various tools available to a trial court to punish parties who are needlessly recalcitrant in shirking their discovery obligations. The court in Colbert v. United States, 30 Fed. Cl. 95, 97-99 (1993), first noted that a federal court can *sua sponte* order "involuntary dismissal for lack of prosecution" under both FRCP 41(b)[2] and the "court's inherent power, arising not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id., quoting Link v. Wabash, 370 U.S. at 630-631. The court further noted that it may impose sanctions under RCFC 37 (b) if a party violates an order compelling discovery. Id. Finally, the court noted that "a complete failure to respond to interrogatories and document requests seeking information needed by the defendant before the case can progress is also grounds for dismissal under Rule 37(d)." Id. Dismissal, or less severe sanctions under this rule, is appropriate "even without a prior order." Id., quoting Sigliano v. Mendoza, 642 F.2d 309-310 (9th Cir. 1981). Before the court may dismiss an action (or, in this case, strike an affirmative defense asserted by Defendant) under any of these provisions, it must "consider whether any less drastic action would cause [defendant] to act responsibly." Id. Alternative sanctions include "preclusion of

[2] This rule's analog in RCFC 41 provides that " [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim." While Plaintiffs cannot assert this rule as a justification for sanctions, since it applies only to a plaintiff's failure to prosecute, the rule evinces the extensive powers a federal trial court has to discipline parties who flagrantly fail to cooperate with the discovery process.

claims or defenses." Malone v. United States Postal Service, 833 F.2d 128, 132, n. 1(9th Cir. 1987), cert. denied, 488 U.S. 819 (1988).

This court has gone beyond the remedy sought by Plaintiffs in this Motion and has dismissed an action in its entirety when a party failed to respond to several requests for discovery:

> Plaintiffs have failed to respond to defendant's discovery requests even after numerous attempts by government counsel to secure those replies. By so refusing, plaintiff prevented the orderly and speedy resolution of this case… When a party decides to ignore this court's discovery schedule and substitute its own, or otherwise fails to comply with the court's orders and Rules, dismissal is proper.

Cash Express, Inc. v. United States, 23 Cl. Ct. 136, 137 (1991). While "some element of willfulness or conscious disregard is still required to justify a sanction of dismissal" the "clear import of Societe Internationale,[3] is that mere failure to respond to discovery is sufficient to justify less severe sanctions." Dellums v. Powell, 566 F.2d 231, 235 (D.C. Cir. 1977). The Court in Dellums emphasized that "[i]f parties are allowed to flout their (discovery) obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in the day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules." Id.

Applying this case law to the facts of the instant case, sanctions against Defendant for failing to answer the limitations interrogatories are appropriate both under the court's inherent powers to police the discovery process, and under the specific authority provided by Rule 37(d). First, it is important to note that Plaintiffs do not seek the extreme sanction of an entry of

[3] See Societe Internationale Pour Particpations Industrielles Et Commerciales v. Rogers, 357 U.S. 197 (1958).

judgment on liability.[4] According to the clear holding of Society Internationale and Dellums, Plaintiffs need not prove willfulness or bad faith to justify the limited sanction of striking a particular affirmative defense.[5] Rather, as Dellums announced, "mere failure to respond to discovery is sufficient to justify less severe sanctions" than dismissal. Dellums, 566 F.2d at 235.

The sanction Plaintiffs seek is narrowly tailored to remedy the discovery abuse engaged in by Defendant. Such a sanction would also promote future respect for the court's indisputable interest in a discovery process which is timely and fruitful and prepares the parties for trial. Sanctions are appropriate first under the court's well-recognized "inherent power" to "achieve the orderly and expeditious disposition of cases." Colbert, 30 Fed. Cl. at 97-99. Clearly, Defendant's failure to respond to an interrogatory almost five years old threatens "expeditious resolution" of this case. Striking Defendant's limitations defense would also be consistent with the language and interpretation of RCFC 37(d). Interpreting this rule, this court has held that a "complete failure to respond to interrogatories and document requests seeking information needed by defendant before the case can progress is also grounds for dismissal under Rule 37(d)." Colbert, 30 Fed. Cl. at 98-99. Defendant in this case has similarly completely failed to respond to interrogatories requesting vital information indispensable to preparing for trial of this matter. This court should, therefore, grant Plaintiffs' motion to strike Defendant's limitations defense.

**CONCLUSION**

Pursuant to its inherent power and RCFC 37, this court has wide latitude to impose sanctions for dilatory, obstructionist discovery tactics. Defendant's failure to comply with

---

[4] Nor can Defendant plausibly argue that striking a statute of limitations defense is tantamount to dismissal. Even if the court grants the sanction requested, Plaintiffs still face the task of proving all of the elements of their cause of action.

[5] Albeit it is hard to explain how the repeated failures to answer set out in the first section of this Memorandum could be anything but willful.

repeated requests that it specify when it alleges a taking first occurred for statute of limitations purposes is precisely the type of situation which sanctions are meant to address pursuant to the court's inherent power and pursuant to RCFC 37. The sanction which Plaintiff seeks, striking Defendant's limitations defense, is appropriate and proportionate in light of the discovery misconduct which necessitated this motion. Granting this motion will not deprive the Court of its core role of adjudicating the merits of Plaintiffs' cause of action and will facilitate the court's vital interest in expeditious resolution of discovery and litigation.

Dated this 23rd day of February 2006.

Respectfully submitted,

/s/ Jack E. Ferrebee

Jack E. Ferrebee
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
jferrebee@hoflaw.com

Counsel of Record for Plaintiffs

Of Counsel:

Kieron F. Quinn
Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
102 W. Pennsylvania Avenue
Suite 402
Towson, Maryland 21204
(410) 825-2300
kfquinn@quinnlaw.com
mwolf@quinnlaw.com

Charles R. Hofheimer
Kristen D. Hofheimer
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
chofheimer@hoflaw.com
khofheimer@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Lawrence Woodward
Charles B. Lustig
Shuttleworth, Ruloff, Giordano & Swain
4525 South Blvd., Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
tshuttleworth@srgslaw.com
sswain@srgslaw.com
lwoodward@srgslaw.com
clustig@srgslaw.com

**CERTIFICATION OF GOOD FAITH**

I HEREBY CERTIFY, pursuant to RCFC 37(a)(2)(B) that counsel for Plaintiffs has repeatedly conferred and corresponded in good faith with counsel for the Defendant. These efforts at obtaining the requested information to avoid court intervention are more fully spelled out in the background section of this Memorandum.

/s/ Jack Ferrebee
Jack Ferrebee