IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROLE AND ROBERT TESTWUIDE, et. al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. 01-201 L<br>Honorable Lynn J. Bush |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

# TABLE OF CONTENTS

FACTUAL BACKGROUND . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 5

A. Defendant's Interrogatory Responses Are Proper . . . . . . . . . . 5

B. RCFC 37(d) Does Not Authorize Sanctions Because Defendant Responded To Plaintiffs' Interrogatories . . . . . . . . . . 8

C. RCFC 37(b)(2) Does Not Authorize Sanctions Because Defendant Has Not Violated A Pre-existing Court Order Compelling Additional Responses . . . . . . . . . . 10

D. Sanctions Should Not Be Imposed Under The Court's Inherent Power Because Defendant Has Provided Responses To Plaintiffs' Interrogatories In Good Faith . . . . . . . . . . 11

E. Striking The Statute Of Limitations Defense Is Not An Available Sanction . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## CASES

Adkins v. United States,
816 F.2d 1580 (Fed. Cir. 1987) . . . . . . . . . . 9

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . 13

Amstead Industries Inc. v. Buckeye Steel Castings Co.,
23 F.2d 374 (Fed. Cir. 1994) . . . . . . . . . . 11, 12

Anchor Estates v. United States,
11 Cl. Ct. 578 (1987) . . . . . . . . . . 11

Applegate v. United States,
35 Fed. Cl. 47 (1996) . . . . . . . . . . 11

Badalamenti v. Dunham's Inc.,
896 F.2d 1359 (Fed. Cir. 1990) . . . . . . . . . . 9

Bell v. Automobile Club of Michigan,
80 F.R.D. 228 (E.D. Mich. 1982) . . . . . . . . . . 10

Caguas Cent. Fed. Sav. Bank v. United States,
215 F.3d 1304 (Fed. Cir. 2000), cert. denied, 531 U.S. 1070 (2001) . . . . . . . . . . 13

Cash Express, Inc. v. United States,
23 Cl. Ct. 136 (1991) . . . . . . . . . . 9

Catellus Dev. Corp. v. United States,
31 Fed. Cl. 399 (1994) . . . . . . . . . . 13

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991) . . . . . . . . . . 11, 12

Colbert v. United States,
30 Fed. Cl. 95 (1993) . . . . . . . . . . 9

Dellums v. Powell,
566 F.2d 231 (D.C. Cir. 1977) . . . . . . . . . . 9

Fjelstad v. American Honda Motor Co.,
762 F.2d 1334 (9th Cir. 1985) . . . . . . . . . . 9

Fox v. Studebaker-Worthington, Inc.,
516 F.2d 989 (8th Cir. 1975) . . . . . . . . . . 10

Franconia Assocs. v. United States,
240 F.3d 1358 (Fed. Cir. 2001), rev'd on other grounds, 536 U.S. 129 (2002) . . . . . . . 13

GFI Computer Ind., Inc. V. Fry,
476 F.2d 1 (5th Cir. 1973) . . . . . . . . . . 10

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) . . . . . . . . . . 13

Holloway v. United States,
60 Fed. Cl. 254 (2004) . . . . . . . . . . 13

In re Greg Bailey v. United States,
182 F.2d 860 (Fed. Cir. 1999) . . . . . . . . . . 11

Israel Aircraft Industries, Ltd. v. Standard Precision,
559 F.2d 203 (2d Cir. 1977) . . . . . . . . . . 9

Laughlin v. United States,
22 Cl. Ct. 85 (1990), aff'd, 975 F.2d 869 (Fed. Cir. 1992) . . . . . . . . . . 13

Malone v. United States Postal Service,
833 F.2d 128 (9th Cir. 1987) . . . . . . . . . . 11

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) en banc, cert. denied, 540 U.S. 1177 (2004) . . . . . . . . 13

Martinez v. United States,
48 Fed. Cl. 851 (2001) . . . . . . . . . . 13

Minnesota Mining & Mfg. Co. v. Eco Chem., Inc.,
757 F.2d 1256 (Fed. Cir. 1985) . . . . . . . . . . 10

Morris v. United States,
37 Fed. Cl. 207 (1997) . . . . . . . . . . 10

R.W. Intern. Corp. v. Welch Foods Inc.,
937 F.2d 11 (1st Cir. 1991) . . . . . . . . . . 10

