**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 01-201L |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Victor J. Wolski |
| Defendant. | ) | |
| | ) | |

**DEFENDANT UNITED STATES' REPLY IN SUPPPORT OF ITS MOTION FOR A PROTECTIVE ORDER REGARDING A SUBPOENA ISSUED TO WYLE LABORATORIES**

Defendant United States of America, by and through the undersigned counsel, hereby files this Reply in support of its motion to for a protective order pursuant to Rule 26(c) of the Rules of the Court of Federal Claims, regarding a subpoena served on Wyle Laboratories ("Wyle Labs"). Plaintiffs made two arguments in their opposition to the motion: 1) privileged communications among counsel and Navy employees lost their protection when they were disseminated to Wyle Labs employees and 2) Wyle Labs was performing "statutorily required tasks" concerning two Environmental Impact Statements ("EIS") pursuant to the National Environmental Policy Act ("NEPA") 42 U.S.C. § 4332 et. seq; therefore, communications associated with those tasks cannot be privileged. Neither of plaintiffs' claims has merit. The first assertion is simply a regurgitation of plaintiffs' argument in its motion to compel filed on October 24, 2005. As the United States pointed out in its response to that motion and its motion for a protective order, Wyle Labs was not a third party, but rather an extension of the Navy concerning its technical analyses of jet noise. As to the latter assertion, plaintiffs completely miss the mark as discussed below.

## Argument

**Privileged Communications Extend To The Navy's Consultant–Wyle Labs**

Plaintiffs' subpoena requests internal memoranda and communications among Wyle Labs employees concerning the revision of the projected 1999 jet noise contours surrounding Naval Air Station Oceana. The subpoena overlaps with plaintiffs' Request for Production ("RFP") No. 29, which also sought communications regarding the revisions to the projected 1999 noise contours. In response to RFP No. 29, defendant has produced hundreds of pages of e-mails and other documents. Included in these productions, despite plaintiffs' assertions to the contrary (Plts.' Opp'n p 4), were purely internal Wyle communications. See e.g., Exhibit A (OCE213222, OCE215624, OCE215626, OCE235114, and OCE235367). Requiring defendant to re-review, redact as necessary, and reproduce documents responsive to the subpoena that have already been produced to the plaintiffs once is duplicative and wasteful. Plaintiffs offer no explanation as to why they are entitled to receive documents they already have.

As discussed in defendant's motion for a protective order, a number of e-mails involving Wyle Labs employees concern the effort that resulted, in part, in revisions to the projected 1999 noise contours produced pursuant to RFP No. 29. These e-mails contained communications between Navy personnel, Wyle Labs, and Navy attorneys for the purpose of seeking, giving, or receiving legal advice while Wyle was working under contract with the Navy. These communications were also relevant to both then-existing litigation and in anticipation of future litigation. These communications are therefore protected by both the attorney-client privilege and the attorney work product privilege.

Plaintiffs contend that Wyle Labs is a third party and any communications disseminated to Wyle Labs cannot be privileged. They made this argument in their motion to compel filed on October 24, 2005. Plts.' Memorandum in Support of their Motion to Compel ("Plts.' Mem.") p 12.

In its response to the motion filed on November 10, 2005, as well as its motion for a protective order regarding the Wyle subpoena, defendant explained that communications protected by the attorney-client and attorney work product privileges do not lose their protection simply because Wyle Labs employees were participants in the e-mail discussions. Def.'s Response pp 6, 10. Wyle Labs was, in effect, an extension of the Navy for purposes of the technical analyses that are the subject of the communications at issue here. As such, privileged communications did not lose their protection simply because they were disclosed to Wyle Labs employees. See In re Bieter Co., 16 F.3d 929, 934, 9367-40 (8th Cir. 1994); see also, McCaugherty v. Sifferman, 132 F.R.D. 234 (N.D. Cal. 1990)(attorney-client privilege can extend to consultants when they are the functional equivalents of employees). This protection would extend to any internal communications between Wyle Labs employees reflecting privileged communications as well.

