IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

Citizens Concerned About Jet Noise, Inc.,

Plaintiff,

v. Civil Action No. 2:98cv800

John Dalton, et al.,

Defendants.

**AFFIDAVIT**

I, John C. Shick, depose and say that:
[full name]

1. I am an adult resident of Virginia Beach, Virginia.
[City and State]

2. I have resided at 912 Duke of Suffolk Drive for a period of 31.
[street address] [number of years]

3. See attached sheet.

[Here, state your personal knowledge. Example: "Jet aircraft from Oceana fly at low levels directly over my home."]

[Continue the affidavit with the details of your knowledge, including, for example, the frequency of the noise, its intensity, and in what ways it disturbs your normal activities.]

[If your affidavit is addressed to statements made to you or in your presence by Navy officials, state the name, rank, and position of the official; the date and place the statement was made to you or in your presence; and the content of the statement.]

Under penalty of perjury as provided by federal law, I swear and affirm that the foregoing statements made by me are true and correct to the best of my knowledge.

Date: 11/24/98 John C. Shick
[Signature]

This document may be handwritten, but care must be taken to assure that it is fully legible.
Please mail your completed affidavit to CCAJN, 2004 Brickell Ct., Va. Beach, VA 23454

# AFFIDAVIT OF JOHN C. SHICK

The following issues are of concern to me regarding the decision to realign 156 additional F/A-18 C/D aircraft from NAS Cecil Field, FL. to NAS Oceana, VA.

1. My home is currently located in the middle of noise zone 2 (65-75 dB Ldn). As a consequence of the realignment my home will be on the border of noise zone 3 (75 dB Ldn and above). When weather and wind conditions require aircraft to use the north/south bearing runways, my home lies beneath a flight path commonly used. According to the AICUZ (Air Installation Compatible Use Zone) for NAS Oceana, however, my home is outside published flight paths. Thus, it is apparent that aircraft routinely fly outside published flight paths. In addition, these overflights are frequently below the minimum established 500 feet. I estimate that on numerous occasions they are as low as 250-300 feet. Further, according to the Draft Environmental Impact Statement, aircraft flight speeds during these training evolutions (touch and go and Field Carrier Landing Practice operations) are modeled to be conducted at air speeds between 150 and 250 kts. Again, as an estimate, I believe that they routinely exceed 300-350 kts, with many exceeding 400 kts. In a meeting held with Citizens Concerned About Jet Noise (CCAJN), Capt Eric Benson, Commanding Officer, NAS Oceana and his Community Planning Liaison Officer, Mr. Fred Pierson acknowledged that aircraft, on occasion, flew outside published flight profile parameters (i.e. at higher air speeds, lower altitudes, and off prescribed flight paths). The reason given was differences in experience and skill levels of the pilots and that for safety reasons they could not be flown differently, particularly with reference to flight speeds and flight paths.

2. As a consequence of these overflights, A-weighted decibel readings taken with a Sound Level Meter exceeded, on occasion, 107 dB outside my home and 85 dB inside. These overflights and the noise they generate disturb not only human occupants, but cause my dog and other pets to behave frantically.

3. During the meeting cited above, and at another meeting between CCAJN and NAS Oceana officials, as well as at the public hearing at the Virginia Beach Pavilion, Capt. Benson and Mr. Pierson, and hearing officials, in responding to a question as to why planes couldn't be moved from MCAS Beaufort to MCAS Cherry Point (or from MCAS Cherry Point to MCAS Beaufort) to create additional excess capacity for more F/A-18s at the losing activity, advised that BRAC 95 law prohibited such a move as part of the realignment and National Environmental Policy Act environmental impact statement development process.

4. Capt Benson and Mr. Pierson also advised that flight procedures effecting the local community could not be reviewed in advance of the final decision since any changes made to reduce the existing impact on these communities might unfairly influence that decision. Such a review, however is not mentioned in the FEIS.

John C. Shick