**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

(E-Filed: September 20, 2006)

| | | |
|---|---|---|
| CAROLE AND ROBERT TESTWUIDE, et. al., | ) | |
| Plaintiffs, | ) | No. 01-201 L |
| | ) | Honorable Victor J. Wolski |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORTS AND TESTIMONY OF JON P. NELSON**

Dated: September 20, 2006

Respectfully Submitted,

STEVEN D. BRYANT
KELLE S. ACOCK
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Email: steven.bryant@usdoj.gov
Voice: (202) 305-0424
Fax: (202) 305-0267

Of Counsel:

Robert J. Smith
Mary Raivel
Navy Litigation Office
Washington Navy Yard, D.C. 20374

CDR Dominick Yacono
JAGC, USN
Commander Navy region
Mid-Atlantic, Code (00LE)
Norfolk, VA 23511-2737

## TABLE OF CONTENTS


MEMORANDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. BACKGROUND AND DESCRIPTION OF THE REPORTS . . . . . . . . . . . . . . 2

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Motion in Limine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. FRE 702 and Daubert . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES


Baskett v. United States,
2 Cl. Ct. 356 (1983) . . . . . . . . . . . . . . . . . . . . 5

Daubert v. Merrell Dow Pharm., Inc.,
509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 10

Dodge v. Cotter Corp.,
328 F.3d 1212 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 6

General Electric v. Joiner,
522 U.S. 136 (1997) . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 10

INSLAW, Inc. V. United States,
35 Fed. Cl. 295 (1996) . . . . . . . . . . . . . . . . . . . . 5

Intl. Graphics, Div. of Moore Bus. Forms, Inc. v. United States,
5 Cl. Ct. 100 (1984) . . . . . . . . . . . . . . . . . . . . 6

Kumho Tire Co. V. Carmichael,
526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . 1, 7

Micro Chemical, Inc. v. Lextron, Inc.,
317 F.3d 1387 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . 6, 7

Testwuide v. United States,
56 Fed. Cl. 755 (2003) . . . . . . . . . . . . . . . . . . . . 5

Zenith Radio Corp. V. Matsushita Elec. Indus. Co.,
505 F. Supp. 1125 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . 6


**OTHER AUTHORITIES**


6 C. Wright and A. Miller, Federal Practice and Procedure 1525 (1971) . . . . . . . . . . 5

WEINSTEIN & BERGER ¶ 702 . . . . . . . . . . . . . . . . . . . . 7

# LIST OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Excerpts from the Expert Report of Jon P. Nelson, Ph.D., September 26, 2005 |
| B | Table 4. Summary of the Meta-Analysis of Airport Noise and Property Values, excerpt from the Expert Report of Jon P. Nelson, Ph.D., September 26, 2005 |
| C | Excerpts from Plaintiffs' Rebuttal to the Expert Report of Dr. David Dale-Johnson, December 12, 2005 |
| D | Excerpts from the Deposition Transcript of Jon P. Nelson |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

(E-Filed: September 20, 2006)

| | | |
|---|---|---|
| CAROLE AND ROBERT TESTWUIDE, et. al., | ) | |
| Plaintiffs, | ) | No. 01-201 L |
| | ) | Honorable Victor J. Wolski |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORTS AND TESTIMONY OF JON P. NELSON**

Defendant, United States of America, hereby moves to exclude the expert reports and testimony of Plaintiffs' economist, Jon P. Nelson, from the upcoming trial in this matter pursuant to Rule 16 of the Rules of the United States Court of Federal Claims ("RCFC") and Rule 702 of the Federal Rules of Evidence ("FRE"), as well as the case law of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), General Electric v. Joiner, 522 U.S. 136 (1997), Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) and their progeny.[1] Dr. Nelson's expert reports do not comply with FRE 702 and federal case law because they contain irrelevant and unreliable conclusions regarding the relationship between jet noise from operations at Naval Air Station ("NAS") Oceana and Naval Auxiliary Landing Field ("NALF") Fentress and property values in communities

[1] Dr. Nelson has submitted four expert reports setting forth the same theory. The first two reports were submitted during the class certification phase of this litigation. His third expert report ("Nelson Report") was submitted on September 26, 2005, and a subsequent rebuttal report was submitted on December 12, 2005.

surrounding those two bases. Accordingly, the reports and Dr. Nelson's testimony must be excluded from the upcoming trial. A memorandum in support of this motion follows.

