**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

(E-Filed: October 2, 2006)

| | | |
|---|---|---|
| CAROLE AND ROBERT TESTWUIDE, et. al., | ) | |
| Plaintiffs, | ) | No. 01-201 L |
| | ) | Honorable Victor J. Wolski |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN WITNESSES AND EXHIBITS**

Defendant, United States of America, hereby moves to (1) exclude the testimony of Robert J. Smith, lead attorney[1] for the United States Department of the Navy ("Navy") in this case, and 12 excessive, redundant, and irrelevant witnesses; (2) exclude plaintiffs' irrelevant exhibits regarding the following: History of jet accidents, constraints on pilot training, previously acquired easements, newspaper articles, sound attenuation and compensation for the loss of use and enjoyment of one's property, and expert reports; and (3) preclude plaintiffs from demonstrating sound and/or video recordings, including but not limited to the Interactive Sound Information System ("ISIS") software at the upcoming trial in this matter.

First, as discussed below, plaintiffs' witness list identifies at least 12 witnesses

[1] Mr. Smith is expected to have an integral role in the trial, including examining witnesses.

who will offer either irrelevant or cumulative testimony.[2] A list of these 12 witnesses defendant seeks to exclude is attached to this motion as Exhibit A. Plaintiffs also list Robert J. Smith, lead attorney for the Navy in this litigation, as a witness plaintiffs may call to testify about the 2002 revision to the noise contours drafted for the environmental impact statement. Second, plaintiffs' exhibit list includes nearly 75 exhibits that should be excluded because these exhibits are not relevant to the issues of liability or just compensation. Likewise, video recordings and photographs taken by Herk Stokely and Thomas Askins do not involve jet operations at the test plaintiffs' properties and should be stricken from plaintiffs' exhibit list and excluded from the upcoming trial. A list of the exhibits defendant seeks to exclude is attached to this motion as Exhibit B.

Third, the ISIS software should be excluded from the upcoming trial because it is not intended to replicate the jet noise produced by NAS Oceana aircraft at any test plaintiff property, and therefore, will be prejudicial and misleading if presented during the trial. As an alternative, the parties and the court could make a site visit to the test plaintiffs' properties when aircraft are operating on the flight paths most relevant to their homes.

## I. STANDARD OF REVIEW

A motion in limine is a recognized method for issuing early rulings on trial matters. Baskett v. United States, 2 Cl.Ct. 356, 359 (1983) (citations omitted). This Court has the power to issue motions in limine under RCFC16. As stated in Baskett:

> There is no question under [Rule] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. Not only

[2] On October 2, 2006, plaintiffs filed their notice of testimony by way of deposition for eleven witnesses. For the first time, plaintiffs identified the portions of the transcripts intended to be submitted in lieu of live testimony. Defendant reserves the right to review the designated testimony and object to the testimony if necessary.

> does this court have such power, it has a duty to exercise it in appropriate cases. This power allows the court, inter alia, to define the issues, facts, and theories actually in contention and to weed out extraneous issues.
>
> Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

2 Cl.Ct. at 359-60 (citing 6 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE 1525 (1971)); see also INSLAW, Inc. v. United States, 35 Fed. Cl. 295, 302-03 (1996) ("The basic purpose of a motion in limine is to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters.").

Furthermore, motions in limine promote "trial efficiency and promot[e] improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial." Intern'l Graphics, Div. of Moore Bus. Forms, Inc. v. United States, 5 Cl. Ct. 100, 104 (1984) (quoting Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp. 1125, 1140-41 (E.D. Pa. 1980)).

