**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

(E-Filed: October 11, 2006)

| | | |
|---|---|---|
| CAROLE AND ROBERT TESTWUIDE, et. al., | ) | |
| Plaintiffs, | ) | No. 01-201 L |
| | ) | Honorable Victor J. Wolski |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORTS AND TESTIMONY OF JON P. NELSON**

**INTRODUCTION**

As defendant explained in its opening brief, the expert reports and testimony of plaintiff's economist, Dr. Jon P. Nelson, should be excluded because they do not comply with FRE 702 and federal case law. Dr. Nelson's expert reports contain irrelevant and unreliable conclusions regarding the relationship between jet noise from operations at Naval Air Station ("NAS") Oceana and Naval Auxiliary Landing Field Fentress ("NALF") and property values in communities surrounding those two bases. In particular, defendant demonstrated that Dr. Nelson's reports fail to satisfy FRE 702 and Daubert because of their reliance on insufficient or irrelevant facts or data, and because his evaluation is not reliable or irrelevant to the upcoming trial. Finally, defendant established that Dr. Nelson, according to his own testimony, is not qualified to offer an

opinion on the impacts of aircraft noise on the health and welfare of the residents of Virginia Beach, Virginia.[1]

FRE 702 requires expert witness testimony to meet the following criteria:

> 1. the testimony is based on sufficient facts or data,
> 2. the testimony is the product of reliable principles and methods,
> 3. and the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court stated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) that FRE 702 "demands that a trial judge . . . ensure that the proffered testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, is non-helpful." Id. at 591 (citations omitted). The Supreme Court later stated: "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Electric v. Joiner, 522 U.S. 136, 146 (1997).

## ARGUMENT

### A. Dr. Nelson's reports and testimony rely upon factual support and are based on principles and methodology that are not reliable or relevant to this case

Defendant challenges the reliability and relevance of Dr. Nelson's reports and his testimony because they fail to address what is the relevant issue, namely, whether the change in military jet noise resulting from the relocation of the F/A-18 C/D aircraft from

[1] Plaintiffs do not dispute the fact that Dr. Nelson is unqualified to offer an opinion on the impacts of aircraft noise on the health and welfare of property owners. Plaintiffs aver that Dr. Nelson "offers no opinions on the relationship between noise and health" and refers to "reputable sources" that discuss this issue "to provide a context for his findings." Opposition to Defendant's Motion at 12 n 12. Given this concession, Dr. Nelson's discussion of the impact of aircraft noise on the health and welfare of property owners should be excluded.

Cecil Field, Florida to NAS Oceana caused a diminution of residential property values in Virginia Beach after the alleged July 1999 taking.[2]

Dr. Nelson's meta-analysis and September 30, 2005 expert report consisted of averaging 29 studies conducted at various times from 1967 through 1995 of 23 civilian airports throughout the United States and Canada. Dr. Nelson extracted the noise depreciation index ("NDI") for residential properties surrounding the 23 different civilian airports identified in each of the studies. He summarized the NDIs in Table 3 of his September 2005 report. See Exhibit A attached to Defendant's Motion in Limine to Exclude the Expert Reports and Testimony of John T. Nelson ("Def's Motion") at 17.

These studies indicate that there is a "noise discount" for residential properties located in close proximity to the civilian airports studied. Amazingly, there is not even consistency among the reports about the appropriate NDI for a given airport. For example, Dr. Nelson cites two studies evaluating residential properties in 1970 surrounding the Dallas-Fort Worth International Airport. Id. at 17. The Blaylock study identifies a -.99% NDI in contrast to the DeVany study, which reflects a -.80% NDI. Id. Thus, two studies of the same airport evaluating sales data from the same year produce different NDIs. Likewise, two studies of the Reno airport have inconsistent NDIs of -.28% and -.37%. Id. Two 1993 Booz-Allen & Hamilton studies of JFK and LaGuardia airports in New York City have widely contrasting NDIs of -1.20% and -.67% illustrating the significant differences in noise discounts for neighborhoods separated by only a few miles. Id. Dr. Nelson averages these varying NDIs to come up with a "one-

[2] Just compensation for purposes of an overflight taking is measured as the difference between the fair market property value before and after the alleged taking. A. J. Hodges Industries, Inc. v. United States, 355 F.2d 592, 598 (1966).

size fits all NDI." The very fact that the NDIs from these airports differ, in some cases by wide margins, demonstrates the inherent unreliability in attempting to identify a one-size fits all NDI.

Moreover, none of these studies evaluates the impact of a military airfield on residential property values. All of the 29 studies addressed aircraft noise only from civilian, commercial airports, which Dr. Nelson confirmed during his deposition. See Def's Motion at 8.

Additionally, none of these studies examined property values in Virginia Beach, and no study identified a NDI for Virginia Beach. The studies examined airports located in major cities across the United States as well as some outside the U.S. The closest airports to Virginia Beach were Washington, DC, Baltimore, and Atlanta. The NDIs for these airports were inconsistent as well, ranging from -.64% to -1.49%. See Exhibit A attached to Def's Motion at 17.

