**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 01-201L |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Victor J. Wolski |
| Defendant. | ) | |
| | ) | |

**DEFENDANT UNITED STATES' MOTION TO WITHHOLD REVIEW OF PLAINTIFFS' STATUS REPORT, TO ORDER PLAINTIFFS NOT TO DISCLOSE TERMS OF SETTLEMENT DISCUSSIONS AND TO REFER THE SETTLEMENT NEGOTIATIONS TO A MEDIATION JUDGE**

Pursuant to Rule 7(b) of the Rules of the Court of Federal Claims, the United States moves this Court to order plaintiffs not to disclose details of the parties' settlement negotiations, including proposed terms of settlement, and to refer the currently stalemated settlement negotiations to a mediation judge. The parties are required to submit a joint status report ("JSR") today, February 2, 2007, regarding the progress of the settlement process. Plaintiffs' counsel provided counsel for defendant with a draft status report that reveals proposed terms of the settlement. These terms are confidential settlement communications protected by case law as well as Federal Rule of Evidence ("Fed. R. Evid.") 408. Plaintiffs' counsel refused defendant's counsel requests to omit references to the tentative terms in their status report. Defendant respectfully moves that the Court withhold review of the contents of plaintiffs' status report and any attachments, pending the Court's ruling on this motion.

**Background**

On October 17, 2006 the parties reached conceptual agreement on the structure of a settlement agreement resolving all claims raised in the consolidated cases. Counsel for the parties understood that material terms still needed to be negotiated and that once agreement on all terms was reached, final approval by the appropriate authorities at the Department of Justice and Department of Navy would be necessary. On that same date, the parties contacted the Court to inform the Court of these events. At the parties' request, the Court stayed trial proceedings that were scheduled to begin on October 19, 2006.

Regrettably, the parties have not been able to resolve their differences on all material terms needed for an agreement. The parties have met to attempt to negotiate their differences as recently as January 26, 2007, and have exchanged offers over the phone since. Unfortunately, the parties have been unable to resolve their differences, resulting in an impasse in settlement discussions

Pursuant to this Court's order, the parties were required to submit a JSR concerning the tentative settlement on January 30, 2007. On January 29, 2007, plaintiffs' counsel indicated by e-mail that he intended to file a status report that was attached to the e-mail (see Exhibit A). Plaintiffs' draft report identified specific proposed terms, including the proposed overall monetary figure and various other proposed terms that had been negotiated. Plaintiffs have identified no principled justification for divulging the contents of these confidential settlement negotiations. By phone and in writing, defendant's counsel informed plaintiffs' counsel that these terms are confidential settlement communications that may not be disclosed to the Court, and therefore, cannot

be included in the status report (see Exhibit B). The parties sought and were granted a three-day extension until today, February 2, 2007, regarding the JSR to confer further in an effort to resolve their differences concerning the tentative settlement. Regrettably, plaintiffs continue to refuse to acknowledge previously agreed upon material terms of the tentative agreement and the negotiations have once again stalemated.

Despite the inability of the parties to resolve their differences up to this time, defendant remains willing to pursue resolution of the consolidated cases through settlement. To that end, defendant requests that the settlement discussions be referred to a mediation judge to assist the parties in consummating a settlement.

## Argument

It is well established that settlement communications are confidential under both case law and Fed. R. Evid. 408. See, e.g., Palmieri v. New York, 779 F.2d 861, 865 (2d Cir.1985) (citing In re Franklin Nat'l Bank, 92 F.R.D. 468, 472 (E.D.N.Y.1981)) (stating that "[s]ecrecy of settlement terms … is a well-established American litigation practice"); see also In re the Cincinnati Enquirer, 94 F.3d 198, 199 (6th Cir.1996) (press denied access to settlement proceedings because the need for privacy in settlement talks outweighed any First Amendment right of access to the proceedings). Rule 408 prohibits the use of settlement communications since "[they are] deemed to be an indication only of a desire for peace," and are not suggestive of liability. First Nationwide Bank v. United States, 56 Fed. Cl. 438, 444 (2003) (quoting Sternberger v. United States, 185 Ct. Cl. 528, 538 (1968); accord Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989); see also Wetsel-Oviatt Lumber Co. v. United States, 43 Fed. Cl. 748, 752 (1999). The Rule recognizes the concern that disclosure may be misconstrued

as a concession of liability despite the fact that it only addresses a party's desire to terminate litigation. Wayne D. Brazil, Protecting the Confidentiality of Settlement Negotiations, 39 Hastings L.J. 955, 958 (1988).

The second justification for maintaining the confidentiality of settlement communications is the strong public interest in facilitating the settlement of disputes:

> The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party. Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative quid pro quos, and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F3d. 976, 980 (6th Cir. 2003); See also Abundis v. United States, 15 Cl. Ct. 619 (1988); Manko. v. United States, 87 F.3d 50, 54 (2d Cir. 1996).

Courts have recognized a settlement privilege in the context of discovery as well. Relying on the "well-established privilege relating to settlement discussions", the District Court for the Northern District of Ohio denied a defendant's motion to compel discovery of settlement negotiations between the plaintiff and a separate defendant. In Allen Cty. v. Reilly Indus., Inc., 197 F.R.D. 352, 353 (N.D.Ohio 2000) (citing Cook v. Yellow Freight System, Inc., 132 F.R.D. 548 (E.D.Cal.1990), overruled on other grounds by Jaffee v. Redmond, 518 U.S. 1 (1996).

