**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CAROL AND ROBERT TESTWUIDE, *et al*., *Plaintiffs*, v. THE UNITED STATES OF AMERICA, *Defendant*. | No.: 01-201L (Honorable Victor J. Wolski) |

**STATUS REPORT BY PLAINTIFFS**

Plaintiffs regret to advise the Court that the Government has demanded material alterations to the settlement agreed to on October 17, 2006 the effect of which, and probably the intention of which, is to renege on the settlement.

Counsel for the parties entered into a conditional settlement agreement on October 17, 2006 which contained all the essential and material terms of the agreement. Immediately following that agreement the Government's counsel, Steven Bryant, advised Plaintiffs that his supervisor in the Environmental and Natural Resources Division had approved the settlement and that he was awaiting only the approval of the Assistant Attorney General in charge of that division which approval was "pro forma" and a "99 percent certainty". Following that discussion, counsel for both sides called this Court, announced the agreement, and suggested that the trial be postponed. The Court agreed and also scheduled a status report to the Court in approximately 90 days to give Plaintiffs' Counsel time to secure approval by the Plaintiffs.

The settlement was for a lump sum payment by the Defendant of $38 million which would settle all of the pending cases. A summary of the terms are set out in Exhibit 1 which was

emailed by Plaintiffs' Counsel to the Defendant on October 18, 2006 and again on October 19, 2006. No objection was ever made to those terms until December 7, 2006.

The "conditional" nature of the settlement was due to the fact that Plaintiffs' Counsel was required to accomplish three conditions before the settlement was final. Following October 17, 2006, Plaintiffs accomplished all of the conditions required by the agreement:

1. By October 19, 2006, Plaintiffs' Counsel secured the agreement of each of the twelve Test Case Plaintiffs to accept specific sums (calculated as described below) in settlement of their individual claims and immediately informed the Government. (Exhibit 2)
2. Within the 90 days provided in the Court's schedule, Plaintiffs' Counsel expended more than 1400 hours and substantial out of pocket sums and secured the acceptance of the settlement:
    a. by more than 96% of <u>all</u> Plaintiffs; and
    b. by more than 98% of those Plaintiffs whose properties were in a high noise zone.

Each accepting Plaintiff agreed to a specific settlement figure recommended by Plaintiffs' Counsel for each property calculated by using (1) the $38 million lump sum; (2) each property's 2000 tax assessment; and (3) each property's noise zone.

On December 7, 2006 – when Plaintiffs' Counsel were close to securing the required percentages – the Government made a completely new demand which would alter the terms and nature of the settlement. The new demand by the Government (Exhibit 3) bore little relationship to the agreement of October 17, 2006. The part of the new demand that virtually guaranteed that the settlement would be vitiated was that those Plaintiffs who had sold their homes after the date

of taking (July 1, 1999) should not be paid the specific settlement figure each had accepted but rather should only receive an unspecified smaller portion of that figure thus completely changing the $38 million settlement figure. The ostensible rationale for the reduction demanded was the known and obvious fact that Plaintiffs who had sold their properties after the date of taking could not presently convey an easement which included future aircraft or increased future noise. Counsel for both parties had discussed on at least two occasions prior to the October 17 settlement the fact that only Plaintiffs who still owned the property could legally convey an easement. Plaintiffs who had sold their property after the date of taking could only give a dismissal with prejudice and a release reflecting that the Government had taken an easement on July 1, 1999. Exactly that approach had been taken by the parties in *Argent v. United States* 124, F.3d 1277 (Fed. Cir. 1997) an avigation takings case which settled after the Court of Appeals decided the case in favor of the Plaintiffs. In making its December 7, 2006 demand for an alteration of the agreement the Government affected to be surprised that a substantial percentage of Plaintiffs had sold their homes in the more than seven years since July 1, 1999.

