## Martin Wolf

**From:** Bryant, Steven (ENRD) [Steven.Bryant@usdoj.gov]
**Sent:** Thursday, December 07, 2006 6:28 PM
**To:** mwolf@quinnlaw.com
**Subject:** Oceana - Settlement_Framework_12-7_.pdf

**Attachments:** Oceana - Settlement_Framework_12-7_.pdf

Oceana -
tlement_Framework

<<Oceana - Settlement_Framework_12-7_.pdf>>

Marty,

Attached is the settlement framework. I look forward to meeting with you and discussing it.

Steve

Framework for Proposed Settlement

The following are the general terms of a proposed tentative settlement in Testwuide, et al. v. United States, No. 01-201L (Fed. Cl.), which counsel for all parties have agreed to recommend to their clients. Counsel acknowledge that this document is intended only to signify counsel's intent to recommend a settlement to their clients under the general terms set forth herein, and that this document is not intended to constitute a final settlement agreement. Counsel for plaintiffs acknowledge that counsel for defendant has expressly stated that he does not have authority to bind the United States to the proposed general terms set forth in this document or a final settlement agreement, and can only formally present the following proposed general terms and any subsequent settlement agreement once consummated to appropriate officials within the Department of Justice for approval. Counsel for plaintiffs further acknowledge their understanding of the Department of Justice settlement review process, including that this proposed tentative agreement and any subsequent settlement once consummated must be approved by the Attorney General or his designee, as well as by the Department of the Navy. Further, nothing in this document or in any other settlement communication — oral or written — should be deemed to be an admission or a statement of policy or a litigation position.

The proposed settlement shall include, but not be limited to, the following terms:

1) The United States will pay to plaintiffs an amount not to exceed $38 million in settlement of all claims that plaintiffs brought, or could have brought, against the United States. This payment is inclusive of all principal, interest, attorneys' fees, costs, and other expenses.

2) In the event that less than 100% of all plaintiffs agree to participate in the proposed settlement, the $38 million payment shall be reduced proportionately by a formula to be determined by mutual agreement of the parties.

3) As a condition to receiving any compensation, all plaintiffs participating in the proposed settlement shall provide to the United States a release from all liability for any claim that was brought, or could have been brought, relating to flight operations at NAS Oceana or NALF Fentress at any time prior to the final resolution of a settlement agreement.

4) As a further condition to receiving any compensation, all plaintiffs participating in this proposed settlement shall also provide to the United States a perpetual avigation easement over the plaintiffs' properties under the following general terms, including but not limited to:

a) Operations: Based on historic runway usage and historical high operations as recorded in Air Traffic Activity Reports (the sum of Control Tower Operations and Approach Control Operations), the maximum number of annual operations on each runway are as follows: At NAS

Oceana: Runway 5 – 132,500 operations; Runway 23 – 107,500 operations; Runway 32 – 57,500 operations; Runway 14 – 7,500 operations; and at NALF Fentress: Runway 5 – 93,000 operations; Runway 23 – 93,000 operations. The parties recognize that some properties are affected by operations from more than one runway. The scope of the proposed easement for each property shall be determined based on the operations figures in this paragraph.

b) Aircraft Noise Level: Operations of any aircraft, now operating or operating at any time in the future, at NAS Oceana and/or NALF Fentress, as well as the noise emissions from any aircraft, including any future aircraft, which produces a noise level up to and including the SEL of the F/A-18 E/F (as specified in the Final Environmental Impact Statement for the introduction of the F/A-18 E/F Aircraft to the East Coast of the United States) plus 3 dB with respect to any flight operation that affects a plaintiff's property.

c) Altitude: At a minimum altitude in accordance with existing flight parameters, including typical operational deviations from those nominal altitudes, with respect to any flight operation mode that affects a plaintiff's property.

d) If one or more of the parameters in 4 (a) through 4 (c) are exceeded, the proposed easement will not be considered to be exceeded unless the resulting Day-Night Average Sound Level ("DNL") at any plaintiff's property is more than 3 dB in excess of the DNL at that property under ARS2, the projected 1999 noise contour from the Environmental Impact Statement for the introduction of the F/A-18 C/D Aircraft to the East Coast of the United States.

5) Plaintiffs who no longer own an interest in any property subject to this litigation are exempt from paragraph 4. <u>See</u> paragraph 8, <u>infra</u>.

6) Plaintiffs' counsel shall use their best efforts to obtain the agreement of 100% of the plaintiffs to participate in this proposed settlement. However, the parties acknowledge that less than 100% of plaintiffs may indicate their willingness to settle under the terms set forth in this proposed tentative agreement. In the event that there is less than 100% participation by plaintiffs in the proposed settlement, the United States in its sole discretion may void the proposed settlement unless the following percentages of plaintiffs agree to the proposed settlement terms:

a) At least 96% of the 2098 total properties in this litigation;

b) At least 98% of all properties exposed to 75 dB DNL as measured by the BASE 2000 metric; and

c) All 12 of the "test plaintiff properties" that were the subject of the trial.

7) Plaintiffs' counsel shall have 90 days in which to obtain agreement of plaintiffs to participate in the proposed settlement. At the conclusion of this period, plaintiffs shall promptly provide to the United States a list of names of all plaintiffs who have agreed to participate in the proposed settlement, along with the address of the property that they presently own, and a statement of whether the property is within the 75 dB DNL as measured by the BASE 2000 metric.

8) The parties acknowledge that some of the plaintiffs in this litigation may not presently own an interest in the property that is the subject of this litigation and, therefore may not be able to convey an easement to the United States. These plaintiffs, should they agree to participate in the proposed settlement and agree to grant a release of all claims (see paragraph 3, supra), shall receive a reduced share of compensation by a formula to be determined by mutual agreement of the parties, provided that such plaintiffs provide to the United States legally sufficient documentation evidencing the conveyance of their property prior to the date of this proposed tentative agreement to a third party. Such plaintiffs shall be included as participating plaintiffs for purposes of determining the total percentage of participation. However, the total compensation due to all plaintiffs shall be reduced by applying the formula referenced in this paragraph. In the event that the total number of properties for which an easement cannot be conveyed exceeds 20% of the total number of properties in this litigation, the United States may, in its sole discretion, void this proposed tentative agreement without penalty.

9) The United States has not yet determined the source of funds for the proposed settlement, but will do so as expeditiously as possible.

10) The parties acknowledge that any settlement agreement once consummated shall not serve as an admission of liability on the part of the United States, nor shall the terms of this proposed tentative agreement be used as evidence in any future legal proceeding. The parties agree that the terms of the proposed tentative agreement, any consummated settlement agreement, and all settlement communications, written or oral or by any form whatsoever, shall be confidential, and shall not be disclosed to any person or entity not a party to this proposed tentative agreement without the express written consent of all parties.