**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CAROL AND ROBERT TESTWUIDE, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 01-201L |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Victor J. Wolski |
| Defendant. | ) | |
| | ) | |
| | ) | |

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release is made this 15th day of May, 2007, by and between the United States of America (hereinafter referred to as the "United States") and Plaintiffs for the following cases: Testwuide v. United States, No. 01-201L; Burlage v. United States, No. 04-120L; Adams v. United States, No. 04-279L; Anderson v. United States, No. 04-333L; Beagle v. United States, No. 04-1176L; Aralar v. United States, No. 04-1280L; Whitley v. United States, No. 04-1331L; Price v. United States, No. 04-1718L; and Mack v. United States, No. 05-628L, (hereinafter collectively referred to as the "Plaintiffs"), with the exception of the following individuals:

| LAST NAME | FIRST NAME | PROPERTY | CITY | ZIP | COMPLAINT |
|---|---|---|---|---|---|
| Edney | Doris Jean | 996 Lynnhaven Pkwy. | VB | 23452 | WHITLEY |
| Hall | Shirley | 412 27th St. | VB | 23451 | WHITLEY |
| Himchak | William, III & Tracy | 928 Smoke Tree Lane | VB | 23452 | WHITLEY |
| Hubbard | Garry & Mary | 3014 Dedi Ct. | VB | 23456 | WHITLEY |
| Savostyanov | Alexei & Natalija | 863 Park Place Dr. | VB | 23451 | WHITLEY |
| Vallance | James & Jennifer | 3117 Bloomfield Ct. | VB | 23456 | WHITLEY |
| Werner | Anne | 1272 Alanton Dr. | VB | 23454 | WHITLEY |

| | | | | | |
|---|---|---|---|---|---|
| LaRossa | Larry & Paula | 2124 Land of Promise Rd. | Ches. | 23322 | WHITLEY |

The above individuals not participating in this Settlement Agreement and Release are hereinafter collectively referred to as the "Non-Settling Plaintiffs." Any plaintiffs in addition to the above individuals who do not participate in the settlement will also be considered "Non-Settling Plaintiffs."

**WHEREAS**, the Plaintiffs being owners on July 1, 1999 of all respective properties situated in Chesapeake, Virginia and Virginia Beach, Virginia that are the subject of this litigation (hereinafter referred to as "Property" or "Properties"); and,

**WHEREAS,** Plaintiffs brought the above-captioned lawsuit, Testwuide v. United States, No. 01-201L (Filed April 5, 2001) and the following eight related cases that are the subject of this litigation and this Settlement Agreement and Release: Burlage v. United States, No. 04-120L (Filed January 29, 2004); Adams v. United States, No. 04-279L (Filed March 2, 2004); Anderson v. United States, No. 04-333L (Filed March 8, 2004); Beagle v. United States, No. 04-1176L (Filed July 19, 2004); Aralar v. United States, No. 04-1280L (Filed August 13, 2004); Whitley v. United States, No. 04-1331L (Filed August 16, 2004); Price v. United States, No. 04-1718L (Filed November 29, 2004); and Mack v. United States, No. 05-628L (Filed June 16, 2005), in the United States Court of Federal Claims, alleging a taking of their Properties by the United States by virtue of flights originating from United States Naval Air Station Oceana ("NAS Oceana") and Naval Auxiliary Landing Field Fentress ("NALF Fentress"); and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Plaintiffs and the United States do hereby agree as follows:

1. The United States will pay to Plaintiffs an amount not to exceed Thirty-Four Million,

Four Hundred Six Thousand Dollars ($34,406,000.00), which shall be made payable to the ***Jet Noise Lawsuit Settlement Trust Account***. This payment is inclusive of all principal, interest, and attorneys' fees, costs, and other expenses incurred to date and in the future, other than attorneys' fees, costs and any other expenses solely incurred after the date of this Settlement Agreement and Release in connection with the Non-Settling Plaintiffs. This maximum payment shall be reduced as specified in paragraphs 2-6, infra. The disbursement of funds as between and among the Plaintiffs shall be determined solely by the Plaintiffs, to include payment of costs and attorneys' fees incurred.