Roadway Express, Inc. v. Piper,
447 U.S. 752 (1980) . . . . . . . . . . 11

Saldhuddin v. Harris,
782 F.2d 1127 (2d Cir. 1986) . . . . . . . . . . 10

Shepherd v. American Broadcasting Cos. Inc.,
62 F.3d 1469 (D.C. Cir. 1995) . . . . . . . . . . 10, 11-12

Societe Internationale v. Rogers,
357 U.S. 197 (1958) . . . . . . . . . . 11

Soriano v. United States,
352 U.S. 270 (1957) . . . . . . . . . . 13

Williams v. Krieger,
61 F.R.D. 142 (S.D.N.Y. 1973) . . . . . . . . . . 6

**STATUTES**

28 U.S.C. § 1491(a)(1) . . . . . . . . . . 13
28 U.S.C. § 2501 (2000) . . . . . . . . . . 12

**RULES**

RCFC 37(a) . . . . . . . . . . 6, 10
RCFC 37 (b) . . . . . . . . . . 10
RCFC 37(b)(2) . . . . . . . . . . 10, 11
RCFC 37(d) . . . . . . . . . . 1, 9, 10
RCFC 37(d)(2) . . . . . . . . . . 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, et. al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 01-201L |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Victor J. Wolski |
| Defendant. | ) | |

**DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

The United States, by its undersigned counsel, hereby responds to plaintiffs' motion for sanctions. The United States respectfully requests that this Court deny plaintiffs' motion for the following reasons:

First, the United States' responses to the interrogatories at issue were proper. Second, plaintiffs' reliance on RCFC 37(d) is misplaced because any sanctions under that rule are unavailable when a party provides interrogatory responses. Third, plaintiffs did not obtain an order from this Court compelling the United States to provide additional responses to the interrogatories; consequently, sanctions under RCFC 37(b) are likewise inapplicable. Fourth, the United States interrogatory responses and objections were in good faith; therefore, discovery sanctions pursuant to the Court's inherent powers are unavailable. Finally, even assuming, arguendo, sanctions were appropriate, plaintiffs have requested a sanction that the Court does not have the power to grant, i.e. waiver of a jurisdictional defense. As discussed below, plaintiffs' motion for sanctions is without any foundation whatsoever and is waste of the Court's time, as well as the United States.

## FACTUAL BACKGROUND

Plaintiffs incorrectly claim that the United States has refused to answer certain of plaintiffs' interrogatories. Plaintiffs point to Interrogatory No. 3 from the class certification phase of this case, which was served on June 14, 2001: "State the date on which you allege that a six year statute of limitations began to run as asserted in Paragraph 2 of your Affirmative Defenses." As reflected in plaintiffs' Memorandum in Support of Motion for Sanctions ("Plts.' Mot."), defendant responded on October 4, 2001, objecting that the interrogatory called for a legal conclusion, and without waiving the objection further explained that the initiation of the running of the statute of limitations is a property specific determination, which will vary from property to property depending on when a particular tract was first exposed to prior jet operations. Plts.' Mot. p 2. Defendant further explained that the base opened in 1940, was upgraded to a master jet facility in 1957, and that a 1978 noise study contained noise contours that were similar in size to the projected 1999 noise contours, on which plaintiffs were relying for their claims. Plts.' Mot. p 2.

Plaintiffs demanded further specificity, requesting that the United States identify specific dates that the statute of limitations began to run. Plts.' Mot. p 3. Defendant supplemented its response on October 23, 2001, reasserting its original response and objection, and adding that additional research and discovery would be needed to determine when the statute of limitations began to run on each of the named plaintiffs' residences. Plts.' Mot. p 3.

In July 2004, defendant supplemented its response a second time to Interrogatory No. 3, restating its objection, reiterating that the statute of limitations would vary from property to property, and explaining that it would not be able to respond further until discovery was complete. Plts.' Mot. p 3.

The final exchange between the parties concerning Interrogatory No. 3 was in January and February 2005. Plts.' Mot. pp 3-4. Plaintiffs requested that defendant supplement its response since the test case plaintiffs' properties had been selected. Defendant responded that it was still investigating the statute of limitations concerning the test plaintiffs' properties and would supplement its response once the requisite information was gathered and analyzed through discovery. Plts.' Mot. p 4.