Moreover, plaintiffs' claim that privileged communications do not extend to a federal agency's technical consultants (e.g. Wyle Labs for the Navy) would have far reaching and devastating implications for the ability of federal agencies to prepare for and defend themselves against litigation and for agency counsel to properly advise their clients. Federal agencies frequently rely on contractors such as Ecology and Environment, Inc. (which prepared the EIS in question) and subcontractors such as Wyle

Labs to assist in preparing EISs and accompanying studies because of their technical expertise. The loss of the protection of privileged communications with these consultants would necessarily have a chilling effect on the kind of open and frank communications that are absolutely critical to the ability of agency counsel to do their jobs. Counsel would instead be forced to assess litigation risks in the absence of full and frank communication with technical consultants regarding critical technical information. Counsel would also be forced to provide advice to clients without the benefit of that critical technical information, and without the necessary, concomitant ability to freely discuss the content of that technical advice with the consultants. This would result in both the decision-maker and the public being less informed. Thus, it is clear that the principles discussed in Beiter and McCaugherty are critical to the ability of federal agencies to function properly.

**Statutory Requirement for EIS Does Not Preclude Privileged Communications**

Relying on a misinterpretation of dicta from a single case, plaintiffs next contend that communications associated with preparing an Environmental Impact Statement ("EIS") cannot be privileged because the preparation of an EIS is a statutory requirement under NEPA. Plts.' Opp'n pp 6-7. This assertion has no merit whatsoever. Plaintiffs point to the following excerpt from McCaugherty v. Sifferman, supra, 132 F.R.D. at 243:

> The attorney-client privilege does not attach to communications which clearly would have been made even absent any effort to seek legal advice; thus, the privilege cannot attach to communications made pursuant to some independent legal obligation, unless, at a minimum, the law that imposes that obligation also guarantees the confidentiality of the communications it compels.

Plaintiffs have taken this statement out of context. The court was addressing the specific situation where a statute or regulation explicitly requires certain information to be

communicated from one party to another. In McCaugherty v. Sifferman, the question was whether a banking statute or regulation required a bank to communicate specific information to the FSLIC. The court stated that if, in fact, there was a statutory or regulatory obligation to transmit the information to the FSLIC then by its nature the communication would not be confidential. Consequently, unless the statute or regulation explicitly guaranteed the confidentiality of the information, then it was not subject to the attorney-client privilege.

Unlike the communications at issue in McCaugherty v. Sifferman, none of the specific Wyle communications related to NEPA are mandated by statute or regulation to be communicated from one party to another. NEPA is a procedural statute that requires federal agencies to examine the potential environmental impacts of "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C); see also 40 C.F.R. §1502.4. When applicable, federal agencies comply with NEPA by preparing an EIS, which is a detailed written analysis of the effects of the action, including a description of the affected environment, an analysis of a reasonable range of alternatives to the action, as well as the direct, indirect, and cumulative effects. 40 C.F.R. § Part 1502. But while an EIS may be required, that does not mean that any specific communication that is a part of the process of developing that EIS is statutorily mandated to be communicated from one party to another. Therefore, plaintiffs' reliance on McCaugherty v. Sifferman is inapposite.

Further, if accepted, plaintiffs' argument would have far reaching impacts. Plaintiffs assert that all communications related to a NEPA-mandated EIS cannot be privileged. If that were true, agency counsel (not just the Navy, but any federal agency

that prepares an EIS) could never have privileged communications with that federal agency's employees regarding the subject matter of an EIS, regardless of the need to provide the counsel with information to properly advise their client and regardless of whether there is litigation either pending or anticipated. This assertion is flat wrong.