**MEMORANDUM**

## I. BACKGROUND AND DESCRIPTION OF THE REPORTS

Dr. Nelson's September 2005 report contains his "evaluation of the effects on residential property values resulting from aircraft noise exposure, including the impact of the realignment of F/A-18 C/D fleet squadrons and fleet replacement squadrons (FRS)" to NAS Oceana and NALF Fentress. Exhibit A, Nelson Report, p. 2. As indicated in this report, Dr. Nelson's evaluation consisted of reviewing 29 studies conducted at various times from 1967 through 1995 of 23 different civilian, commercial airports throughout the United States and Canada. Dr. Nelson extracted the noise depreciation index ("NDI")[2] from each of those studies and summarized the NDIs in Table 3 of his report. See Exhibit A, Nelson Report, p. 17. As set forth in Table 3, the studies Dr. Nelson selected for his evaluation contained a vast range of NDIs from .29% (Cleveland, 1970) to 1.49% (District of Columbia, 1970) per decibel increase in noise. Id. After reviewing the studies and summarizing the NDIs, Dr. Nelson broadly concluded that "aircraft noise is negatively capitalized into residential property values." Nelson Report, p. 16. Dr. Nelson's evaluation did not include any studies regarding aircraft noise in Virginia Beach or aircraft noise from military bases, nor did any study identify an actual NDI for Virginia Beach at any point in time over the last thirty years.

---

[2] NDI represents the percentage of depreciation in property value per decibel of increased jet noise as measured by the Day-Night Average Sound Level ("DNL") metric. For example, a -1.0% NDI would mean that a house exposed to 70 dB DNL would be worth 5% less than a house exposed to 65 dB DNL, assuming the properties are equal in value in all other respects.

After extracting and summarizing the NDIs from the 29 selected studies, Dr. Nelson performed a meta-analysis[3] to estimate the mean NDI of the 33 NDIs listed in Table 3 of his report.[4] See Exhibit B. Dr. Nelson arrived at a mean NDI of -0.7% per dB increase in noise. See Exhibit B.

Dr. Nelson then combined the mean NDI of -0.7% with a 1985 FAA NDI estimate[5] of -1.0% per dB to arrive at his conclusion that "the best NDI estimates are -0.7% to -1.0% per dB." Exhibit A, Nelson Report, p. 20. Apparently, Dr. Nelson would universally apply this estimated NDI range to any civilian or military airport. Ironically, of the 33 reported NDIs listed in his report, only nine fell within this estimated range. See Exhibit A, Nelson Report, p. 17. No data regarding Virginia Beach were used in Dr. Nelson's meta-analysis.[6]

Dr. Nelson then concluded, without any supporting data from any study related to the impact of noise from military aircraft on property value, that "[t]he special effects of military aircraft noise that exceeds 75 dB are not fully captured by the NDI values of -0.7% to -1.0% per dB change in noise exposure." Nelson Report, p. 21. Proceeding with this assumption, Dr. Nelson reviewed the following: studies that show housing

---

[3] A meta-analysis is an analysis or synthesis of the results of a statistical analysis.
[4] Four studies listed in Table 3 included two NDIs, for a total of 33 NDIs.
[5] As explained in Dr. Nelson's report, the FAA estimate published in 1985 was based on data gathered in 1960 and 1967-70, more than twenty-five years before plaintiffs' alleged date of taking in the present case. Exhibit A, Nelson Report, p. 15.
[6] In his rebuttal report, Dr. Nelson did examine the data regarding Virginia Beach provided by defendant's expert, Dr. David Dale Johnson, in his expert report. Dr. Nelson concluded that these data show that aircraft noise had a negative impact on property value assuming that the original projected noise contour, ARS2, was an accurate reflection of the noise environment at the time of the alleged taking. Yet, Dr. Nelson clearly articulated that, in his view, Dr. David Dale Johnson's data was unreliable. See Exhibit C, Nelson Rebuttal Report, pp. 2-7. Just as his September 2005 report was not based on any data from Virginia Beach, his rebuttal report is also not based on any data for Virginia Beach that he considers reliable.