## II. DISCUSSION

### A. Rules 401 and 403 of the Federal Rules of Evidence require that plaintiffs' irrelevant and redundant witnesses be excluded from the upcoming trial

Plaintiffs' witness list includes 12 fact witnesses, other than the 12 test plaintiffs, who own property in the community surrounding Naval Air Station ("NAS") Oceana. At least three of the 12 additional fact witnesses are plaintiffs in this consolidated action, but were not selected as test plaintiffs for the upcoming trial. Plaintiffs' witness list provided the same comment for 10 of the 12 additional witnesses and broadly described their testimony as "noise impact on home and community." See Plts. Trial Witness List. The description for Robert Goodwin is also "noise impact on home and community" and adds

that he will testify to "NATOPS experience." Plts. Trial Witness List, p. 1. Plaintiffs' witness list states Louis Figari will testify to "aircraft noise around his property and Virginia Beach." Plts. Trial Witness List, p. 1.

The testimony of these 12 witnesses must be excluded from the upcoming trial because these witnesses cannot offer any relevant testimony. A basic evidentiary tenet is the requirement for relevancy: "[E]vidence which is not relevant is not admissible." Fed. R. Evid. 403. To be relevant evidence must tend to make a consequential fact more or less probable. See Fed. R. Evid. 401; see also Magnivision, Inc. v. Bonneau, Co., 115 F.3d 956, 961 (Fed. Cir. 1997). Here, the ultimate issues at trial are whether NAS Oceana aircraft have directly overflown the test plaintiff properties at low altitudes to the point of substantially interfering with the use and enjoyment of those properties, and have diminished the value of the test plaintiff properties. These 12 witnesses cannot offer testimony regarding either issue. Indeed, many of the witnesses admitted during their depositions that they were completely unfamiliar with the test plaintiffs or their properties. See e.g. Exhibit C, Deposition Testimony of Karen Lynn Green and Deposition Testimony of Charles Nash. Therefore, these witnesses cannot have any personal knowledge regarding jet operations at the test plaintiffs' properties, or potential just compensation. Accordingly, these witnesses must be excluded from the upcoming trial because their testimony cannot "tend to make a consequential fact more or less probable."

Even assuming any of these 12 witnesses have knowledge of jet operations at the test plaintiffs' properties, their testimony would be unnecessary, redundant, and excessive of the test plaintiffs' testimony. Under FRE 403, evidence that is otherwise relevant

"may be excluded . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Here, plaintiffs' description of the testimony for the witnesses at issue is nearly identical. The repetitive and cumulative testimony of these witnesses will waste the parties' time and resources and hinder judicial economy. Therefore, these witnesses should be excluded from the upcoming trial.

**B. Federal case law prohibits plaintiffs from calling Robert J. Smith as a witness at trial**

Plaintiffs have no reasonable basis to call Robert J. Smith, the lead Department of the Navy attorney handling this case, as a witness at the upcoming trial in this matter to testify regarding "the 2002 revision to the noise contours drafted for the environmental impact statement." Plts. Witness List, p. 4. If plaintiffs were seeking to depose Mr. Smith, plaintiffs would be required to satisfy three criteria: that (1) "no other means exist to obtain the information other than to depose" the attorney; (2) "the information sought is relevant and non-privileged; and (3) "the information is crucial to the preparation" of the case. Sparton Corp. v. United States, 44 Fed.Cl. 557, 563 (1999). Plaintiffs in the present case seek the extraordinary measure of having one of the government attorneys trying this case—the lead Navy attorney who has been representing the Navy in this lawsuit since its inception—to testify at trial. At a minimum, therefore, plaintiffs should be required to satisfy the above criteria to demonstrate that the Court should not strike Robert J. Smith from their witness list and exclude his testimony at trial.

Plaintiffs seek the testimony of Mr. Smith as a witness to testify on a matter for which plaintiffs have conducted numerous depositions. Moreover, at least six of these deponents (Capt (ret) Mark Benson, Capt Mark Clemente, Micah Downing, Geral Long, Commander Todd Pollard, and Commander James Webb)are listed on plaintiffs' witness

list. Accordingly, plaintiffs can hardly claim that the testimony they seek from Robert J. Smith cannot be obtained through the testimony of one of these other witnesses. Importantly, even if plaintiffs could establish Mr. Smith's testimony is relevant, not privileged, and crucial to their case, Mr. Smith's testimony would be redundant and cumulative of the testimony of the other witnesses.