Finally, and most importantly, the studies Dr. Nelson relies on in his reports and testimony do not examine the relationship, if any, between a change in aircraft noise and property values. Specifically, no study examined a possible change, either positive or negative, in the value of property purchased at a discount due to the presence of aircraft noise that subsequently experienced an increase in noise.[3] See Exhibit D attached to Def's Motion at 182. In other words, even assuming, arguendo, the various studies Dr. Nelson relies on accurately identified the noise discount in a given year for residential properties surrounding the 23 different civilian airports studied, the studies do not

[3] In his rebuttal report, Dr. Nelson noted that he was aware of two unpublished studies that examined "airport announcement effects." See Exhibit C attached to Def's Motion at 12, fn. 11. One study involved an announcement closing an airport and opening a new airport in a different location. The second study involved an existing airport announcing it would become a FedEx hub.

evaluate what impact, if any, an increase in aircraft noise would have had on those already discounted properties resulting from an airport expansion or some other event that would have increased the previously existing noise impacts on the properties. Consequently, none of these studies − individually or collectively − is relevant or reliable evidence as to whether the change in military aircraft noise resulting from the relocation of the FA-18 C/D aircraft from Cecil Field, Florida to NAS Oceana negatively impacted residential property values in Virginia Beach.[4]

**B. Exclusion of Dr. Nelson's reports and testimony would not contravene, but rather would be consistent with the plain language of Daubert, FRE 702, and related case law**

As discussed *supra*, Dr. Nelson's reports and testimony are neither reliable nor relevant to this case. FRE 702 requires that an expert witness "appl[y] the principles and methods reliably to the facts of the case." The Supreme Court in Daubert stated that FRE 702 "demands that a trial judge . . . ensure that the proffered testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Plaintiffs' assertions that this Court has declined to exclude expert testimony purportedly based on "unsound methodology or unsupported facts"[5] are inapposite. Defendant does not argue that Nelson's report or testimony derive from methodology that is unsound in and of itself, nor that the facts he relies upon are unsupported. Rather, defendant questions the relevance and reliability of the methodology and facts relied upon by Dr. Nelson with regard to the specific property value issue in this case. Dr. Nelson has utterly failed to demonstrate a "'reliable foundation in principles and method' for the

[4] For the same reason, plaintiffs' assertion that Dr. Nelson's meta-analysis of the studies he cites "provides 'more reliable indication of the central tendency of a set of empirical results'" and is "now 'widely applied in the physical sciences and other areas of social sciences'" (Plaintiffs' Mem. at 2-3), is irrelevant.

[5] See Plaintiffs' Mem. at 8, citing C & G Enters v. U.S., 55 Fed. Cl. 414, 428, 429 (2003))

sponsored opinion"[6] regarding whether the realignment of the the FA-18 C/D aircraft from Cecil Field, Florida to NAS Oceana diminished property residential property values.

**C. Irrelevant and unreliable evidence should be eliminated, rather than being admitted to trial**

Plaintiffs assert that the "erroneous doubts" raised by defendants regarding Dr. Nelson's reports and testimony should be resolved at trial, not by excluding such evidence prior to trial. As demonstrated *supra*, however, Dr. Nelson's testimony and reports are unreliable and irrelevant in the context of this case, therefore should be excluded prior to trial. . "This court . . . has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence." Baskett v. United States, 2 Cl.Ct. 356, 359-60 (citations omitted). By exercising this authority to exclude Dr. Nelson's testimony and reports, this court also would fulfill its role as a "gatekeeper" to ensure that proffered expert testimony "both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 589, 597. Plaintiffs ignore this authority and rely on Micro Chemical, Inc. v. Lextron, Inc., 317 F.3d 1387 (Fed. Cir. 2003) for the proposition that where the "parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." This reliance is misplaced; plaintiffs' and defendant's experts do not rely on "conflicting" sets of facts. Rather, plaintiffs' expert erroneously relies on analyses and facts that are irrelevant for the purpose of determining whether the realignment of the FA-18 C/D aircraft to NAS Oceana negatively impacted residential property values. Because Dr. Nelson's reports and testimony are not "relevant to the task at hand," this Court should exclude them from trial.

[6] Plaintiffs' Mem.. at 8.

## CONCLUSION

For the foregoing reasons, as well as those detailed in Defendant's Motion in Limine to Exclude the Expert Reports and Testimony of John T. Nelson, Dr. Nelson's testimony and reports are irrelevant and unreliable concerning whether the realignment of the FA-18 C/Ds to NAS Oceana adversely impacted property values in Virginia Beach, Virginia. Accordingly, defendant respectfully requests that this Court grant defendant's motion.

Dated this 11th day of October, 2006.

Respectfully Submitted,

/s/ Steven D. Bryant
STEVEN D. BRYANT
KELLE S. ACOCK
United States Department of Justice
Environment and Natural Resources
Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Email: steven.bryant@usdoj.gov
Voice: (202) 305-0424
Fax: (202) 305-0267

Of Counsel:
Robert J. Smith
Mary Raivel
Navy Litigation Office
720 Kennon Street
Washington Navy Yard, D.C. 20374

CDR Dominick Yacono
JAGC, USN
Commander Navy region
Mid-Atlantic, Code (00LE)

1510 Gilbert Street
Norfolk, VA 23511-2737