Turning to the instant case, should settlement efforts ultimately prove unsuccessful, the test case would proceed to trial. As noted above, among the settlement terms included in the draft status report is the overall monetary figure. The dollar figure is completely irrelevant to any future proceedings before this Court. The only basis for which plaintiffs would include this dollar figure in the report is to improperly sway the Court before any evidence is presented, assuming the test case proceeds to trial.

Review by the court of the terms of the tentative settlement will serve no useful purpose and runs the risk of improperly affecting the court's consideration of the merits of the case as well as the damages to be awarded should the court find the government liable. Given the potential prejudice, the lack of relevance, and the strong public policy to facilitate compromise, the tentative settlement agreement terms in this case must remain confidential.

## Conclusion

For the foregoing reasons, defendant respectfully requests this Court grant defendant's motion to order plaintiffs not to disclose settlement negotiations, including any of the proposed terms of the tentative settlement, or any other confidential settlement communications in their status report or any other filings with the Court, and to refer the stalemated settlement negotiations to a mediation judge. Defendant further moves that the Court withhold review of the contents of plaintiffs' status report and any attachments, pending the Court's ruling on this motion.

Dated: February 2, 2007

Respectfully submitted,

/s/ Steven D. Bryant
Steven D. Bryant

Kelle S. Acock
Environmental & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3205
Washington, D.C. 20004
Counsel for Defendants
202-305-0424

Of Counsel:
Robert J. Smith
Mary Raivel
Navy Litigation Office
720 Kennon Street
Washington Navy Yard, D.C. 20374

CDR Dominick Yacono
JAGC, USN
Commander Navy region
Mid-Atlantic, Code (00LE)
1510 Gilbert Street
Norfolk, VA 23511-2737

**Bryant, Steven (ENRD)**

| | |
|---|---|
| **From:** | Kieron Quinn [kfquinn@quinnlaw.com] |
| **Sent:** | Monday, January 29, 2007 4:59 PM |
| **To:** | Bryant, Steven (ENRD) |
| **Cc:** | Acock, Kelle (ENRD); 'Bob Smith'; Martin Wolf; Jack Ferrebee |
| **Subject:** | RE: Status report |
| **Attachments:** | 2007 01 30 PL Rpt to Judge Wolski on Settlement.pdf |

Steve

I attach a draft of our report. My expectation is that the Government is not keen to make this part of a joint report so I suggested we might file separately. We will undoubtedly amend the attached before it is filed.

Kieron

---

**From:** Bryant, Steven (ENRD) [mailto:Steven.Bryant@usdoj.gov]
**Sent:** Monday, January 29, 2007 4:42 PM
**To:** kfquinn@quinnlaw.com
**Cc:** Acock, Kelle (ENRD); Bob Smith
**Subject:** RE: Status report

Kieron,

I expected that we would file a Joint Status Report tomorrow in accordance with the Court's order. If so, please send me what you have and to the extent necessary, I will add comments for defendant. Let me know if you are unwilling to file a JSR and intend to file a unilateral status report instead.

Steve

---

**From:** Kieron Quinn [mailto:kfquinn@quinnlaw.com]
**Sent:** Monday, January 29, 2007 4:14 PM
**To:** Bryant, Steven (ENRD)
**Cc:** Acock, Kelle (ENRD); Bob Smith
**Subject:** Status report

I will be rerady in a minute or two to exchange Plaintiffs' status report. I expect that we will file it separately.

Please advise when you are ready.

Kieron

Kieron Quinn

Quinn, Gordon & Wolf, Chtd.

102 West Pennsylvania Ave.

Baltimore, MD 21204

410 825 2300

**U.S. Department of Justice**

Environment and Natural Resources Division

SDB
90-1-23-10297

*Natural Resources Section*
*P.O. Box 663*
*Washington, DC 20044-0663*

*Telephone (202) 305-0424*
*Facsimile (202) 305-0267*

January 29, 2007

**Via E-mail**

Marty Wolf, Esquire
Quinn, Gordon & Wolf
102 West Pennsylvania Avenue
Suite 402
Baltimore, Maryland 21204

Re: **Testwuide v. United States, 01-201**

Dear Marty:

This responds to plaintiffs' draft status report regarding settlement Kieron e-mailed to me this evening at 4:59 P.M. As I informed you during our subsequent phone call, the draft status report reveals terms of the tentative settlement agreement, which are confidential communications protected by Federal Rules of Evidence 408. I reiterate my demand that you remove these references, as well as any attached exhibits identifying the terms. Be advised that I will move the court to strike the report and any attached exhibits if you do not agree in writing by 10:00 A.M. tomorrow morning (January 30) to amend the status report so that it does not reveal terms of the tentative agreement or any other confidential settlement communications. In addition, should you disclose such communications to the court, we will seek all appropriate relief, including, if necessary, the recusal of Judge Wolski.

Finally, as we previously indicated, your insistence on divulging confidential settlement communications will result in the cessation of our ongoing settlement discussions, and will be seen by the United States as an effort by plaintiffs' counsel to undermine any chance of settlement in this case.

Sincerely,

s// Steven D. Bryant
Steven D. Bryant