Plaintiffs intend to file a Motion to Enforce the Settlement accompanied by extensive affidavits detailing the course of negotiations and the communication between the parties. Plaintiffs request that a factual hearing be scheduled on the terms and enforceability of the October 17, 2006 settlement. Plaintiffs expect that at that hearing witnesses, including counsel for Plaintiffs and Defendants, and several executives (or former executives) of the Department of Justice and the Navy, will testify and that the pertinent documents will be introduced. Plaintiffs may also request a short period of limited discovery.

Plaintiffs also request that the Court immediately issue its memorandum denying the Government's Motion for Summary Judgment which was withheld by the Court at the request of the Government on October 17, 2006.

Although there is not a single integrated document signed by both parties, Plaintiffs assert and will establish a substantial documentary basis for the essential terms as well as supporting testimonial evidence. *Tiburzi v. Dept. of Justice*, 269 F.3d 1346, 1348 (Fed. Cir. 2001). An evidentiary hearing is the best and indeed the only fair way to resolve the dispute over the settlement. *Wang Labs, Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355 (Fed.Cir. 1992); *Milner v. Norfolk & Western Ry Co.*, 643 F.2d 1005, 1009 (4th Cir 1981)*; Callie v. Near*, 829 F.2d 888, 890-01 (9th Cir. 1987).

At the Government's request Plaintiffs' Counsel forwarded an earlier draft of the present Status Report to the Government. In response the Government took issue with placing the terms of the October settlement before the Court pursuant to Fed. R. Evid. 408 and announced that it will or may seek the recusal of this Court. (Exhibit 4) Plaintiffs believe that introducing the terms of the settlement which they intend to enforce (and the circumstances surrounding the settlement) is not only necessary but is the only rational way to proceed. In addition, Plaintiffs believe that Rule 408, as a rule of evidence, has absolutely no bearing on this Court's ability or duty to sit on this case and that the Government's position is supported neither by precedent nor common sense. Nevertheless, Plaintiffs feel compelled to advise the Court of the Government's intentions in this respect.

Respectfully submitted,

/s/ Jack E. Ferrebee

Jack E. Ferrebee
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
jferrebee@hoflaw.com

Counsel of Record for Plaintiffs

Of Counsel:

Kieron F. Quinn
Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
102 W. Pennsylvania Avenue
Suite 402
Towson, Maryland 21204
(410) 825-2300
kfquinn@quinnlaw.com
mwolf@quinnlaw.com

Charles R. Hofheimer
Kristen D. Hofheimer
Hofheimer/Ferrebee, P.C.
1060 Laskin Road, Suite 12-B
Virginia Beach, Virginia 23451
(757) 425-5200
chofheimer@hoflaw.com
khofheimer@hoflaw.com

Thomas Shuttleworth
Stephen C. Swain
Lawrence Woodward
Charles B. Lustig
Shuttleworth, Ruloff, Giordano & Swain
4525 South Blvd., Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000
tshuttleworth@srgslaw.com
sswain@srgslaw.com
lwoodward@srgslaw.com
clustig@srgslaw.com

From: "Martin Wolf" <mwolf@quinnlaw.com>
To: <Steven.Bryant@usdoj.gov>
Cc: <robert.j.smith2@navy.mil>,
<Kelle.Acock@usdoj.gov>,
<dominick.yacono@navy.mil>,
"'Kieron Quinn'" <kfquinn@quinnlaw.com>,
"'Jack E. Ferrebee'" <jferrebee@hoflaw.com>,
"'Charles Lustig'" <clustig@srgslaw.com>,
"'Tom Ferrebee'" <tferrebee@hoflaw.com>,
"'Margaret Quinn'" <mquinn@QuinnLaw.com>
Subject: Terms of Settlement
Date: Wed, 18 Oct 2006 14:38:26 -0400
X-Mailer: Microsoft Office Outlook, Build 11.0.6353
Thread-Index: Acby5JjzAcDfgYVAR5qhB0t+a6fWWA==
X-OriginalArrivalTime: 18 Oct 2006 18:37:31.0546 (UTC)
FILETIME=[788AB7A0:01C6F2E4]