2. In the event that more than 740 of the Properties have been sold by any Plaintiffs prior to March 20, 2007, the United States' payment specified in paragraph 1 shall be reduced by $5,000.00 for each Property sold in excess of 740 Properties. In the event that more than 800 Properties have been sold by any Plaintiffs prior to March 20, 2007, the United States may, in its sole discretion, void this Settlement Agreement and Release without penalty.

3. The following Plaintiffs have agreed to voluntarily dismiss their claims with prejudice:

| LAST NAME | FIRST NAME | PROPERTY | CITY | ZIP | COMPLAINT |
|---|---|---|---|---|---|
| Abernethy | J.R. & Evelyn | 905 Townsend Drive | VB | 23452 | WHITLEY |
| Agresti | Danny & Robin | 1112 Bonfield Court | VB | 23454 | BEAGLE |
| Cassidy | Kevin & Adele | 2064 Bierce Drive | VB | 23454 | WHITLEY |
| Correia | Jeffrey & Gloria | 2413 Kerr Drive | VB | 23454 | WHITLEY |
| Cox | William & Connie | 2420 Mohawk Trail | VB | 23454 | WHITLEY |
| Doe | Jon | 908 Avatar Drive | VB | 23454 | WHITLEY |
| Elms | Robert & Phyllis | 266 Raintree Road | VB | 23452 | WHITLEY |
| Holava | Scott & Cathy | 2912 Wilcox Drive | VB | 23456 | WHITLEY |
| Jansohn | Deanne | 1141 Whitestone Way | VB | 23454 | WHITLEY |
| Mills | Samuel & Mary | 729 Beckley Lane | Ches. | 23322 | WHITLEY |
| Neal | Nancy | 1268 Laskin Road | VB | 23451 | WHITLEY |
| Parker | Randolph P. & Laura | 717 School House Road | Ches. | 23322 | WHITLEY |
| Reeves | Alan & Tammy | 1304 Fernham Lane | Ches. | 23322 | WHITLEY |
| Ross | Ruby | 1152 VB Boulevard #101 | VB | 23451 | WHITLEY |
| Smith | John & Jane | 1313 Mockingbird Lane | Ches. | 23322 | WHITLEY |
| Smith | Paul | 2200 Oak Drive | VB | 23454 | WHITLEY |
| Turner | Darryl & Sandra | 1278 Eaglewood Drive | VB | 23454 | WHITLEY |

In the event that there are additional Plaintiffs who agree to voluntarily dismiss their claims with prejudice, the United States' payment specified in paragraph 1 shall be reduced by $18,000.00 for each Property formerly or currently owned by these additional Plaintiffs.

4. In the event that there is some reason other than a Property having been sold that prevents the Plaintiffs from conveying the easement discussed in paragraph 8 (and attached as Exhibit A) over a Property, and the Plaintiffs cannot correct the defect that prevents conveyance of the easement, the United States' payment specified in paragraph 1 shall be further reduced by $5,000.00 for each such Property.

5. The United States' payment specified in paragraph 1 shall be reduced by $18,000.00 for each of the first 24 Properties currently or formerly owned by Non-Settling Plaintiffs.

6. The United States' payment specified in paragraph 1 shall be further reduced by $18,000.00 for each Property in excess of 30 Properties currently or formerly owned by Non-Settling Plaintiffs.

7. In exchange for their share of the payment specified in paragraph 1 and as a condition to receiving any compensation, all Plaintiffs participating in the Settlement as reflected in the list provided by Counsel for Plaintiffs (and attached as Exhibit B), and Plaintiffs' attorneys acting on their behalf, agree to this Settlement Agreement and Release.

8. In exchange for their share of the payment specified in paragraph 1 and as a further condition to receiving any compensation, all Plaintiffs participating in this proposed settlement shall grant the United States a perpetual and permanent avigation easement, in the form set forth as Exhibit A, for their respective Properties. Each easement will include the full names of all owners as shown in the land records. If the grantor of an easement is not a plaintiff, an explanation will be provided as

to why the grantor has authority to convey the easement (for example, the Named Plaintiff conveyed to Current Owner, who is granting the easement). Plaintiffs who no longer own an interest in any Property that is the subject of this litigation are exempt from the requirements of this paragraph. See paragraph 13, infra.