Since February 2005, plaintiffs have not requested additional information concerning Interrogatory No. 3. They never communicated with counsel for defendant to complain that defendant's responses were inadequate or were somehow preventing them from preparing their case, nor have they filed a motion to compel a further response.

The second[1] interrogatory plaintiffs incorrectly assert that defendant has not answered is from the current test case phase of the litigation. Interrogatory No. 1 was served on January 21, 2005 and requests in pertinent part:

> (a) whether you contend that prior to the relocation of the F/A-18 aircraft to [Naval Air Station] Oceana the properties were exposed to a noise level above or equivalent to the noise level after the relocation and, if so, state the date or dates of such exposure and the precise basis for your contention ... (c) if you contend that any noise level for any period above

[1] Plaintiffs also contend that defendant has not responded to Interrogatory No. 3 from the test case phase of the litigation. Plts.' Mot. p 6. Interrogatory No. 3 requests "fair market value" information "[w]ith respect to any avigation easement, which [defendant] allege[s] has been or was taken and identified in response to the preceding interrogatories...." Defendant incorporated by reference its response to Interrogatory No. 1. In its October 18, 2005 supplemental response, defendant stated that it was still investigating whether prior avigation easements had been taken based on earlier aircraft operations, and had not appraised any of the properties before 1999. Plts.' Mot. Ex. L p 4.

> constituted a taking of an avigation easement with respect to any of the [test] properties, provide the date of taking....

Plts.' Mot. p 4.

On February 22, 2005, defendant noted its objections to the interrogatory and. without waiving the objections, responded that it was currently investigating the test plaintiffs' properties and was unable to state at that time if it would present evidence that the properties were previously exposed to noise levels as measured by the DNL metric that were equal or greater than DNL noise levels after the relocation of the F/A-18 C/D aircraft. Plts.' Mot. Ex. I.[2]

The parties had a telephonic conference on March 7, 2005 regarding various discovery matters. Plaintiffs' counsel summarized the relevant portion of the conversation concerning Interrogatory No. 1 as follows:

> You indicated that you are investigating the test case properties with regard to the subpart concerning the Db LDN levels. You also indicated that you are waiting for a report from [Dr.] Sanford Fidell concerning the date of taking issue.

Exhibit A. Defendant clarified plaintiffs' synopsis, stating that it was "investigating the test case properties regarding historical aircraft noise and overflight impacts and contracting with an expert in this field to evaluate the issue." Defendant also noted that it was in the "early stages" of this investigation. Exhibit B.

Plaintiffs did not raise any issues with defendant's response to Interrogatory No. 1 for approximately six months. On September 7, 2005, roughly three weeks before the parties were scheduled to exchange expert reports, plaintiffs requested an additional response to Interrogatory No. 1 regarding the "noise impact" information for the test

---

[2] Plaintiffs' memorandum in support of their motion for sanctions misquotes defendant's response to the interrogatory. Defendant's verbatim response is attached as Exhibit I to plaintiffs' motion.

plaintiffs' properties. Plts.' Mot. p 5. Defendant provided Dr. Sandy Fidell's expert report to plaintiffs on September 30, 2005 in accordance with the discovery schedule. Dr. Fidell's report reflects historical jet noise levels at the test plaintiffs' properties as measured by the DNL metric based on previous noise studies at NAS Oceana. On October 18, 2005, defendant specifically responded to plaintiffs' additional request, stating:

> To the extent that noise level as measured by DNL at the test plaintiffs' properties at the time of the alleged taking is evidence of a taking, the test plaintiffs' properties have historically been exposed to comparable or higher DNL noise levels as reflected in Dr. Fidell's report. Defendant notes, however, that noise level alone is insufficient to establish a taking.

Plts.' Mot. Ex. L p 2.

Since submitting Dr. Fidell's expert report on September 30, 2005 followed by defendant's supplemental response on October 18, 2005, plaintiffs have been silent concerning defendant's responses to the interrogatories until filing the present motion for sanctions. Plaintiffs did not seek further clarification or complain that the responses were inadequate. Instead, without any warning, plaintiffs filed their motion for sanctions.