Indeed, it is well-accepted that an agency can withhold documents that are part of an administrative record on the basis of evidentiary privileges. See Town of Norfolk v. U.S. Army Corps of Engineers, 968 F. 2d 1438, 1457-58 (1st Cir. 1992) (affirming district court ruling that agency properly withheld attorney-client privileged documents from administrative record); National Courier Ass'n v. Bd. Of Governors of the Federal Reserve System, 516 F. 2d 1229, 1241-42 (D. C. Cir. 1975) (upholding agency decision to withhold documents from administrative record pursuant to deliberative process privilege); Wade v. Dole, 631 F. Supp. 1100, 1107 (N.D. Ill. 1986), affirmed, 813 F. 2d 798 (7th Cir. 1987) (attorney-client privileged documents may be withheld from the administrative record); Van Aire Skyport Corp. v. Fed. Aviation Admin, 733 F. Supp. 316, 320-21 (D. Colo. 1990) (FAA properly withheld documents under the deliberative process privilege, including various comments related to a draft EIS concerning the Denver airport expansion).

In Biddison v. City of Chicago, No. 85 C 10295, 1989 U.S. Dist. LEXIS 3991 (N.D. Ill. February 3, 1989), the Northern District of Illinois recognized that documents generated in the course of preparing an EIS related to the expansion of the O'Hare airport were appropriately withheld based on the attorney-client and attorney work product privileges. Biddison is strikingly similar to the case at bar. There, as here, the preparation of the EIS was "inextricably bound up with defendant's defense of a seamless

web of litigation, beginning before the preparation of the EIS and still going on." Biddison, 1989 U.S. Dist. LEXIS 3991, at *3. In Biddison, the EIS itself was prepared as a result of NEPA litigation. Once prepared, the adequacy of the final EIS was then challenged. The court concluded that "the EIS was little more than the bridge from one lawsuit to another" and therefore attorney work product involved in the preparation of the EIS was protected. Biddison, 1989 U.S. Dist. LEXIS 3991, at *5, 8. As in Biddison, there is a web of litigation related to the relocation of the F/A-18 C-D and the F/A-18 E-F aircraft to Naval Air Station Oceana, and thus some of the internal Wyle documents responsive to the subpoena may contain communication that is covered by attorney work product.

Finally, plaintiffs argue that because Wyle Labs employees may testify as fact witnesses at trial regarding its noise analysis, that it is somehow improper to withhold otherwise privileged communication related to that analysis. This argument makes no sense. Fact witnesses routinely testify about matters about which they have also been privy to some privileged communications. The fact that they testify about a particular subject does not change the rules regarding assertion of attorney-client privilege or attorney work product with respect to any privileged communications related to that subject. If it were otherwise, clients who might otherwise be inclined to seek legal counsel regarding a ongoing matter that may end up in litigation would be deterred from doing so, for fear that by testifying about the matter later they would somehow "waive" their right to privileged communication on the same subject matter.

For the foregoing reasons, defendant respectfully requests this Court grant defendant's motion for a protective order to exclude any responsive documents that have

previously been produced, to exclude any privileged communications, and to recognize that defendant may respond to a subpoena on behalf of Wyle Labs and that a Wyle Labs employee is not required to appear to testify.[1] If the protective order is granted, plaintiffs are free to challenge any assertion of privilege by the defendant with respect to any material produced in the normal manner.

Dated: March 22, 2006

Respectfully submitted,

/s/ Steven D. Bryant
Steven D. Bryant
Kelle S. Acock
Environmental & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3205
Washington, D.C. 20004
Counsel for Defendants
202-305-0424

Of Counsel:
Robert J. Smith
Mary Raivel
Navy Litigation Office
720 Kennon Street
Washington Navy Yard, D.C. 20374

CDR Dominick Yacono
JAGC, USN
Commander Navy region
Mid-Atlantic, Code (00LE)
1510 Gilbert Street
Norfolk, VA 23511-2737

[1] Plaintiffs' counsel had inexplicably demanded that a "knowledgeable Wyle witness appear ... ready to answer questions" regarding documents responsive to the subpoena despite the fact that the subpoena explicitly requests the production or inspection of documents rather than the deposition of a witness. See Defendant' Motion for a Protective Order, Exhibit A, Exhbit D p 2.