markets near airports (Chicago O'Hare Airport and "three communities near a major hub airport," Nelson Report, p. 21-24) segmented by noise exposure levels in excess of 75 dB; adverse health effects of severe noise levels on human health and welfare[7]; unique features of Navy operations; and the residential living environment and lifestyle of Virginia Beach and Chesapeake, Virginia. Exhibit A, Nelson Report, p. 21. Dr. Nelson concluded from his review of these four factors that, as applied to the communities surrounding NAS Oceana and NALF Fentress, properties located in the 65-79 dB noise zone had a NDI of -1.0% per dB increase in jet noise exposure, and properties located in the 80 dB and above noise zone had a NDI of -1.5% per dB increase in jet noise exposure. As with the evaluation discussed above and analyses contained in his previous reports, Dr. Nelson failed to include any actual data regarding Virginia Beach in reaching this conclusion set forth in his September 2005 report.

Finally, Dr. Nelson utilized the average assessed residential property value in Virginia Beach of $128,000 in July 1999 to illustrate how his NDI theory applied to plaintiffs' claims for just compensation in the present case. According to Dr. Nelson, monetary damage to an average property exposed to 60-64 dB in 1998 and 65-69 dB in 1999 would be $6,400 using a -1.0% NDI. Exhibit A, Nelson Report, p. 30. Pursuant to Dr. Nelson's analysis, damages would be greater for a property exposed to 80+ dB because a -1.5% NDI would apply. In other words, the NDI is multiplied by the increase

[7] Throughout his report, Dr. Nelson repeatedly discussed adverse health and welfare impacts of noise on property owners living in Virginia Beach and Chesapeake, Virginia. As discussed more fully *infra*, Dr. Nelson admitted he is not an expert regarding the effects of noise on people, Nelson Depo, p. 23, and therefore, he is not qualified to offer opinions concerning the relationship between jet noise and the health and welfare of people living in communities near military bases. Accordingly, Dr. Nelson's conclusions regarding alleged adverse health and welfare effects on property owners are not relevant to the upcoming trial and must be excluded.

in dB sustained by a property to arrive at a percentage decrease in value. That percentage decrease is then applied to the fair market value of the property before the date of the alleged taking. See Testwuide v. United States, 56 Fed. Cl. 755, 762-63 (2003) (Bush, J.).[8]

For the reasons set forth below, Dr. Nelson's reports and testimony must be excluded from the upcoming trial.

## II. STANDARD OF REVIEW

### A. Motion in Limine

A motion in limine is a recognized method for issuing early rulings on trial matters. Baskett v. United States, 2 Cl.Ct. 356, 359 (1983) (citations omitted). This Court has the power to issue motions in limine under Rule 16 of the Rules of the United States Court of Federal Claims ("RCFC"). As stated in Baskett:

> There is no question under [Rule] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. Not only does this court have such power, it has a duty to exercise it in appropriate cases. This power allows the court, *inter alia*, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

2 Cl.Ct. at 359-60 (citing 6 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE 1525 (1971)); see also INSLAW, Inc. v. United States, 35 Fed. Cl. 295,

[8] In its opposition to class certification, defendant set forth the following three arguments regarding Dr. Nelson's theory that are also applicable to this motion: (1) Dr. Nelson's theory "assumes injury from noise exposure and calculates damages based on that assumption without any market evidence showing that a particular property's value has actually diminished"; (2) Dr. Nelson "assumes a reliable linkage between an increase in noise exposure and a consistent, uniform decrease in property values" that "is speculative, unproven, and unsupported"; and (3) Dr. Nelson's extrapolation of the decline in housing prices from statistical analysis of other markets is unreliable, misleading and lacks probative value. See Testwuide, 56 Fed. Cl. at 763.

302-03 (1996) ("The basic purpose of a motion in limine is to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters.").

Furthermore, motions in limine promote "trial efficiency and promot[e] improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial." Intl. Graphics, Div. of Moore Bus. Forms, Inc. v. United States, 5 Cl. Ct. 100, 104 (1984) (quoting Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1125, 1140-41 (E.D. Pa. 1980)).

**B. FRE 702 and Daubert**

Pursuant to FRE 702, this Court may receive testimony of a properly qualified expert "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 requires the testimony meet the following three additional criteria:

> (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods,
> (3) and the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of the testimony bears the burden of proving the requirements of Rule 702 are satisfied before the testimony is allowed. See Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003).