Finally, plaintiffs failed to comply with 32 C.F.R. Part 725, also known as the Touhy Regulation, which governs the release of official information by Navy personnel in litigation. See 32 C.F.R. Part 725. Plaintiffs were informed on August 18, 2006, that, to evaluate their request to seek Mr. Smith's testimony at trial, plaintiffs must comply with the regulation by providing defendant with a formal request for Mr. Smith's trial and possible deposition testimony. See Exhibit D. Specifically, the regulation requires a party must provide a description of the testimony sought and a statement of relevance. See Exhibit D. Plaintiffs failed to provide defendant any of the required information.

For these reasons, Robert Smith must be stricken from plaintiffs' witness list and his testimony must be excluded at trial.

**C. Over 50 of plaintiffs' exhibits must be excluded because they do not contain any information relevant to the issues at trial**

Like the witness testimony discussed above, the following categories of plaintiffs' exhibits must be excluded from the upcoming trial because they are not relevant to plaintiffs' takings claim or the issue of just compensation: History of jet accidents, constraints on pilot training, previously acquired easements, newspaper articles, sound attenuation and compensation for the loss of use and enjoyment of one's property, and expert reports. As noted, the ultimate issues at trial are whether NAS Oceana jets caused a taking of plaintiffs' property, and if so, the amount of compensation

due. These categories of exhibits do not relate to liability or just compensation. Specifically, the exhibits contain no relevant information regarding overflights at the test plaintiffs' properties. For example, PT 536 titled "[M]emo from LCDR Matt Cartier to Daniel Cecchini regarding history of Class A mishaps in and around NAS Oceana" and PT 580 titled, "[S]tatement of Admiral William Fallon before the House Committee on Government Reform on Constraints on Military Training," contain no information relevant to overflights at the test plaintiffs' properties or market values of the test plaintiffs' properties. Likewise, documents referencing defendant's previous acquisition of easements near other military bases and noise complaints from property owners other than the test plaintiffs are not relevant to whether a taking occurred at the test plaintiffs' properties. Moreover, the newspaper articles listed in plaintiffs' exhibit list are clearly hearsay and should be excluded on this ground. In addition, videos and photographs taken by Herk Stokely and Thomas Askins were not taken at (or even near) the test plaintiffs' properties. Therefore, the videos are not relevant to overflights at the test plaintiffs' properties and must be excluded.

Exhibits and testimony regarding possible sound attenuation or mitigation measures (e.g., additional insulation, upgraded windows) and compensation specifically for the loss of use and enjoyment of one's property (as opposed to impact on fair market value) are also not relevant. These types of damages are not valid forms of compensation under the Fifth Amendment and must be excluded. Here, plaintiffs seek just compensation under the Fifth Amendment for the property interest that they allege was taken by the United States on July 1, 1999. The meaning of just compensation in this case is a matter of fundamental constitutional interpretation, and is resolved with

reference to federal law. See United States v. Miller, 317 U.S. 369, 380 (1943), reh'g denied, 318 U.S. 798 (1943). As part of their case-in-chief regarding liability, plaintiffs must prove that there was a significant diminution in property value. See Deft. Pretrial Brief, p. 40?. This factor is measured as the difference between the fair market property value before the taking and after the taking. Aaron v. United States, 340 F.2d 655, 659-60 (Ct. Cl. 1964). Similarly, it is well-established that the measure of just compensation in the case of a taking of a portion of a parcel of real property is the difference in the fair market value of the property before and after the taking. See United States v. Virginia Elec. Co., 365 U.S. 624, 632 (1961); Cloverport Sand & Gravel Co., Inc. v. United States, 6 Cl. Ct. 178, 188 (1984). Fair market value is defined as:

> . . . the amount in cash, or on terms reasonably equivalent to cash, for which in all probability the property would be sold by a knowledgeable owner willing but not obligated to sell to a knowledgeable purchaser who desired but is not obligated to buy.