Steve,

Attached is an outline of the terms of settlement that we discussed. If these terms are in accordance with your recollection, please send a confirmation back to me at your earliest opportunity. Also, please notify me as soon as the Assistant Attorney General of your division has approved the settlement offer. I will likewise advise you as we progress in obtaining acceptance by our plaintiffs. We have been able to contact 10 test case plaintiffs and all have accepted. We have left messages for the remaining two and anticipate favorable responses at anytime.

Marty

OUTLINE OF SETTLEMENT TERMS.pdf

**OUTLINE OF SETTLEMENT TERMS**

- Cash Payment: $38 million
- Scope of Easement: Strike/Fighter Aircraft generating noise up to and including SEL levels of the F/A-18 E/F plus 3 dB; gross annual operations based on historical highs with each flight track based on historical breakdown by percentage of use; minimum altitude of flights in accordance with existing flight parameters at NAS Oceana and NALF Fentress (i.e. Oceana FCLP @ 1,000 ft.; Fentress FCLP @ 800 ft.; standard approach and takeoff paths)
- Acceptance Levels: Terms accepted by 96% of plaintiffs with 98% of plaintiffs located in >75 dB zone as established by the Base 2000 contours; 100% acceptance by the 12 test case plaintiffs
- Mediation: Plaintiffs who do not accept to go to mediation before trial
- Offer Period: The offer remains open for 90 days to allow dissemination to plaintiffs and response

**Martin Wolf**

---

**From:** Kieron Quinn [kfquinn@quinnlaw.com]
**Sent:** Thursday, October 19, 2006 2:35 PM
**To:** Steven Bryant
**Cc:** Kelle Acock Esq.; Martin Wolf; Jack Ferrebee; Kieron Quinn
**Subject:** Test Case Plaintiffs' Acceptance of Settlement Terms
**Attachments:** OUTLINE OF SETTLEMENT TERMS 10.18.pdf

<<...>>

Steve

All of the Test Case Plaintiffs have accepted the terms of the settlement as set out in Marty's email of yesterday afternoon (copy attached).

Kieron

Kieron Quinn

Quinn, Gordon & Wolf, Chtd.

102 West Pennsylvania Ave.

Baltimore, MD 21204

410 825 2300

**OUTLINE OF SETTLEMENT TERMS**

- Cash Payment: $38 million
- Scope of Easement: Strike/Fighter Aircraft generating noise up to and including SEL levels of the F/A-18 E/F plus 3 dB; gross annual operations based on historical highs with each flight track based on historical breakdown by percentage of use; minimum altitude of flights in accordance with existing flight parameters at NAS Oceana and NALF Fentress (i.e. Oceana FCLP @ 1,000 ft.; Fentress FCLP @ 800 ft.; standard approach and takeoff paths)
- Acceptance Levels: Terms accepted by 96% of plaintiffs with 98% of plaintiffs located in >75 dB zone as established by the Base 2000 contours; 100% acceptance by the 12 test case plaintiffs
- Mediation: Plaintiffs who do not accept to go to mediation before trial
- Offer Period: The offer remains open for 90 days to allow dissemination to plaintiffs and response

**Martin Wolf**

---

**From:** Bryant, Steven (ENRD) [Steven.Bryant@usdoj.gov]
**Sent:** Thursday, December 07, 2006 6:28 PM
**To:** mwolf@quinnlaw.com
**Subject:** Oceana - Settlement_Framework_12-7_.pdf

**Attachments:** Oceana - Settlement_Framework_12-7_.pdf

Oceana -
tlement_Framework

<<Oceana - Settlement_Framework_12-7_.pdf>>

Marty,

Attached is the settlement framework. I look forward to meeting with you and discussing it.