9. For each avigation easement granted, Plaintiffs represent that the grantor is the current owner of the Property, and the land described is all of the land owned by the grantor in the Cities of Virginia Beach and Chesapeake that is the subject of this litigation, and that the grantor otherwise has the authority to convey the avigation easement over the Property. For each avigation easement granted, Plaintiffs further represent that the legal description of the Property and GPIN No. in the easement are accurate to the best of their knowledge. The United States will conduct and review title searches to confirm that the land described is all of the land owned by the grantor in the Cities of Virginia Beach and Chesapeake that is the subject of this litigation, and that the grantor otherwise has the authority to convey the avigation easement over the Property. In the event that the United States learns that the legal description of the Property or the GPIN No. is inaccurate or the easement is otherwise defective but the Plaintiffs can correct the defect, Counsel for the United States will notify Counsel for Plaintiffs who hereby agree to promptly take reasonable steps to obtain a corrected easement from Plaintiffs and provide it to the United States at no additional cost to the United States.

10. The United States shall be responsible for the recordation of the executed easements.

11. Plaintiffs' counsel shall use their best efforts to obtain the agreement of 100% of the Plaintiffs to participate in this settlement. In the event that there is less than 100% participation by Plaintiffs in this settlement, the United States may, in its sole discretion, void this Settlement Agreement and Release without penalty unless the Plaintiffs who agree to the Settlement Agreement

and Release own, in total, at least the following percentages of Properties:

a) At least 96% of the Properties; and

b) At least 98% of all Properties located inside the 75 decibel ("dB") Day-night Average Sound Level ("DNL") noise contour as measured by the BASE 2000 contours (i.e., the modeled 2000 baseline noise contours from the Final Environmental Impact Statement for the Introduction of F/A-18 E/F (Super Hornet) Aircraft to the East Coast of the United States); and

c) All 12 of the following "Test Case Properties" that were to be the subject of the initial trial:

i. Theodore Dingle, 912 Carolina Avenue, Virginia Beach, Virginia 23451;

ii. Hal and Elaine Levenson, 2004 Brickell Court, Virginia Beach, Virginia 23454;

iii. Carroll Lindsay, 2709 East Kings Road, Virginia Beach, Virginia 23452;

iv. Herbert and Betty Van Nostrand 305 Corvette Lane, Virginia Beach, Virginia 23452;

v. James and Virginia Riddick 1805 Loganberry Court, Virginia Beach, Virginia 23453;

vi. Eddie and Elizabeth Waterman, 2244 Windy Pines Bend, Virginia Beach, Virginia 23456;

vii. Sara Hoag, 1301 Brant Road, Virginia Beach, Virginia 23451;

viii. William and Betty Capps, 409 Pallets Road, Virginia Beach, Virginia 23454;

ix. Eileen May, 620 Little Neck Road, Virginia Beach, Virginia 23452;

x. Kenneth and Tammy Hill 925 Lamplight Lane, Virginia Beach, Virginia 23452;

xi. Michael and Diane Leary, 3209 Chicory Court, Virginia Beach, Virginia 23453; and

xii. Sean and Graciela Ryan, 1856 Pathfinder Drive, Virginia Beach, Virginia 23454.

12. Prior to the execution of this agreement, Counsel for Plaintiffs shall have provided to the United States:

a) A list of all Plaintiffs who agree to participate in the settlement. For each Plaintiff who agrees to participate in the settlement, the following additional information has been provided:

i. The address of each Plaintiff's Property or Properties that are the subject of this litigation currently or formerly owned by the Plaintiff; and

ii. A statement identifying whether each Property is located inside the 75dB DNL noise contour as measured by the BASE 2000 metric; and

iii. A statement identifying whether an easement can be granted for the respective Plaintiff's Property or properties. If an easement cannot be granted for the Property or Properties, the statement shall indicate that the Property or Properties were sold either before or after March 20, 2007; and

iv. A statement identifying whether the property was one of the 12 "Test Case Properties"; and

v. A statement identifying which of the nine related cases the Plaintiff was a named party.

b) With respect to the Non-Settling Plaintiffs, and prior to the execution of this agreement, Counsel for Plaintiffs shall have provided to the United States:

i. A statement identifying whether each Non-Settling Plaintiff's Property is located inside the 75dB DNL noise contour as measured by the BASE 2000 metric; and

ii. A statement identifying whether the Non-Settling Plaintiff currently owns the Property. If the Non-Settling Plaintiff no longer owns the Property or Properties, a statement identifying the date that the Property or Properties sold.