## ARGUMENT

### A. Defendant's Interrogatory Responses Are Proper

Plaintiffs claim the United States has refused to respond to certain interrogatories and have abused the discovery process for five years. Plts.' Mot p 1. Lacking any substance to their claim, plaintiffs resort to gratuitous and inflammatory language. Significantly, although plaintiffs allege a longstanding pattern of "dilatory," "intransigent" and "obstructionist tactics" –allegations that are entirely unsupportable– they have not followed the Court's procedure for resolving discovery disputes, namely,

filing a motion to compel under RCFC 37(a) concerning the interrogatories at issue since the order staying discovery was lifted on May 26, 2004. Instead, without any warning, plaintiffs move for sanctions. Plaintiffs' claim has no merit whatsoever.

Defendant has responded to the interrogatories at issue in a consistent, straightforward and thorough manner. Interrogatory No. 3 from the class certification phase of the litigation, requests a legal conclusion, the date the statute of limitations began to run. Defendant appropriately objected to the interrogatory. Williams v. Krieger, 61 F.R.D. 142, 144 (S.D.N.Y. 1973)("pure requests for admission of law" are objectionable). Without waiving its objection, defendant responded that the date the statute of limitations began to run would vary from property to property. Defendant highlighted various facts relevant to examining the statute of limitations: the opening of the base in 1940, the expansion into a master jet base in 1957, as well as a 1978 noise study that reflected noise contours similar in size to noise contours on which plaintiffs have based their claims.

Defendant supplemented its response three times, most recently in February 2005, explaining that the statute of limitations would require investigation and discovery. Plts.' Mot. p 4. Defendant explained that it was investigating the statute of limitations now that the test plaintiffs' properties had been selected[3] and would supplement its response once the requisite information was gathered and analyzed through discovery. Plts.' Mot. p 4. Since February 2005, plaintiffs have not requested additional information concerning Interrogatory No. 3 nor have they filed a motion to compel a further response.

[3] As a result of withdrawals and substitutions, the final test plaintiff, Eileen May, was not added to the case until November 2005.

At the time defendant provided responses and supplemental responses to Interrogatory No. 3 it did not know the date the statute of limitations began to run, neither for the purported class representatives' properties during that phase of the litigation, nor for the test plaintiffs' properties in the current phase of the litigation. Defendant has consistently explained that the matter needed to be investigated and offered to supplement its responses once defendant has completed its investigation and analysis through discovery. Plaintiffs erroneously assert in their motion (filed on February 23, 2006) that "Discovery is now over." Plts.' Mot. p 6. That plainly is not true. In fact, test plaintiff Eileen May and another fact witness were deposed last Thursday, March 9, 2006, and plaintiffs' noise expert was deposed last Friday, March 10, 2006. Defendant is still analyzing the date the statute of limitations began to run for the test plaintiffs' properties and will supplement its responses, as promised, when the investigation is completed.

The second interrogatory at issue is Interrogatory No. 1 from the current phase of the litigation, which was served on January 21, 2005. The relevant portion of Interrogatory No. 1 for purposes of plaintiffs' motion for sanctions, concerns historical noise exposure at the test plaintiff properties:

> (a) whether you contend that prior to the relocation of the F/A-18 aircraft to [Naval Air Station] Oceana the properties were exposed to a noise level above or equivalent to the noise level after the relocation and, if so, state the date or dates of such exposure and the precise basis for your contention ... (c) if you contend that any noise level for any period above constituted a taking of an avigation easement with respect to any of the [test] properties, provide the date of taking....

Pls.' Mot. p 4.

On February 22, 2005, defendant asserted certain objections to the interrogatory and without waiving the objections has responded that it was investigating historical noise levels as measured by the DNL metric after the relocation of the F/A-18 C/D aircraft to NAS Oceana. On March 7, 2005, defendant advised plaintiffs that it was contracting with Dr. Sanford Fidell, an expert in this field, to investigate the issue. Dr. Fidell conducted his analysis and prepared an expert report detailing historical noise levels using the DNL metric that was produced to plaintiffs on September 30, 2005 in accordance with the Court's discovery schedule. On October 18, 2005, defendant, yet again, supplemented its response as follows:

> To the extent that noise level as measured by DNL at the test plaintiffs' properties at the time of the alleged taking is evidence of a taking, the test plaintiffs' properties have historically been exposed to comparable or higher DNL noise levels as reflected in Dr. Fidell's report. Defendant notes, however, that noise level alone is insufficient to establish a taking.