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **DEFENDANT UNITED STATES' REPLY IN SUPPPORT OF ITS MOTION FOR A PROTECTIVE ORDER REGARDING A SUBPOENA ISSUED TO WYLE LABORATORIES** was served by electronic mail this 22nd day of March, 2006, to the following:

Jack Ferrebee
Hofheimer/Ferrebee, P.C.
1060 Laskin Road
Suite 12B
Sandpiper Key
Virginia Beach, Virginia 23451-6365

/s/ Steven D. Bryant
Steven D. Bryant
Environmental & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3205
Washington, D.C. 20004
Counsel for Defendants

**Mooney, Pat**

**From:** Downing, Micah
**Sent:** Friday, November 30, 2001 3:05 PM
**To:** Jessurun, Xaviera
**Subject:** ARS2 revisions

**Attachments:** OCS24155.BPS; F18CD Flight Profiles-Final-3.doc; F14-FlightProfiles-final-2.doc

OCS24155.BPS (57 KB) F18CD Flight Profiles-Final-3.... F14-FlightProfiles-final-2.doc...

Xaviera,

Attached are the files for revising the 1997 ARS2 Oceana contour. The required revisions are primarily engine power settings and airspeeds. For this effort we will not modify the flight tracks so some of the track distances will differ between the BPS file and the descriptions. In setting the points, use your best judgment and remember that Geral and/or I will review them before we proceed with the contour.

Micah

PS If you have any questions over the weekend, please call me (703) 367-0410.

**Exhibit A**

**Mooney, Pat**

**From:** Jessurun, Xaviera
**Sent:** Tuesday, December 04, 2001 2:58 PM
**To:** Downing, Micah
**Subject:** F14B profiles

Second unmarked change on your copy:
Wherever you see a speed of 225 kts. has been changed to 250 kts. Examples profiles # 112, 113, 115, 116.

Xaviera

**Mooney, Pat**

**From:** Jessurun, Xaviera
**Sent:** Tuesday, December 04, 2001 2:15 PM
**To:** Downing, Micah
**Subject:** F-14 B profiles

Micah,

While entering the modifications in Nmap I noticed that I missed one change. At 12000 feet along the track the altitude should be 1500 feet instead of 1000. Examples are profile numbers 101, 102, 103, etc. Your marked up copy does not have this but I will mark mine and enter the correct altitude into Nmap.

Xaviera

91389

**From:** Long, Geral
**Sent:** Thursday, November 22, 2001 10:59 PM
**To:** Downing, Micah
**Subject:** c/d word smithing

Micah

Only a few of my suggested changes are actually needed. Mostly I think we need to remove the "traffic pattern" words except when it is actually at traffic pattern of 1,000 or 800 feet. A couple times I added words that smooth, I think, the transition from one airspeed or altitude to another. I also included a line about the power reduction at Oceana 81% versus Fentress 84%.

F18CD Flight Profiles-Final-21...

The rest are just truly smithing words for consideration

Geral L. Long
Facility Manager, Wyle Laboratories
2001 Jefferson Davis Highway, Suite 701
Arlington, VA 22202
Com 703-415-4550, Extension 23
FAX 703-415-4556
Glong@arl.wylelabs.com

31407

**From:** Long, Geral
**Sent:** Wednesday, November 21, 2001 11:30 AM
**To:** Downing, Micah
**Subject:** fentress T&G

We normally use 82 % at pt e to initiate turn to final at Fentress. Profile 446 and others continue to use 81%.

Geral L. Long
Facility Manager, Wyle Laboratories
2001 Jefferson Davis Highway, Suite 701
Arlington, VA 22202
Com 703-415-4550, Extension 23
FAX 703-415-4556
Glong@arl.wylelabs.com