"The landmark case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony under Rule 702." Micro Chemical, Inc. v. Lextron, Inc., 317 F.3d 1387, 1391 (Fed. Cir. 2003). The Supreme Court stated in Daubert that Rule 702 demands that a trial judge act as a "gatekeeper" and ensure that the proffered testimony "both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 589, 597.

Expert testimony is unreliable and inadmissible if there is an analytical gap between the data and the conclusions. In General Electric Co. v. Joiner, 522 U.S. 136 (1997), the Supreme Court emphasized that:

> Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

Joiner, 522 U.S. at 146. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 quoting WEINSTEIN & BERGER ¶ 702[02], p. 702-18. The Daubert principles apply not only to scientific testimony, but "to all expert testimony." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 138, 149 (1999) (emphasis added); Micro Chemical, Inc., 317 F.3d at 1391.

## III. ARGUMENT

As applied to the present case, the requirements of FRE 702 and Daubert mandate that Dr. Nelson's reports and testimony be excluded from the upcoming trial. First, Dr. Nelson's conclusions regarding the impact of jet noise on property values fail to satisfy the requirements of FRE 702 and Daubert because the conclusions are not based on sufficient facts or data. Second, Dr. Nelson's evaluation of the effects on residential property values resulting from aircraft noise exposure in the communities surrounding NAS Oceana and NALF Fentress are not reliable or relevant to the upcoming trial. Third, Dr. Nelson admits he is not qualified to offer an opinion as to the impact of noise on the health and welfare of property owners in Virginia Beach. For these reasons, Dr. Nelson's opinions are not helpful to the fact-finder and must be excluded.

Dr. Nelson's reports fail to satisfy FRE 702 and Daubert because Dr. Nelson reviewed insufficient and irrelevant data to arrive at the conclusions set forth in his reports. For his September 2005 report, Dr. Nelson began his evaluation by reviewing 29 studies, 19 of which contain data more than thirty years old, regarding the relationship between noise and residential property values in communities surrounding civilian, commercial airports. The most recently compiled data from the studies Dr. Nelson cited was collected in 1995, more than four years before July 1999, the date plaintiffs allege a taking occurred in this case. This data is simply too old to be reliable or relevant to plaintiffs' takings claim. Additionally, all of the 29 studies reviewed by Dr. Nelson addressed aircraft noise from civilian, commercial airports – a topic not at issue in the upcoming trial. When asked at his deposition whether any of the studies cited in his report examined the relationship between aircraft noise and residential property values around military bases, Dr. Nelson replied, "No. As I indicated, in my meta analysis they are all concerned with major civilian airports." Exhibit D, Nelson Deposition Transcript ("Nelson Depo."), pp. 39-40.

Moreover, no study reviewed by Dr. Nelson examined the relationship between a change in noise and property values. Specifically, no study examined a possible change, either positive or negative, in the value of property purchased at a discount due to the presence of aircraft noise that subsequently experienced a change in noise.[9] Exhibit D, Nelson Depo., p. 182. Therefore, Dr. Nelson reviewed irrelevant studies that have no relationship to the present case where a military jet base was present in the community

---

[9] In his rebuttal report, Dr. Nelson noted that he was aware of two unpublished studies that examined "airport announcement effects." Exhibit C, Nelson Rebuttal Report, p. 12, fn. 11. One study involved an announcement closing an airport and opening a new airport in a different location. The second study involved an existing airport announcing it would become a FedEx hub.

for over fifty years and additional squadrons of jets arrived at that base.