Yellow Book at 29-34 (Def.'s Tr. Ex. 19); accord Miller, 317 U.S. at 374; Snowbank Enter., Inc. v. United States, 6 Cl. Ct. 476, 484 (1984). Sound attenuation or mitigation costs are clearly not proper components of this calculation and are not relevant to the fair market value inquiry. At most, plaintiffs' demands for these types of damages might arguably be sought under a tort theory of recovery, which plaintiff has not asserted and over which this Court has no jurisdiction. See 28 U.S.C. §1491 (1988); see also Deft. Pretrial Brief, p. 40? (or MSJ). Accordingly, exhibits and testimony regarding sound attenuation or mitigation and loss of use and enjoyment of property must be excluded.

Plaintiffs have also listed exhibits relating to their expert witnesses' testimony. Defendant has proposed on multiple occasions that the parties stipulate that each expert report be moved into evidence without objection, unless the opposing party has moved to

exclude an expert report based on the expert's qualification or Daubert, so as to expedite the trial presentation and assist the Court in evaluating the experts' opinions during deliberations. Plaintiffs refuse to enter into this type of agreement.[3] Six of these exhibits – PT 805-806, PT 829, PT 551, and PT 853-854 -- are comprised of Dr. Jon Nelson's expert reports and supporting documents. On September 20, 2006, defendant moved to exclude Dr. Nelson's expert reports based on FRE 702 and Daubert. If this motion succeeds, the remaining three exhibits (the exhibits to Dr. Nelson's reports) should be excluded.

**D. ISIS does not accurately replicate the noise environment at test plaintiffs' properties and must be excluded**

Plaintiffs' exhibit, PT842, "[A]ffidavit signed by David Dubbink regarding the Interactive Sound Information System," should be stricken, and plaintiffs should not be allowed to demonstrate the Interactive Sound Information System referenced in PT 842. The ISIS system utilizes digital sound recordings, graphics, and equipment to demonstrate different types of noise. While the system may be useful for general demonstrative purposes as a community educational tool, the ISIS system was not intended, nor does it accurately replicate the noise caused by NAS Oceana jets at any particular test plaintiff property, and is therefore irrelevant to the property-specific liability determination required in cases like this. Therefore, an ISIS demonstration would be misleading and its prejudicial effect would substantially outweigh any probative value. See Fed. R. Evid. 403 (evidence that is otherwise relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the [trier of fact] . . ."). Moreover, as

[3] Plaintiffs stated intent to object to defendant's expert reports on hearsay grounds has forced defendant to object to plaintiffs' expert reports as well.

stated above, a better alternative exists. Accordingly, plaintiffs should not be allowed to demonstrate the ISIS system at trial. Instead, the parties and the Court could make a site visit to the test plaintiffs' properties when aircraft are operating on the flight paths most relevant to their homes.

**CONCLUSION**

For the foregoing reasons, defendant respectfully requests the Court exclude the witnesses listed in Exhibit A, exclude the testimony of Robert Smith, exclude the exhibits listed in Exhibit B from the upcoming trial, and preclude plaintiffs from demonstrating sound and/or video recordings, including but not limited to the ISIS system, at trial.

Dated: October 2, 2006

Respectfully Submitted,

s//Steven D. Bryant
STEVEN D. BRYANT
KELLE S. ACOCK
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Email: steven.bryant@usdoj.gov
Voice: (202) 305-0424
Fax: (202) 305-0267

Of Counsel:

Robert J. Smith
Mary Raivel
Navy Litigation Office
Washington Navy Yard, D.C. 20374

CDR Dominick Yacono
JAGC, USN
Commander Navy region
Mid-Atlantic, Code (00LE)
Norfolk, VA 23511-2737