Steve

Framework for Proposed Settlement

The following are the general terms of a proposed tentative settlement in Testwuide, et al. v. United States, No. 01-201L (Fed. Cl.), which counsel for all parties have agreed to recommend to their clients. Counsel acknowledge that this document is intended only to signify counsel's intent to recommend a settlement to their clients under the general terms set forth herein, and that this document is not intended to constitute a final settlement agreement. Counsel for plaintiffs acknowledge that counsel for defendant has expressly stated that he does not have authority to bind the United States to the proposed general terms set forth in this document or a final settlement agreement, and can only formally present the following proposed general terms and any subsequent settlement agreement once consummated to appropriate officials within the Department of Justice for approval. Counsel for plaintiffs further acknowledge their understanding of the Department of Justice settlement review process, including that this proposed tentative agreement and any subsequent settlement once consummated must be approved by the Attorney General or his designee, as well as by the Department of the Navy. Further, nothing in this document or in any other settlement communication — oral or written — should be deemed to be an admission or a statement of policy or a litigation position.

The proposed settlement shall include, but not be limited to, the following terms:

1) The United States will pay to plaintiffs an amount not to exceed $38 million in settlement of all claims that plaintiffs brought, or could have brought, against the United States. This payment is inclusive of all principal, interest, attorneys' fees, costs, and other expenses.

2) In the event that less than 100% of all plaintiffs agree to participate in the proposed settlement, the $38 million payment shall be reduced proportionately by a formula to be determined by mutual agreement of the parties.

3) As a condition to receiving any compensation, all plaintiffs participating in the proposed settlement shall provide to the United States a release from all liability for any claim that was brought, or could have been brought, relating to flight operations at NAS Oceana or NALF Fentress at any time prior to the final resolution of a settlement agreement.

4) As a further condition to receiving any compensation, all plaintiffs participating in this proposed settlement shall also provide to the United States a perpetual avigation easement over the plaintiffs' properties under the following general terms, including but not limited to:

   a) Operations: Based on historic runway usage and historical high operations as recorded in Air Traffic Activity Reports (the sum of Control Tower Operations and Approach Control Operations), the maximum number of annual operations on each runway are as follows: At NAS

Oceana: Runway 5 – 132,500 operations; Runway 23 – 107,500 operations; Runway 32 – 57,500 operations; Runway 14 – 7,500 operations; and at NALF Fentress: Runway 5 – 93,000 operations; Runway 23 – 93,000 operations. The parties recognize that some properties are affected by operations from more than one runway. The scope of the proposed easement for each property shall be determined based on the operations figures in this paragraph.

b) Aircraft Noise Level: Operations of any aircraft, now operating or operating at any time in the future, at NAS Oceana and/or NALF Fentress, as well as the noise emissions from any aircraft, including any future aircraft, which produces a noise level up to and including the SEL of the F/A-18 E/F (as specified in the Final Environmental Impact Statement for the introduction of the F/A-18 E/F Aircraft to the East Coast of the United States) plus 3 dB with respect to any flight operation that affects a plaintiff's property.

c) Altitude: At a minimum altitude in accordance with existing flight parameters, including typical operational deviations from those nominal altitudes, with respect to any flight operation mode that affects a plaintiff's property.

d) If one or more of the parameters in 4 (a) through 4 (c) are exceeded, the proposed easement will not be considered to be exceeded unless the resulting Day-Night Average Sound Level ("DNL") at any plaintiff's property is more than 3 dB in excess of the DNL at that property under ARS2, the projected 1999 noise contour from the Environmental Impact Statement for the introduction of the F/A-18 C/D Aircraft to the East Coast of the United States.

5) Plaintiffs who no longer own an interest in any property subject to this litigation are exempt from paragraph 4. <u>See</u> paragraph 8, <u>infra</u>.