13. The parties acknowledge that some of the Plaintiffs are not able to convey the avigation easement discussed in paragraph 8 (and attached as Exhibit A) to the United States because they conveyed their Property or Properties. Such Plaintiffs shall be included as participating plaintiffs for purposes of determining the total percentage of participation discussed in paragraph 11, assuming these Plaintiffs, or their attorneys acting on Plaintiffs' behalf, execute this Settlement

Agreement and Release, and provided that such Plaintiffs provide to the United States legally sufficient documentation evidencing that they conveyed their Property or Properties prior to March 20, 2007.

14. Each Plaintiff that grants to the United States the easement discussed in paragraph 8 (and attached as Exhibit A), covenants and agrees to warrant and defend said easement and rights of the United States and its assigns arising from the easement against the lawful claims and demands of all persons whatsoever in accordance with the general warranty contained within the easement. This warranty and indemnification is not in any way limited by the fact that the United States conducted title search reviews discussed in paragraph 9.

15. As discussed in paragraph 1, the settlement payment shall be made payable to the ***Jet Noise Lawsuit Settlement Trust Account.*** A portion of this settlement payment, specifically $5,000.00 for each of the 1,353 Properties over which the United States is expected to acquire an avigation easement, is contingent upon the United States reviewing the title searches as specified in paragraph 9. Counsel for plaintiffs agree to retain Six Million, Seven Hundred Sixty-Five Thousand Dollars ($6,765,000.00) of the settlement payment hereinafter referred to as "Contingent Funds", in the ***Jet Noise Lawsuit Settlement Trust Account***, pending the United States' review of the title searches. Counsel for the United States will authorize disbursement of the Contingent Funds in four installments as the title search reviews progress and it appears that easements can be acquired over the Properties. The first three disbursements of the Contingent Funds will be in installments of Two Million Dollars ($2,000,000.00) each. Each of these three installments corresponds with reviews of the title searches of 400 Properties for a total of 1,200 Properties. The fourth and final disbursement will be the remaining Seven Hundred Sixty-Five Thousand Dollars ($765,000.00), as the final 153 title search reviews are completed, including any corrections made by Plaintiffs, and it appears that

easements can be acquired over all 1,353 Properties. As specified in paragraph 9, Counsel for the United States will notify Counsel for Plaintiffs of any inaccuracies or defects it uncovers that need to be corrected during the review. In the event that there is some reason other than a Property having been sold after March 20, 2007 that prevents the Plaintiffs from conveying the easement and Plaintiffs cannot correct it as specified in paragraph 9, Counsel for Plaintiffs are not authorized to disburse $5,000.00 for each such Property, and this portion of the Contingency Funds will be made payable to the United States.

16. **FOR AND IN CONSIDERATION** of payment by the United States to the Plaintiffs as set forth in this Settlement Agreement and Release, and subject to the conditions on such payment set forth herein, and for full and final settlement of the matter with respect to Plaintiffs, sufficiency of which is acknowledged, the undersigned attorneys acting on Plaintiffs' behalf, or the undersigned Plaintiffs, on behalf of ourselves, our successors, heirs, executors, administrators, and assigns, do RELEASE, REMISE, ACQUIT, AND FOREVER DISCHARGE, the United States of America, of and from any and all causes of action, claims, demands, costs, suits at law, suits in equity, and all claims of any nature and kind whatsoever, known or unknown, foreseen or unforeseen, which the undersigned had or may in the future be entitled to have against the parties released and named above, related to the facts as alleged in the Complaint filed in the above-captioned lawsuit and the Complaints in the eight related cases, as well as any potential claim that could have been brought relating to any and all flight operations at NAS Oceana or NALF Fentress at any time prior to executing this Settlement Agreement and Release.