Plts.' Mot. Ex. L p 2.

Defendant's responses and supplemental responses to this interrogatory as well have been consistent, straightforward, and thorough. After investigating the matter, defendant has provided historical noise levels at the test plaintiffs' properties, and has responded that noise level, standing alone, does not establish a taking. Outside of the present motion for sanctions, plaintiffs have not requested additional information or complained that defendant's supplemental response to this interrogatory was insufficient.

As such, defendant's interrogatory responses are entirely proper in contrast to plaintiffs' assertions.

**B. RCFC 37(d) Does Not Authorize Sanctions Because Defendant Responded To Plaintiffs' Interrogatories**

Plaintiffs erroneously rely on RCFC 37(d) as a basis for imposing sanctions. RCFC 37(d) applies when a party "fails to serve answers or objections to interrogatories." RCFC 37(d)(2). All of the cases discussing Rule 37(d) in plaintiffs' memorandum in support of their motion for sanctions involve a party completely failing to respond to interrogatories: Adkins v. United States, 816 F.2d 1580, 1582-83 (Fed. Cir. 1987)(plaintiffs who failed to respond to interrogatories requesting basic factual information underlying their claims were properly dismissed under Rule 37(d)); Dellums v. Powell, 566 F.2d 231, 236 (D.C. Cir. 1977)(abuse of discretion to reinstate plaintiff in case who failed to respond to interrogatories despite urging of own counsel); Colbert v. United States, 30 Fed. Cl. 95, 98 (1993)("complete failure to respond to interrogatories and document requests ... is grounds for dismissal under rule 37(d)").[4] See Plts.' Mot. pp 8-10. Neither Rule 37(d), nor any of the cases on which plaintiffs rely, is relevant to the case at bar because, as discussed above and as reflected in plaintiffs' own memorandum, defendant has responded to plaintiffs' interrogatories, stating its objections and providing responses. Further, defendant has supplemented its responses on several occasions, and will do so again when it obtains further information. Under these circumstances, plaintiffs' efforts to obtain sanctions under Rule 37(d) are wholly misplaced. See Badalamenti v. Dunham's Inc., 896 F.2d 1359, 1362 (Fed. Cir. 1990)(if a party responds to a [discovery] request, even if the response is limited to objecting, Rule 37(d) sanctions are unavailable); Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1339-40 (9th Cir. 1985); Israel Aircraft Industries, Ltd. v. Standard Precision, 559 F.2d 203, 208 (2d

[4] See also Cash Express, Inc. v. United States, 23 Cl. Ct. 136 (1991)(plaintiff appropriately dismissed for failure to prosecute because of failure to respond to discovery requests). Plts.' Mot. p 10.

Cir. 1977)(Rule 37(d) only applies when there is a complete failure to respond to discovery); Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 995 (8th Cir. 1975).[5]

### C. RCFC 37(b)(2) Does Not Authorize Sanctions Because Defendant Has Not Violated A Pre-existing Court Order Compelling Additional Responses

Sanctions are not authorized under RCFC 37(b)(2) either. "Rule 37(b)(2) states that a party must 'fail to obey' a pre-existing court order before a court may impose sanctions." Morris v. United States, 37 Fed. Cl. at 213, quoting Shepherd v. American Broadcasting Cos. Inc., 62 F.3d 1469, 1474 (D.C. Cir. 1995). The language of Rule 37(b)(2) is abundantly clear and is followed by considerable precedent. Sanctions under Rule 37(b)(2) are not appropriate where no order relating to discovery has been issued. GFI Computer Ind., Inc. v. Fry, 476 F.2d 1, 3 (5th Cir. 1973)(plaintiffs' failure to file motion under Rule 37(a) barred the invocation of sanctions under Rule 37(b)); Fox, supra, 516 F.2d at 995(rule 37(b) has no application if there has not been a court order); Salahuddin v. Harris, 782 F.2d 1127 (2nd Cir. 1986) (plain language of Rule 37(b) requires a court order be in effect before sanctions are imposed); R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11,14 (1st Cir. 1991)(court order must be in effect and then violated before sanctions can be imposed).