Aside from being outdated and not relevant to military bases, the data relied on by Dr. Nelson are inherently flawed because no study he reviewed addressed the relationship between aircraft noise and property values for properties located in Virginia Beach. In fact, at least four of the 29 studies listed in Table 3 of Dr. Nelson's report examined aircraft noise from airports that were not even located in the United States. The remainder of the studies examined airports located in major cities across the United States, such as Los Angeles, Dallas, and Boston, and the nearest airports to Virginia Beach were Washington, D.C., Baltimore, and Atlanta. Additionally, no study identified a NDI for Virginia Beach, and more importantly, Dr. Nelson admitted he did not gather any data regarding aircraft noise and properties surrounding NAS Oceana. Exhibit D, Nelson Depo., p. 48, 67. As such, Dr. Nelson's reports are completely devoid of any independent investigation regarding aircraft noise in Virginia Beach or the actual NDI for properties located in Virginia Beach.[10] Therefore, it is impossible for Dr. Nelson to arrive at any relevant and reliable conclusions regarding whether the relocation of F/A-18 C/D aircraft to NAS Oceana impacted property values in the surrounding community based on his data. Indeed, Dr. Nelson admitted during his deposition that he is an economist who was hired "to establish a negative impact, " Exhibit D, Nelson Depo., p. 62, on property values in communities surrounding NAS Oceana and NALF Fentress, and that ". . . other analyses of these properties will determine the exact damages . . . ." Nelson Depo., p. 62; <u>see also</u> Nelson Depo., p. 125.

---

10 As discussed above, the only data for Virginia Beach that Dr. Nelson cited were developed by defendant's expert, which Dr. Nelson did not consider reliable.

Despite the fatal deficiency of relevant and sufficient data, Dr. Nelson assumed a decline in property values in Virginia Beach from noise exposure and calculated compensation based on that assumption without any relevant market data from Virginia Beach that he considers reliable. This flawed assumption inherently includes a second flawed assumption – that a reliable linkage exists between the NDIs calculated more than thirty years ago near civilian, commercial airports (some of which were not located in the United States), and a NDI for a military base located in Virginia Beach. These assumptions are speculative, unproven, and clearly do not satisfy the reliability standard set forth in Daubert and its progeny.

In an attempt to support his assumptions, Dr. Nelson engaged in an unreliable analysis that averaged the irrelevant and wide-ranging NDIs extracted from the 29 surveyed studies, and then arbitrarily concluded that the average should be increased to -1.0% and -1.5% based on a FAA guideline for residential property located near civilian airports set forth more than 14 years before plaintiff's alleged date of taking, and on conclusions regarding adverse health and welfare effects for which Dr. Nelson is not qualified to give an opinion. Dr. Nelson then concluded that this arbitrary increase is somehow applicable to properties located in Virginia Beach. Again, outdated information regarding civilian airports is not relevant or analogous to the present case involving jet noise from a military base. Moreover, Dr. Nelson's analysis and any resulting conclusions are misleading and far from reliable or relevant. "Too great of an analytical gap" exists between the studies cited by Dr. Nelson and his conclusions for his report or trial testimony to be reliable or helpful to the trier of fact. See Joiner, 522 U.S. at 146.

Finally, Dr. Nelson is not qualified to present an opinion regarding any relationship between jet noise and the health and welfare of people living in communities surrounding a military base. When asked at his deposition whether he would consider himself an expert in the effect of noise on people, Dr. Nelson replied, "No. I am not an expert in that. What I've stated is that I have background knowledge of the literature in that area. I certainly do not have original studies in that area." Exhibit D, Nelson Depo., p. 23. Yet, nearly half of Dr. Nelson's report contains discussions and conclusions regarding health and welfare consequences of people exposed to various noise levels. Dr. Nelson should not be permitted to offer expert opinions on subjects for which he is not qualified. As stated, Dr. Nelson is an economist who was hired "determine the negative effect of aircraft noise, " Nelson Depo., p. 62, on property values in communities surrounding NAS Oceana and NALF Fentress, not to set forth opinions and conclusions regarding health and welfare consequences of people exposed to various noise levels. Accordingly, Dr. Nelson's opinions and conclusions regarding the health effects of noise must be excluded.

**CONCLUSION**

For the foregoing reasons, defendant respectfully requests the Court exclude the expert reports and testimony of Jon P. Nelson from the upcoming trial.

Dated: September 20, 2006

Respectfully Submitted,

s/ Steven D. Bryant

STEVEN D. BRYANT
KELLE S. ACOCK
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section

P.O. Box 663
Washington, DC 20044-0663
Email: steven.bryant@usdoj.gov
Voice: (202) 305-0424
Fax: (202) 305-0267

Of Counsel:

Robert J. Smith
Mary Raivel
Navy Litigation Office
Washington Navy Yard, D.C. 20374

CDR Dominick Yacono
JAGC, USN
Commander Navy region
Mid-Atlantic, Code (00LE)
Norfolk, VA 23511-2737