6) Plaintiffs' counsel shall use their best efforts to obtain the agreement of 100% of the plaintiffs to participate in this proposed settlement. However, the parties acknowledge that less than 100% of plaintiffs may indicate their willingness to settle under the terms set forth in this proposed tentative agreement. In the event that there is less than 100% participation by plaintiffs in the proposed settlement, the United States in its sole discretion may void the proposed settlement unless the following percentages of plaintiffs agree to the proposed settlement terms:

a) At least 96% of the 2098 total properties in this litigation;

b) At least 98% of all properties exposed to 75 dB DNL as measured by the BASE 2000 metric; and

c) All 12 of the "test plaintiff properties" that were the subject of the trial.

7) Plaintiffs' counsel shall have 90 days in which to obtain agreement of plaintiffs to participate in the proposed settlement. At the conclusion of this period, plaintiffs shall promptly provide to the United States a list of names of all plaintiffs who have agreed to participate in the proposed settlement, along with the address of the property that they presently own, and a statement of whether the property is within the 75 dB DNL as measured by the BASE 2000 metric.

8) The parties acknowledge that some of the plaintiffs in this litigation may not presently own an interest in the property that is the subject of this litigation and, therefore may not be able to convey an easement to the United States. These plaintiffs, should they agree to participate in the proposed settlement and agree to grant a release of all claims (see paragraph 3, supra), shall receive a reduced share of compensation by a formula to be determined by mutual agreement of the parties, provided that such plaintiffs provide to the United States legally sufficient documentation evidencing the conveyance of their property prior to the date of this proposed tentative agreement to a third party. Such plaintiffs shall be included as participating plaintiffs for purposes of determining the total percentage of participation. However, the total compensation due to all plaintiffs shall be reduced by applying the formula referenced in this paragraph. In the event that the total number of properties for which an easement cannot be conveyed exceeds 20% of the total number of properties in this litigation, the United States may, in its sole discretion, void this proposed tentative agreement without penalty.

9) The United States has not yet determined the source of funds for the proposed settlement, but will do so as expeditiously as possible.

10) The parties acknowledge that any settlement agreement once consummated shall not serve as an admission of liability on the part of the United States, nor shall the terms of this proposed tentative agreement be used as evidence in any future legal proceeding. The parties agree that the terms of the proposed tentative agreement, any consummated settlement agreement, and all settlement communications, written or oral or by any form whatsoever, shall be confidential, and shall not be disclosed to any person or entity not a party to this proposed tentative agreement without the express written consent of all parties.

**U.S. Department of Justice**

Environment and Natural Resources Division

SDB
90-1-23-10297

*Natural Resources Section*
*P.O. Box 663*
*Washington, DC 20044-0663*

*Telephone (202) 305-0424*
*Facsimile (202) 305-0267*

January 29, 2007

**Via E-mail**

Marty Wolf, Esquire
Quinn, Gordon & Wolf
102 West Pennsylvania Avenue
Suite 402
Baltimore, Maryland 21204

Re: **Testwuide v. United States, 01-201**

Dear Marty:

This responds to plaintiffs' draft status report regarding settlement Kieron e-mailed to me this evening at 4:59 P.M. As I informed you during our subsequent phone call, the draft status report reveals terms of the tentative settlement agreement, which are confidential communications protected by Federal Rules of Evidence 408. I reiterate my demand that you remove these references, as well as any attached exhibits identifying the terms. Be advised that I will move the court to strike the report and any attached exhibits if you do not agree in writing by 10:00 A.M. tomorrow morning (January 30) to amend the status report so that it does not reveal terms of the tentative agreement or any other confidential settlement communications. In addition, should you disclose such communications to the court, we will seek all appropriate relief, including, if necessary, the recusal of Judge Wolski.

Finally, as we previously indicated, your insistence on divulging confidential settlement communications will result in the cessation of our ongoing settlement discussions, and will be seen by the United States as an effort by plaintiffs' counsel to undermine any chance of settlement in this case.

Sincerely,

s// Steven D. Bryant

Steven D. Bryant