17. The parties understand that this settlement is a compromise of disputed claims, and that any and all payments or actions on account of or in any way related to same are not to

be construed as an admission of liability by the United States, which liability is expressly denied, nor shall the terms of this settlement be used as precedent in any future litigation or other official proceeding.

18. In construing or interpreting this Settlement Agreement and Release, no one party shall be deemed to have drafted or created this Settlement Agreement and Release, and any perceived uncertainty or ambiguity shall not be construed or interpreted against any one party to this Settlement Agreement and Release.

19. Every provision of this Settlement Agreement and Release shall be deemed severable from every other provision; if any provision of this Settlement Agreement and Release is later deemed illegal, invalid or unenforceable, in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby, and such invalid, illegal or unenforceable provision shall be deemed modified to the extent necessary to render it valid while most nearly preserving its original intent.

Date: MAY 14, 2007

Jack Ferrebee
Attorney for Plaintiffs

Date: MAY 15, 2007

Steven D. Bryant
Attorney for Defendant and
Authorized Representative of the United States

# Exhibit A

# GRANT OF AVIGATION EASEMENT

This Easement is made this ____ day of ______________, 2007, between *[FULL NAMES OF ALL OWNERS IN CAPS,]* ____________ herein referred to as the GRANTOR, and the UNITED STATES OF AMERICA, herein referred to as the Government or GRANTEE, and.

WITNESSETH:

GRANTOR is the owner in fee of that certain parcel or those certain parcels of land situated in the City of [*Virginia Beach or Chesapeake*], Virginia, more particularly described on Exhibit A attached hereto and made a part hereof [*prepare Exhibit A legal description attachment – list all land owned by Grantor. If Grantor owns land in both Cities prepare two easements, one for each City..*] hereinafter called "the GRANTOR'S Property", or "the Property."

GRANTOR, for itself and all its successors and assigns, in consideration of the settlement of the following actions filed in the United States Court of Federal Claims entitled: Testwuide, et. al. v. United States, No. 02-201L; Burlage, et. al. v. United States, No. 04-120L; Adams, et. al. v. United States, No. 04-279L; Anderson, et. al. v. United States, No. 04-333L; Beagle, et. al. v. United States, No. 04-1176L; Aralar, et. al. v. United States, No. 04-1280L; Whitley, et. al. v. United States, No. 04-1331L; Price, et. al. v. United States, No. 04-1718L; Mack, et. al. v. United States, No. 05-628L; does hereby grant, bargain, sell, and convey with general warranty to GRANTEE, its successors and assigns, a perpetual and assignable avigation easement and right-of-way of the nature and character and to the extent hereinafter set forth, over and across the GRANTOR'S property, as follows:

I. GRANTEE shall have, for all aircraft now operating or operating at any time in the future at Naval Air Station Oceana, hereinafter "NAS Oceana," or Naval Auxiliary Landing Field Fentress,

GPIN NO. ________________

hereinafter "NALF Fentress," as well as the noise emissions from any aircraft, including any future aircraft, which produces a noise level up to and including the sound exposure level, hereinafter "SEL," of the F/A-18 E/F, plus 3 decibels (dB) SEL, with respect to any flight operation that affects GRANTOR's Property (See, e.g., Exhibit B, Table 4-19 from the Final Environmental Impact Statement for the Introduction of F/A-18 E/F (Super Hornet) Aircraft, which contains representative SEL values of the Super Hornet at certain altitudes during certain modes of flight), a right of free and unobstructed passage or overflight above the GRANTOR's Property at altitudes for the landing patterns and for field carrier landing practices in accordance with the current practice at NAS Oceana (1,000 feet or above) and NALF Fentress (800 feet or above), together with the right (1) to cause in and through said airspace such noise and vibrations that is inherent in the operation of the aforementioned aircraft and (2) to fly the aforementioned aircraft through said airspace up to and including 240,039 annual flight operations in NAS Oceana air traffic control tower airspace as recorded in Air Traffic Activity Reports (Control Tower Operations), or any successor report that accounts for operations in a similar fashion, and 152,497 annual flight operations at NALF Fentress as recorded in Air Traffic Activity Reports for NALF Fentress, or any successor report that accounts for operations in a similar fashion. It is UNDERSTOOD that aircraft descending to a runway on approach or ascending from a runway after takeoff will be below minimum flight altitudes of standard flight patterns at NAS Oceana and NALF Fentress. It is further UNDERSTOOD that the distribution of the flight operations among the runways at NAS Oceana and NALF Fentress will vary based on weather, operational modifications, and repair and maintenance.