Plaintiffs have not sought, much less obtained, an order under RCFC 37(a) compelling defendant to elaborate on its responses to the interrogatories at issue. Instead, plaintiffs disregarded the procedures laid out in RCFC 37 and moved directly for

---

[5] Rule 37(d) sanctions have been imposed in certain situations where responses were served, but were so misleading and evasive as to amount to no response at all. See Minnesota Mining & Mfg. Co. v. Eco Chem., Inc., 757 F.2d 1256, 1260 (Fed. Cir. 1985)(rejecting assertion that interrogatory answers stating "unable to respond" was a sufficient response to obviate Rule 37(d) sanctions); Bell v. Automobile Club of Michigan, 80 F.R.D. 228, 232 (E.D. Mich. 1982)(clear misrepresentations in interrogatory answers constituted a failure to answer).

sanctions without any warning to defendant. Plaintiffs acknowledge that sanctions under RCFC 37(b)(2) are predicated on a violation of a pre-existing court order compelling discovery, which would give the impression that they would not attempt to rely on Rule 37(b)(2) in their request for sanctions against the United States. Plts.' Mot. p 7. Inexplicably, however, plaintiffs cite several cases involving Rule 37(b) discovery disputes. These cases involve the imposition of sanctions because of a party's failure –in some cases repeatedly- to follow a court's discovery order, a necessary predicate not present in this case: Societe Internationale v. Rogers, 357 U.S. 197 (1958)(dismissal under Rule 37(b) was not a just remedy when party attempted in good faith to comply with production order); Malone v. United States Postal Service, 833 F.2d 128 (9th Cir. 1987); Morris v. United States, 37 Fed. Cl. 207 (1997); Applegate v. United States, 35 Fed. Cl. 47 (1996); Anchor Estates v. United States, 11 Cl. Ct. 578(1987). Given that there is no pre-existing order to compel further responses from defendant to the interrogatories at issue, there is no basis to impose sanctions under Rule 37(b)(2).

**D. Sanctions Should Not Be Imposed Under The Court's Inherent Power Because Defendant Has Provided Responses To Plaintiffs' Interrogatories In Good Faith**

In addition to RCFC 37, the Court of Federal Claims possesses the inherent authority to impose sanctions for abuses of the discovery process in certain egregious cases. Amstead Industries Inc., v. Buckeye Steel Castings Co., 23 F.2d 374, 378 (Fed. Cir. 1994); In re Greg Bailey v. United States, 182 F.2d 860, 864 (Fed. Cir. 1999). The Supreme Court cautions that inherent powers are "potent" and "must be exercised with restraint and discretion" when imposing sanctions. Roadway Express, Inc. v Piper, 447 U.S. 752, 764 (1980); Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991); Shepherd v.

American Broadcasting Cos. Inc., 62 F.3d 1469, 1477 (D.C. Cir. 1995)(inherent power sanctions are fundamentally punitive and therefore require clear and convincing evidence of misconduct). "Without a finding of fraud or bad faith whereby the very 'temple of justice has been defiled,' a court enjoys no discretion to employ the inherent powers to impose sanctions." Amstead Industries Inc., v. Buckeye Steel Castings Co., supra, 23 F.2d at 378 (sanctions for expert fees not warranted where no finding of bad faith or fraud upon the court.) quoting Chambers v. NASCO, Inc., 501 U.S. 32, 50-51 (1991).

This is simply not a case where it is appropriate for the Court to exercise its inherent authority to impose sanctions. The United States has not acted in bad faith, committed a fraud, nor defiled justice in any sense. To the contrary, the United States has fully responded to plaintiffs' interrogatories, and has supplemented its responses. Defendant has explained that it is investigating matters sought in the interrogatories, such as the beginning date of the statute of limitations for the test plaintiffs' properties, and will supplement its response once its investigation is completed. With regard to historical DNL noise measurements at the test plaintiffs' properties (Interrogatory No. 1), defendant provided that information through its expert and in accordance with the discovery schedule nearly six months ago. As such, sanctions pursuant to this Court's inherent power are neither available, nor appropriate.