If one or more of the preceding parameters is exceeded, the GRANTEE's right will not be exceeded unless the resulting annual Day-Night Average Sound Level ("DNL") at the owner's property

is more than 3 dB in excess of the DNL at the property under Alternative Realignment Scenario 2 (ARS2), the projected 1999 noise contours for NAS Oceana and NALF Fentress (See Exhibit C, which depicts the ARS2 projected 1999 noise contours for NAS Oceana and NALF Fentress as reflected in the Final Environmental Impact Statement for the Realignment of F/A-18 Aircraft and Operational Functions from Naval Air Station (NAS) Cecil Field, Florida to Other East Coast Installations.)

II. GRANTOR shall not make use of the easement area in any manner that would create an obstacle, obstruction, or hazard as provided by Federal Aviation Regulations, 14 CFR Part 77, which is incorporated into this easement by reference, that would interfere with the overflight, landing, or taking off of aircraft, nor shall GRANTOR erect or permit the erection of any structure or objects of natural growth that would create an obstacle, obstruction, or hazard.

TO HAVE AND TO HOLD said easement and all rights appertaining thereto unto the Government as GRANTEE, its successors and assigns, it being understood and agreed that these covenants and agreements shall run with the land. GRANTOR shall, prior to effectuating a transfer of the GRANTOR'S Property, advise any purchaser, grantee or donee of all or part of the parcel of the terms of this grant of an avigation easement.

The acquiring federal agency is the United States Navy.

It is UNDERSTOOD that this instrument conveys unto the GRANTEE such avigation rights above described in and over the streets and roads leading into, adjacent or contiguous to the GRANTOR'S property to the full extent of GRANTOR'S rights or interest therein.

GRANTOR reserves such use rights and privileges in the subject land as may be exercised and enjoyed without interfering with the rights hereby granted.

This easement is given subject to existing rights of way for public highways, roads, and ways, and public utilities, if any.

IN WITNESS WHEREOF, the GRANTOR, above named, has hereunto set its hands this ______ day of _____________, 2007.

_______________________(seal)

[GRANTOR NAME HERE]

Dated: ______________________

COMMONWEALTH OF VIRGINIA )
)
COUNTY OF ____________________ )

I CERTIFY that I know or have satisfactory evidence that ______________________ is the person who appeared before me, and said person acknowledged that he/she signed this instrument and acknowledged it to be his/her free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: _________________

_____________________________________

Notary Public

______________________________

Printed Name

My appointment expires__

EXHIBIT B

**Table 4-19 Comparison of Representative SEL Values (dB) for Aircraft on Approach, Departure, and in the FCLP or Touch-and-Go Pattern**

| Operation | Altitude (ft AGL) | F-14A | F-14B/D | F/A -18C/D | F/A-18E/F | AV-8B | EA-6B |
|---|---|---|---|---|---|---|---|
| Approach | 1,000 | 93 | 87 | 109 | 114 | 103 | 107 |
| Departure | 1,000 | 110 | 108 | 117 | 117 | 113 | 114 |
| FCLP[a] | | | | | | | |
| NAS Oceana | 1,000 | 93 | 95 | 108 | 113 | --- | --- |
| NALF Fentress | 800 | 96 | 97 | 109 | 115 | --- | --- |
| MCAS Cherry Point | 1,000 | — | — | 108 | 113 | 103 | 103 |
| MCAS Beaufort | 600 | --- | --- | 111 | 117 | --- | --- |
| New OLF[b] | 600 | 99 | 99 | 111 | 117 | 107 | 106 |

a FCLP or touch-and-go pattern altitude reflects the highest altitude of the downward leg of the pattern.
b The new OLF will primarily support Super Hornet FCLP operations. Other aircraft types are shown for comparison.

KEY:

AGL = Above ground level.
FCLP = Field carrier landing practice.
SEL = Sound exposure level.