**E. Striking The Statute Of Limitations Defense Is Not An Available Sanction**

In addition to their claims having no merit, plaintiffs have requested an improper sanction – striking the statute of limitations defense. 28 U.S.C. § 2501 (2000) sets an express limitation on the jurisdiction granted to this Court under the Tucker Act. Martinez v. United States, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (en banc), cert. denied,

540 U.S. 1177 (2004); Franconia Assocs. v. United States, 240 F.3d 1358, 1362 (Fed. Cir. 2001), rev'd on other grounds, 536 U.S. 129 (2002); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1376-77 (Fed. Cir. 1998); Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990) (citing Soriano v. United States, 352 U.S. 270, 273-74 (1957)); Holloway v. United States, 60 Fed. Cl. 254, 256 (2004). The six-year time bar on actions against the United States is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." Caguas Cent. Fed. Sav. Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir. 2000), cert. denied, 531 U.S. 1070 (2001); see also Martinez v. United States, supra, 333 F.3d at 1316. "Because the statute of limitations affects this court's subject matter jurisdiction--rather than being an affirmative defense--the requirement is strictly construed and under no circumstances may it be waived by the court." Martinez v. United States, 48 Fed. Cl. 851, 857 (2001); Laughlin v. United States, 22 Cl. Ct. 85, 99 (1990), aff'd, 975 F.2d 869 (Fed. Cir. 1992); Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404 (1994).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny plaintiffs' motion for sanctions and grant the United States any relief the Court deems appropriate.

Dated: March 13, 2006

Respectfully submitted,

/s/ Steven D. Bryant
Steven D. Bryant
Kelle S. Acock
Environmental & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3205
Washington, D.C. 20004
Counsel for Defendants
202-305-0424

Of Counsel:
Robert J. Smith
Mary Raivel
Navy Litigation Office
720 Kennon Street
Washington Navy Yard, D.C. 20374

CDR Dominick Yacono
JAGC, USN
Commander Navy region
Mid-Atlanic, Code (00LE)
1510 Gilbert Street
Norfolk, VA 23511-2737

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** was served by electronic mail this 13th day of March 2006, to the following:

Jack Ferrebee
Hofheimer/Ferrebee, P.C.
1060 Laskin Road
Suite 12B
Sandpiper Key
Virginia Beach, Virginia 23451-6365

/s/ Steven D. Bryant
Steven D. Bryant
Environmental & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3205
Washington, D.C. 20004
Counsel for Defendants

HOFHEIMER/FERREBEE, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1060 LASKIN ROAD, SUITE 12B
SANDPIPER KEY
VIRGINIA BEACH, VIRGINIA 23451-6365

MARY ELIZABETH DAVIS
JACK E. FERREBEE
SHEERA R. HERRELL
CHARLES R. HOFHEIMER
KRISTEN D. HOFHEIMER
JEFFREY D. TARKINGTON

TELEPHONE (757) 425-5200
FACSIMILE (757) 425-6100
*E-mail: jferrebee@hoflaw.com*
Our File No. 034233

March 7, 2005

Steven D. Bryant, Esquire
Environmental & Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663

RE: March 7, 2005 Meet and Confer

Dear Steve:

[redacted]

[redacted]

[redacted]

[redacted]

**Exhibit A**

[redacted]

Interrogatory 1 – you indicated that you are investigating the test case properties with regard to the subpart concerning the Db LDN levels. You also indicated that you are waiting for a report from Sanford Fidell concerning the date of taking issue.

[redacted]

[redacted]

Very truly yours,

Jack E. Ferrebee

JEF/tbf
cc: Counsel

**U.S. Department of Justice**

Environment and Natural Resources Division

SDB
90-1-23-10297

*General Litigation Section*
*P.O. Box 663*
*Washington, DC 20044-0663*

*Telephone (202) 305-0424*
*Facsimile (202) 305-0506*

March 15, 2005

**Via Email and Regular Mail**

Jack E. Ferrebee, Esquire
Hofheimer/Ferrebee, P.C.
1060 Laskin Road
Suite 12B
Sandpiper Key
Virginia Beach, Virginia 23451-6365

Re: March 7, 2005 Meet and Confer

Dear Jack:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**Exhibit B**

[redacted]

[redacted]

[redacted]

No. 1-2 - Without waiving the stated objections, the response is complete on information and belief. We are in the early stages of investigating the current 11 (soon to be 12) test properties.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

With regard to our discussion of Defendant's Response to Interrogatory Number 1, I indicated that we are investigating the test case properties regarding historical aircraft noise and overflight impacts and are contracting with an expert in this field to evaluate this issue.

[redacted]

Very truly yours,

Steven D. Bryant