EXHIBIT C


CHESAPEAKE BAY
CHESAPEAKE BAY BRIDGE
ATLANTIC OCEAN
FORT STORY
LITTLE CREEK AMPHIBIOUS BASE
CHESAPEAKE PARK
OCEAN PARK
CAPE HENRY SHORES
BAY ISLAND
FIRST LANDING STATE PARK
NORTH VIRGINIA BEACH
LYNNHAVEN COLONY
LAKE SHORES
DIAMOND SPRINGS
BAYVILLE PARK
GREEN HILL
KEELINGWOOD
CHURCH PT
BROAD BAY PT GREENS
BAYSIDE
LAKEVIEW PARK
THOROUGHGOOD
SEA BREEZE FARM
THE RESERVE
THOROUGHGOOD ESTS
ALANTON
65
CYPRESS PT
LAWSON FOREST
REEDTOWN
LITTLE NECK COVE
SHOREHAVEN
BAY COLONY
LAUREL COVE
HAYGOOD PT
CYPRESS POINT NORTH
MIDDLE PLANTATION
CAVALIER PARK
TRANT BERKSHIRE
LINKHORN PARK
WESLEYAN COLLEGE
AROGONA VIL
LINKHORN ESTS
OLD DONATION ESTATES
KINGS GRANT
NEWSOME FARM
BISHOPSGATE
GREAT NECK MEADOWS
DOGWOOD ACRES
THALIA ACRES
LITTLE NECK VILL
FAIR MEADOWS
PEMBROKE MANOR
KINGS PT
EASTERN PARK
HILLTOP
BIRDNECK ACRES
70
VIRGINIA BEACH
LONDON BRIDGE
EUCLID
OCEANA GARDENS
ARROWHEAD
75
POCAHONTAS VILLAGE
HUNTINGTON
CAROLANNE FARMS
COUNTY VIEW
WINDSOR WOODS
LYNNHAVEN ESTS
SHADOWLAWN
RUDEE HGTS
KEMPSVILLE LAKES
OCEANA WEST INDUSTRIAL PARK
AVALON TERR
WOODSTOCK
FAIRFIELD
LARK DOWNS
LARKSPUR
TIMBERLAKE
CAMP PENDELTON
NAS OCEANA
HAVEN HGTS
CHIMNEY HILL
HOMESTEAD
ACREDALE
DUNBARTON
MAGIC HOLLOW
NEWLIGHT
BELLAMY MANOR
MIDWAY MANOR
SCARBOROUGH SQUARE
HARPER SQUARE
LAKE JAMES
SALEM WOODS
BUCKNER FARMS
LAKE CHRISTOPHER
ATLANTIC SHORES
BRANDON
ROSEMONT FOREST
BELLAMY PLANTATION
BRIGADOON
DAM NECK ESTS
DAM NECK ANNEX
CHARLESTOWNE
ROCK CREEK
LANDSTOWN LAKES
LAKE PLACID
PINE MEADOWS
75
BRIGADOON WOODS EAST
GLENWOOD VILLAS
SALEM LAKES
BUYRN FARM NORTH
ALEXANDRIA
PINE RIDGE
OCEAN LAKES EAST
CHARLESTON LAKES SOUTH
BELLWOOD ESTS
CHRISTOPHER FARMS
PRINCESS ANNE WOODS
HILLCREST FARMS
70
THREE OAKS
LAGOMAR
SANDBRIDGE
INDIAN RIVER FARMS
HIGHGATE GREENS
KEMP WOODS SOUTH
COURTHOUSE WOODS
FOXFIRE
ELPIKE MANOR
ELBOW
COURTHOUSE ESTS
VILLAGES AT WEST NECK
<65
65
65
75
INDIAN RIVER PLANTATION
70
PUNGO
BRIDLEWOOD
SCHOOLHOUSE CROSSING
MOUNT PLEASANT
65
NALF FENTRESS
70
POPLAR RIDGE SOUTH
WEST LANDING
ETHERIDGE LAKES
GREEN HAVEN
KING JAMES COLONY
CENTERVILLE FARMS
PUNGO RIDGE COMMONS
75
BLACKWOOD FOREST
WOODARDS MILL
WALNUT GREEN
NAWNEY CREEK NORTH
NAWNEY CREEK
LAND OF PROMISE

# Exhibit B

Whitley, et al. v. United States – 04-1331L

Edgar Earl Whitley
100 Sawgrass Bend
Virginia Beach, VA 23451;

And

Jeff & Heidi Blair
1000 Wymers Court
Chesapeake, VA 23322;

And

Kelvin & Dienetta Cooper
1004 Barnacle Court
Virginia Beach, VA 23451;

And

Edward & Megan Moses
1004 Wasseman Drive
Virginia Beach, VA 23454;

And

Steven & Mary Pancoast
1005 Blue Spring Lane
Virginia Beach, VA 23452;

And

Robert & Sonya Flora
1005 Cookham Arch
Chesapeake, VA 23322;

And

William & Debra Yantz
1006 Harwich Drive
Chesapeake, VA 23322;

And

Eric & Andrea Cummings
1008 Culver Lane
Virginia Beach, VA 23454;

2108 Shade Tree Street
Virginia Beach, VA 23456;

And

Tom & Lora James
212 Lavergne Lane
Virginia Beach, VA 23454;

And

Jeffrey & Janine Armstrong
2145 Teasdale Drive
Virginia Beach, VA 23454;

And

Michael & Patricia McLean
215 65th Street
Virginia Beach, VA 23451;

And

The Estate of Jeremiah Hall
215 North Birdneck Road
Virginia Beach, VA 23451;

And

Stephen & Laura Wright
2156 Crestwood Lane
Virginia Beach, VA 23456;

And

Harry Heinke
216 65th Street
Virginia Beach, VA 23451;

And

Peter & Stacy Wojcikowski
216 Middle Lane
Virginia Beach, VA 23454;

And

Buddy Matthews

217 68th Street
Virginia Beach, VA 23451;

And

Louis, Jr. & Prestina Carr
217 Dillon Drive
Virginia Beach, VA 23452;

And

Allan Hitt
217 Lavergne Lane
Virginia Beach, VA 23454;

And

Kirk & Veronica Balfanz
217 St. Paul Street
Virginia Beach, VA 23454;

And

Christopher & Victoria Vacher
218A 58th Street
Virginia Beach, VA 23451;

And

Mike & Cheryl Caffyn
2201 Bierce Drive
Virginia Beach, VA 23454;

And

Victor & Deborah Morkunas
2201 Shinglewood Way
Virginia Beach, VA 23456;

And

Gary & Sharon Wasson
2203 Carolina Road
Chesapeake, VA 23322;

And

Richard & Kathy Kunze

3332 Cedar Bridge Road
Virginia Beach, VA 23452;

And

Otto & Magdolna Szivak
3332 Plainsman Trail
Virginia Beach, VA 23452;

And

✓ Buffy Waller
3340 Ives Road
Virginia Beach, VA 23456;

And

Toni Toledo
3341 Lakecrest Road
Virginia Beach, VA 23452;

And

Robert Senich
3348 Edinburgh Drive
Virginia Beach, VA 23452;

And

Albertine & Leslie Rubin
3349 Prince of Wales Court
Virginia Beach, VA 23452;

And

Richard & Sherri Kortyka
3349 Terrazzo Trail
Virginia Beach, VA 23452;

And

Charles & Bernadette Scott
336 Appian Avenue
Virginia Beach, VA 23452;

And

Miles & Ada Coles

402 Vanderbilt Avenue
Virginia Beach, VA 23451;

And

Shad LaJesse
403 Shagbark Road
Virginia Beach, VA 23454;

And

Gertrude Falato
404 Garcia Drive
Virginia Beach, VA 23454;

And

Charles Flora
404 Gregory Lane
Virginia Beach, VA 23451;

And

Kendall & Cary Byrd
404 Lee Highlands Boulevard
Virginia Beach, VA 23452;

And

Hal & Dolores Hoyt
404 Slate Street
Chesapeake, VA 23322;

And

Nancy Neal
405 Biltmore Court
Virginia Beach, VA 23454;

And

Steven & Laura Dack
405 Linkenborough Drive
Chesapeake, VA 23322;

And

Wayne & Marlene Cooke